

THIS TRUST AGREEMENT made this _17_ day of _October_,
1966, between ROSALIE S. KARO, herein called "Grantor", and ANDREW T.
KARO and THE CENTRAL NATIONAL BANK OF RICHMOND, VIRGINIA, herein called
"Trustees";

WITNESSETH:

That the Grantor hereby grants, assigns, transfers, and delivers
unto the Trustees the property (herein called "trust estate") described
in Schedule A hereto attached as a part hereof to be held and administered
by the Trustees upon the trusts hereinafter set out.

ARTICLE ONE

_Clause 1._ The Trustees shall invest and reinvest the trust es-
tate and collect the income therefrom. They shall, subject to the later
terms of this Clause and after deducting all taxes, commissions, and other
expenses properly chargeable thereto, pay such income to the Grantor during
her lifetime in quarter-annual installments or at such more frequent intervals
as they may deem advisable. Should the Trustees at any time or times in
their uncontrolled judgment deem that the Grantor is then in such condition
as to be mentally or physically incapable of using such income properly,
such income shall not be paid to her while they deem such condition exists;
and during any such period the Trustees may from time to time use or apply
for and/or pay to her for her general welfare and comfort including, among
other things, support, maintenance, expenses of maintaining her home, debts
and taxes owing by her, and hospital, medical, and nursing expenses so
much of such income as they in their uncontrolled discretion may deem
advisable free of this trust, and any income not so expended shall become a
part of the corpus of the trust estate. Further, the Trustees may from time
to time use or apply for and/or pay to the Grantor for her general welfare and

Case 3:09-cv-00575-HEH  Document 1-1  Filed 09/14/09  Page 17 of 53 PageID# 25
Case 13-33011-KRH  Doc 73-1  Filed 07/21/14  Entered 07/21/14 14:35:39  Desc
Exhibit(s) 1 - 3   Page 2 of 151

comfort including, among other things, support, maintenance, expenses of
maintaining her home, debts and taxes owing by her, and hospital, medical,
and nursing expenses and/or, with or without the intervention of a guardian,
use or apply for and/or pay to any of her issue for such issue's general
welfare and comfort including, among other things, support, maintenance,
education, and hospital, medical, and nursing expenses so much of the cor-
pus of the trust estate as they in their uncontrolled discretion may deem
advisable free of this trust.

Clause 2. (a) Upon the Grantor's death, the Trustees shall first
pay from the then corpus of the trust estate all expenses incident to her
funeral and burial that would otherwise be payable out of her estate, all
expenses of the administration of her estate by her personal representatives
(other than federal and estate taxes, both state and federal), and all obliga-
tions and liabilities owing by her at the time of her death. They shall
be entitled to rely conclusively upon any written statement of any personal
representative of the Grantor as to the validity and amount of any such
funeral expenses, administration expenses, obligations, or liabilities.
They shall not be liable to any person interested as a beneficiary herein
or to any party interested herein by reason of the first sentence of this
paragraph, should they make any payment hereunder to anyone who they shall
in good faith believe is entitled thereto under the terms of this paragraph
or should they not make any payment to any party so entitled because they
shall have had no actual knowledge of the existence of such party's claim
under the terms of this paragraph.

(b) After carrying out the terms of paragraph (a) of this Clause,
the Trustees shall pay from the corpus of the trust estate to each of the
following named persons the sum of Twenty-Five Hundred ($2,500) Dollars,
should such person be in the employ of the Grantor and/or her husband at
the time of the Grantor's death:

1. DOROTHY THORNTON
2. ROBERT W. REID

(c) Subject to the terms of the earlier paragraphs of this
Clause, upon the Grantor's death the Trustees shall divide the then corpus
of the residuary estate defined in paragraph (d) of Clause 3 of this
Article into two parts, herein called the "marital trust" and the "residual
trust". The marital trust shall consist of the fractional share of the
residuary estate provided in said paragraph (d), while the residual trust
shall consist of the balance of the residuary estate.

Clause 3. (a) The Trustees shall invest the marital trust and
pay the net income therefrom to ANDREW T. KARO, husband of the Grantor,
during his lifetime in quarter-annual installments or at such more frequent
intervals as the Trustees may deem advisable. Further, he shall have the
right from time to time to withdraw all or any part of the corpus of the
marital trust free of this trust by instruments in writing signed by him and
delivered to the Trustees. In addition, the corporate Trustee may from
time to time use or apply for and/or pay to him for his general welfare and
comfort including, among other things, support, maintenance, and hospital,
medical, and nursing expenses so much of the corpus of the marital trust
as it in its uncontrolled discretion may deem advisable free of this trust.

(b) The Grantor's husband is hereby given as to the corpus of
the marital trust existing at his death a general power of appointment by
his will in favor of his estate and/or, at his election, of any party or
parties whomsoever upon such terms, trusts, and conditions as he may de-
sire, and accordingly upon his death the corporate Trustee shall deliver the
then corpus of the marital trust as his will may direct free of this trust,
provided, however, that such general power of appointment by his will shall
be operative only if there be in such will specific reference to the said
power herein so given to him. Subject to the terms of paragraph (c) of this
Clause 3, should he fail to so appoint as to all or any portion of such cor-
pus, then upon his death such unappointed corpus shall become a part of the

corpus of the residual trust to be administered and/or distributed after his death under the terms of paragraph (d) of Clause 5 of this Article.

(c)  In the event the Grantor's husband shall have failed to appoint all or any portion of the marital trust by his will and shall not have provided adequately in his will for the payment of inheritance and estate taxes, both state and federal, assessed by virtue of his death upon such unappointed corpus of the marital trust to the exoneration of such unappointed corpus, the corporate Trustee shall before further administering and distributing such unappointed corpus in accordance with the terms of paragraph (b) of this Clause 3 pay from such unappointed corpus either to the appropriate taxing authorities or in reimbursement to the personal representative of the Grantor's husband that portion of such taxes properly applicable to such unappointed corpus.

(d)  That fractional share of the residuary estate constituting the marital trust earlier mentioned in this Article is described as follows (the words "residuary estate" wherever used in this instrument shall mean all of the trust estate (including all property devised and bequeathed in the Grantor's will to the Trustees to be held and administered by them as a part of the trust estate) which shall remain after discharging therefrom all expenses of the Grantor's funeral and burial, all expenses of the administration of her estate by her personal representatives (other than inheritance and estate taxes assessed by reason of the Grantor's death) and all obligations and liabilities of the Grantor properly chargeable against the trust estate and (b) after carrying out the terms of paragraph (b) of Clause 2 of this Article but (c) without deducting from the trust estate any inheritance and estate taxes, both state and federal, assessed by reason of the Grantor's death:

The numerator of the fraction shall be the amount equal to the maximum estate tax marital deduction (allowable in determining the federal

Case 3:09-cv-00575-HEH   Document 1-1   Filed 09/14/09   Page 20 of 58 PageID# 28
Case 13-33011-KRH   Doc 79-1   Filed 07/21/14   Entered 07/21/14 14:39:57   Desc
Exhibit(s) 1 - 3   Page 5 of 151

estate tax payable by reason of the Grantor's death) minus the value for
federal estate tax purposes of all items in the Grantor's gross estate which
qualify for the marital deduction and which pass or have passed from the
Grantor to her husband upon or prior to her death other than under this
Clause (the words "pass or have passed" shall have the same meaning as such
words shall have under the provisions of the Internal Revenue Code in
effect at the Grantor's death); provided, however, that in computing the
numerator the values as finally determined for federal estate tax purposes
shall control.

The denominator of the fraction shall be an amount equal to the
value of the residuary estate; and to the extent that items initially in the
residuary estate are included in the Grantor's gross estate the value at
which they are included in her gross estate as finally determined for
federal estate tax purposes shall control, and to the extent that they are
not so included their value at the time they would have been valued had they
been so included for federal estate tax purposes shall control in determining
the denominator.

When distribution is made, there shall be allocated to the
marital trust the above described fractional share of the residuary es-
tate without regard to whether the total value of what is so allocated
is more or less than the amount of the numerator of the above-described
fraction.

The corporate Trustee is empowered to make allocation or division
of property, real and personal, in the residuary estate between the above
described fractional share constituting the marital trust and the balance
of the residuary estate comprising the residual trust in kind, in money, or
partly in both in such manner as they in their uncontrolled discretion may
deem advisable within the fractional limits hereinabove mentioned; provided,

Case 3:09-cv-00575-HEH   Document 1-1   Filed 09/14/09   Page 21 of 58 PageID# 29
Case 13-33011-KRH   Doc 78-1   Filed 07/21/14   Entered 07/21/14 14:39:57   Desc
Exhibit(s) 1 - 3   Page 6 of 151

however, that only assets which qualify for the federal estate tax marital deduction shall be allocated to the fractional share constituting the marital trust.

Clause 4.  (a)  The balance of the residuary estate (after deducting therefrom the fractional share thereof constituting the marital trust) is called the "residual trust"; but the residual trust shall also include the marital trust should the Grantor's husband not survive her.

(b)  The Trustees shall pay from the corpus of the residual trust all inheritance and estate taxes, both state and federal, assessed by reason of the Grantor's death; and the Trustees shall not seek exoneration or reimbursement from any personal representative of the Grantor or from the Grantor's estate or from any property, real or personal, passing under her will or by her intestacy or from any beneficiary under any life insurance policies existing upon her life at the time of her death or from the proceeds of any such policies or from any other property of whatsoever character and howsoever owned or held or from the owner of such other property because any portion of such taxes may have been assessed by reason of the existence of such policies or property.

(c)  Subject to the terms of paragraph (b) hereof, upon the death of the Grantor the Trustees shall invest the residual trust and shall pay the net income therefrom to the Grantor's husband during his lifetime in quarter-annual installments or at such more frequent intervals as they may deem advisable.  Further, the corporate Trustee may from time to time, with or without the intervention of a guardian, use or apply for and/or pay to any of the Grantor's issue for such issue's general welfare and comfort including, among other things, support, maintenance, education, and hospital, medical, and nursing expenses so much of the corpus of the residual trust as it in its uncontrolled discretion may deem advisable free of this trust.

Case 3:09-cv-00575-HEH   Document 1-1   Filed 09/14/09   Page 22 of 58 PageID# 30
Case 13-33011-KRH   Doc 78-1   Filed 07/21/14   Entered 07/21/14 14:39:57   Desc
Exhibit(s) 1 - 3   Page 7 of 151

(d)  Upon the death of the Grantor's husband (or upon the
Grantor's death, should he not survive her), the corporate Trustee shall,
subject to the later terms of this paragraph, deliver the then corpus
of the residual trust to the Grantor's then living issue per stirpes.
Should any one of such issue be then under the age of forty-five years
of age, the corporate Trustee shall retain in trust such issue's portion
of the residual trust and shall thereafter from time to time, with or
without the intervention of a guardian, use or apply for and/or pay to
such issue for his or her general welfare and comfort including, among other
things, support, maintenance, education, and hospital, medical, and
nursing expenses so much of the income and/or corpus of such portion as
it in its uncontrolled discretion may deem advisable free of this trust
until such issue attains the age of twenty-five, whereupon such issue shall
receive one-third of the then corpus of such portion free of this trust
and shall thereafter receive the net income from the balance of such cor-
pus in quarterannual installments or at such more frequent intervals as it
may deem advisable.  When such issue reaches thirty-five years of age,
he or she shall receive one-half of the then corpus of such portion free of
this trust, while the balance of such corpus shall be delivered to him or
her free of this trust when he or she attains the age of forty-five years.
However, before all of such corpus is so delivered to such issue, the
corporate Trustee may from time to time use or apply for and/or pay to such
issue for his or her general welfare and comfort including, among other
things, support, maintenance, education, and hospital and medical expenses
so much thereof as it in its uncontrolled discretion may deem advisable
free of this trust.

ARTICLE TWO

The Grantor reserves the right at any time or times by instruments

in writing signed by her and delivered to the Trustees before her death to terminate or revoke this trust in whole or in part and to amend, alter, change, or modify this trust or any part or parts thereof; provided, however, that Articles Three and Seven shall not be amended, altered, changed, or modified without the Trustee's written consent. Upon any such revocation or termination, the Trustees shall deliver the then trust estate or such portions thereof designated by the Grantor to her or to such other party or parties as she may in writing designate free of this trust; and the receipt of such party or parties shall be sufficient discharge to the Trustees for such of the trust estate so delivered. The Grantor is to have no right to terminate, revoke, amend, alter, change, or modify this trust or any part or parts thereof by her will.

Other property may be granted, assigned, transferred, devised, bequeathed, or delivered from time to time to the Trustees by the Grantor or by anyone else to be held and administered by the Trustees under the provisions of this agreement as a part of the trust estate to the same effect as if such property had been at this time transferred hereunder to the Trustees.

ARTICLE THREE

Clause 1. The Trustees are hereby authorized and empowered at such times, upon such terms and conditions, and in such manner as they in their uncontrolled discretion may deem advisable to act as follows with the "trust property" (which designation "trust property" shall include the trust estate, the marital trust, the residual trust, and/or any part or parts thereof and any and all investments and reinvestments thereof): To retain as permanent any now existing investments (including stock of the corporate Trustee or in any of its affiliates and holding companies) of the trust property and any investments hereafter transferred to the Trustees;

to invest the trust property and from time to time to alter, change, or vary
such investments and reinvestments thereof without being confined to invest-
ments lawful through statute or otherwise for fiduciaries in the State of
Virginia, the Trustees being expressly authorized to invest in such real
estate and personal property as they in their uncontrolled discretion may
deem advisable including, but without being limited to, mortgages, notes,
bonds, common and/or preferred stocks and debentures of private and/or pub-
lic service corporations (including stock in the corporate Trustee or in any
of its affiliates and holding companies) and interests in any one or more
common trust funds at any time or times established and maintained by the
corporate Trustee for the collective investments of funds held by it alone
(or with others) in fiduciary capacities and being expressly given uncon-
trolled discretion as to the times within which all investments and rein-
vestments are to be made, the nature and character of the same, and the
rates of interest and/or income thereon; to sell, resell, exchange, or other-
wise dispose of the trust property, all sales to be made at public auction or
privately for cash or credit; to lease the trust property, the leases whereof
may be for terms extending beyond the period of any trust herein provided;
to make any repairs, alterations, additions, and improvements to the trust
property; to mortgage, encumber, or pledge the trust property; to borrow
money without any personal liability to the Trustees therefor and to secure
the same by mortgages, pledges, or other encumbrances upon the trust property;
to join in any lease, mortgage, consolidation, merger, exchange, reorganiza-
tion, exchange of stock for that of a holding company, or foreclosure of any
corporation or other business organization the bonds, stocks, or other
securities of which constitute the trust property, to take and hold any
securities and/or investments issued under such plan, and to pay any assess-
ments, charges, or expenses involved therein; to vote in person or by general
or restricted proxy any and all shares of corporate stock (including stock
of the corporate Trustee, its affiliates and holding companies) constituting

Case 3:09-cv-00575-HEH   Document 1-1   Filed 09/14/09   Page 25 of 58 PageID# 33
Case 13-33011-KRH   Doc 78-1   Filed 07/21/14   Entered 07/21/14 13:59:57   Desc
Exhibit(s) 1 - 3   Page 10 of 151

the trust property; to cause any stock or other securities comprising a
part of the trust property to be registered or placed in the name of any
person, firm, or corporation (other than the Trustees) as nominee without
disclosing or describing this trust and to keep the same in such nominee's
name as long as they may deem such action advisable; to make division or
distribution of the trust property in kind, in money, or partly in both;
to compromise and adjust any claims against or in favor of the trust
property; and to make all instruments necessary or proper to effectuate the
powers hereinabove provided. Notwithstanding anything hereinabove to the
contrary, the Grantor's husband shall have the power in writing to direct
the Trustees to convert all or any part of the corpus of the marital trust
which may at any time be uninvested, or, if invested, be unproductive of
income, into income producing property selected by the Trustees in accordance
with the powers of sale and investments hereinabove conferred in this
Clause 1.

Clause 2. The Trustees are authorized and empowered from time
to time, upon such terms and conditions, and in such manner as they in
their uncontrolled discretion may deem advisable and for the best inter-
ests of the beneficiaries of the residual trust, to use all or any part
or parts of the corpus of the residual trust (a) to acquire by purchase
or exchange from the personal representatives of the Grantor's estate
and/or the trustees under her will any property, real or personal, consti-
tuting a part of her estate or any investment or reinvestment thereof,
such purchase to be at such prices privately or at public auction as the
Trustees in their uncontrolled discretion may deem advisable and (b) to
make such loans or advances of money to the said personal representatives
and/or trustees and/or the Grantor's estate in such amounts and upon such
terms and conditions either without security or upon such security as the
Trustees in their uncontrolled discretion may deem advisable. The Trustees
are hereby authorized to retain as permanent investments of the residual

trust all property received by them by purchase or exchange under the provisions of this Clause, and in addition all powers given to them in Clause 1 of this Article shall apply fully to all such property. The Trustees shall not be liable for any loss or diminution to the residual trust resulting from their exercise of any powers conferred upon them in this Clause. The powers in this Clause are given to the Trustees for the purpose of enabling them to prevent the sacrifice of the assets in the Grantor's estate through conversion into cash to pay administration expenses, taxes, and debts should the Trustees in their uncontrolled discretion deem it advisable so to do, as those interested in the residual trust will profit by the prevention of any such sacrifice. However, such powers are entirely discretionary with the Trustees and are in no way obligatory upon them; and the failure of the Trustees to exercise such powers shall not subject them to liability to anyone.

Clause 3. Should either of the Trustees at any time fail or cease to act, then all title, powers, authorities, and discretions which otherwise would be possessed by both shall be possessed by the one so accepting or so continuing to act. However, the powers of encroachment upon corpus given in any part of Article One hereof to the corporate Trustee shall in no event and under no circumstances pass to or be exercisable by the Grantor's husband as Trustee. Should at any time the corporate Trustee fail or cease to act as Trustee hereunder, then, if and when any person or corporation is appointed by an appropriate court as substituted trustee in its place and stead, such substituted trustee shall, in addition to succeeding to the title, powers, authorities, and discretions (other than said powers of encroachment upon corpus) which the corporate Trustee would have possessed as Trustee had it been still acting, also possess the said power of encroachment upon corpus to the same extent and effect as the corporate Trustee would have so possessed had it been still acting as Trustee. Should at any time both of

the Trustees fail or cease to act as such, then all title, powers, authori-
ties, and discretions which otherwise would be possessed by both and/or by
either (including the said powers of encroachment upon corpus) shall be
possessed by any successor trustee or trustees duly appointed to administ-
er the trusts hereunder.

## ARTICLE FIVE

Should the Grantor and her husband die simultaneously or at so
nearly the same time that there is no sufficient evidence that they died
other than simultaneously, it shall be conclusively presumed for all purpos-
es relative to this agreement and the dispositions under the marital trust that
the Grantor died before he died, any rule of law or statute to the contrary
notwithstanding.

## ARTICLE SIX

The Trustees accept the trusts, duties, and obligations herein
provided and agree to perform the same as hereinabove set forth.  In so
doing, they may employ appropriate agents and/or attorneys; but they shall
not be liable to any parties interested herein for any act, default, or mis-
conduct of such agents and/or attorneys selected by them with due care.

## ARTICLE SEVEN

As compensation for its services hereunder, the corporate Trustee
shall receive a commission of five per cent uponthe annual gross income
of the trust estate, the marital trust, and the residual trust and all
subsequent additions thereto.  The individual trustee shall receive no
compensation for acting as a Trustee hereunder.

IN WITNESS WHEREOF the Grantor and the individual Trustee have
hereunto set their respective hands and seals, and the corporate Trustee
has caused its corporate name to be signed hereto and its corporate seal

Case 3:09-cv-00575-HEH   Document 1-1   Filed 09/14/09   Page 28 of 58 PageID# 36
Case 13-33011-KRH   Doc 78-1   Filed 07/21/14   Entered 07/21/14 14:39:57   Desc
Exhibit(s) 1 - 3    Page 13 of 151

to be hereto affixed and duly attested by its duly authorized officers.

_____ (SEAL)
Rosalie S. Karo

_____ (SEAL)
Andrew T. Karo

THE CENTRAL NATIONAL BANK OF RICHMOND, VIRGINIA,

Attest: _____    By _____
Assistant Trust Officer              Vice President and Senior Trust Officer

"SCHEDULE A"

Attached to and forming part of Trust Agreement dated October 18, _____, 1966, between ROSALIE S. KARO as Grantor and ANDREW T. KARO and THE CENTRAL NATIONAL BANK OF RICHMOND, VIRGINIA, as Trustees

The following constitute the property which the Grantor grants, assigns, transfers, and delivers unto the Trustees to be held and administered by them upon the trusts set forth in this Agreement.

```
   320 shs   American Telephone & Telegraph Co., capital
   136 shs   Beech-Nut Life Savers, Inc., common
   404 shs   Bristol-Myers Co., common
   400 shs   Broad-Grace Arcade Corp., preferred
13,844 shs   The Central National Bank of Richmond, capital
    55 shs   The Chase Manhattan Bank, capital
   100 shs   E. I. duPont DeNemours & Co., common
   386 shs   General Motors Corp., common
   651 shs   Jewel Tea Co., Inc., common
   810 shs   The Life Insurance Co. of Virginia, capital
 1,495 shs   Honeywell, Inc., common
   100 shs   Pacific Lighting Corp., common
   100 shs   Phillips Petroleum Co., capital
    62 shs   Standard Oil of New Jersey, capital
   480 shs   Sterling Drug, Inc., common
   750 shs   Virginia Electric & Power Co., common
     7 shs   Warner-Lambert Pharmaceutical Co., $4 cumulative convertible
   152 shs   Warner-Lambert Pharmaceutical Co., common

             Cash -- $102.29
```

This "Schedule A" is incorporated as a part of the said Trust Agreement.

_Rosalie S. Karo_
Rosalie S. Karo

_Andrew T. Karo_
Andrew T. Karo

THE CENTRAL NATIONAL BANK OF RICHMOND, VIRGINIA,

By _____
Vice President and Senior Trust Officer

Westlaw.

712 F.Supp.2d 476
**(Cite as: 712 F.Supp.2d 476)**

**H**

United States District Court,
E.D. **Virginia**,
Richmond Division.
W.A.K., II, a Minor, by Page S. **KARO**, His Next
Friend, Natural Guardian and Mother, Plaintiff,
v.
WACHOVIA BANK, N.A. et al., Defendants.

Civil Action No. 3:09CV575–HEH.
May 12, 2010.

**Background:** Beneficiary brought action in state court against corporate trustee for breach of fiduciary duty, alleging that trustee failed to diversify the trust portfolio and left a disproportionate volume of trust assets in the corporate trustee's stock. Trustee removed the action to federal court and filed third-party complaint seeking indemnification from plaintiff's father, who was another trust beneficiary. Parties moved for summary judgment.

**Holdings:** The District Court, Henry E. Hudson, J., held that:
(1) terms of trust waived the requirements of the prudent investment rule as related to the trust property at the trust's creation and any investments later transferred to the trust;
(2) corporate trustee did not breach its fiduciary duty of prudence by failing to assume control as sole trustee and unilaterally sell its own stock held by the trust as soon as it was viewed as imprudent to retain a concentrated amount;
(3) corporate trustee did not breach its fiduciary duty of prudence by failing to provide advice to co-trustee about investment-worthiness of corporate trustee's stock;
(4) corporate trustee did not improperly delegate third-party defendant to act as a co-trustee in violation of its fiduciary duty of loyalty;
(5) corporate trustee did not violate its fiduciary duty of loyalty by issuing $200,000 in trust

distributions to third-party defendant; and
(6) corporate trustee had no duty to seek a court's intervention in pursuing diversification of the trust assets.

Plaintiff's motion denied in part; defendant's motion granted in part.

West Headnotes

**[1] Trusts 390 ☞217.3(5)**

390 Trusts
   390IV Management and Disposal of Trust Property
      390k216 Investments
         390k217.3 Nature of Investment or Security in General
            390k217.3(5) k. Prudent man rule. Most Cited Cases
     Terms of trust waived the requirements of the prudent investment rule under **Virginia** law as related to the trust property at the trust's creation and any investments later transferred to the trust, where trust empowered trustees to take actions as they in their uncontrolled discretion might deem advisable, authorized the trustees to retain as permanent any existing investments of the trust property and any investments thereafter transferred to the trustees, and authorized the trustees to invest the trust property and from time to time alter, change, or vary such investments and reinvestments thereof without being confined to investments lawful through statute or otherwise for fiduciaries. West's V.C.A. § 26–45.3.

**[2] Trusts 390 ☞263**

390 Trusts
   390IV Management and Disposal of Trust Property
      390k245 Actions Between, By, or Against Trustees
         390k263 k. Trial. Most Cited Cases
     Under **Virginia** law, the question of whether

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT
2

712 F.Supp.2d 476
**(Cite as: 712 F.Supp.2d 476)**

the language of a trust effectively waives the prudent investor rule is one for the court. West's V.C.A. § 26–45.3.

**[3] Trusts 390 ☞217.3(9)**

390 Trusts
    390IV Management and Disposal of Trust Property
        390k216 Investments
           390k217.3 Nature of Investment or Security in General
                390k217.3(9) k. Retention or reinvestment. Most Cited Cases
    Provision of trust authorizing trustees to permanently retain investments originally in trust, including stock of bank acting as corporate trustee, and any investments thereafter transferred to trustees was applicable to stock of trustee's successor, and thus no breach of the duty of prudence was committed by retaining successor's stock; trust referred to existing investments rather than by referring to predecessor trustee's stock by name, successor's stock was transferred into trust at time of merger with predecessor and, therefore, fell under exemption of investments transferred to trustees, and post-merger entity was deemed the same corporation as bank which preceded the merger pursuant to National Banking Act and **Virginia** Banking Act. National Bank Consolidation and Merger Act, § 3(e), 12 U.S.C.A. § 215a(e); West's V.C.A. § 6.1–36.

**[4] Trusts 390 ☞217.3(6)**

390 Trusts
    390IV Management and Disposal of Trust Property
        390k216 Investments
           390k217.3 Nature of Investment or Security in General
                390k217.3(6) k. Income and diversification. Most Cited Cases

**Trusts 390 ☞239**

390 Trusts
    390IV Management and Disposal of Trust Property
        390k238 Cotrustees
           390k239 k. Joint or several authority. Most Cited Cases
    Under **Virginia** law, corporate trustee did not breach its fiduciary duty of prudence by failing to assume control as sole trustee and unilaterally sell its own stock held by the trust as soon as it was viewed as imprudent to retain a concentrated amount; trust required action by co-trustees jointly, corporate trustee provided advice to co-trustee recommending that the trust diversify its assets, and co-trustee withheld consent to do so. West's V.C.A. §§ 26–45.4, 55–548.04.

**[5] Trusts 390 ☞231(1)**

390 Trusts
    390IV Management and Disposal of Trust Property
        390k231 Individual Interest in Transactions
        390k231(1) k. In general. Most Cited Cases

**Trusts 390 ☞238.1**

390 Trusts
    390IV Management and Disposal of Trust Property
        390k238 Cotrustees
        390k238.1 k. In general. Most Cited Cases
    Bank acting as trustee for trust that owned stock in the bank did not breach its fiduciary duty of prudence under **Virginia** law by failing to provide advice to co-trustee about investment-worthiness of bank's stock; giving advice on sale or purchase of bank's stock could have resulted in violations of prohibitions on self-dealing, bank provided numerous disclaimers acknowledging its potential conflict of interest and giving co-trustee the ultimate authority to direct the trustees' actions, and co-trustee acknowledged and ratified the disclaimers. West's V.C.A. §§ 6.1–24, 55–548.02.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

712 F.Supp.2d 476
**(Cite as: 712 F.Supp.2d 476)**

Page 3

**[6] Trusts 390 ☞176**

390 Trusts
    390IV Management and Disposal of Trust Property
        390k176 k. Delegation of powers and duties. Most Cited Cases
    Corporate trustee did not improperly delegate beneficiary to act as a co-trustee in violation of its fiduciary duty of loyalty under **Virginia** law, even though beneficiary was referred to in an e-mail and a credit memorandum as a co-trustee, and he endorsed several documents approving the trust's retention of the corporate trustee's stock; beneficiary endorsed the documents in his capacity as a beneficiary and on behalf of a co-trustee pursuant to a durable power of attorney, and the scant e-mail and credit memorandum reference did not constitute actual delegation of duties. West's V.C.A. § 55–548.02.

**[7] Trusts 390 ☞238.1**

390 Trusts
    390IV Management and Disposal of Trust Property
        390k238 Cotrustees
            390k238.1 k. In general. Most Cited Cases
    Under **Virginia** law, corporate trustee did not breach its fiduciary duty of loyalty by failing to treat co-trustee as an unavailable trustee, act as the sole trustee, and unilaterally sell its own stock held by the trust as soon as it was viewed as imprudent to retain a concentrated amount, even if corporate trustee's employees did not meet with co-trustee face-to-face or speak directly with him, since co-trustee did not fail to act, but signed documents and acted through his agent on numerous occasions. West's V.C.A. § 55–548.02.

**[8] Trusts 390 ☞231(1)**

390 Trusts
    390IV Management and Disposal of Trust Property

        390k231 Individual Interest in Transactions
            390k231(1) k. In general. Most Cited Cases
    Corporate trustee did not breach its fiduciary duty of loyalty under **Virginia** law by sending letters of retention to co-trustee and beneficiary seeking authorization to hold the corporate trustee's own stock and stating that it could not monitor or manage the trust's stock in the corporate trustee; advice from corporate trustee on the sale or purchase of its stock could have resulted in violation of the prohibition on self-dealing, and the letters notified the co-trustee and beneficiary of the potential conflict and reminded them of their authority to direct investment of trust assets. West's V.C.A. § 55–548.02.

**[9] Trusts 390 ☞231(1)**

390 Trusts
    390IV Management and Disposal of Trust Property
        390k231 Individual Interest in Transactions
            390k231(1) k. In general. Most Cited Cases

**Trusts 390 ☞276**

390 Trusts
    390V Execution of Trust by Trustee or by Court
        390k276 k. Expenditure of principal. Most Cited Cases
    Corporate trustee did not violate its fiduciary duty of loyalty under **Virginia** law by issuing $200,000 in trust distributions to beneficiary, which were used to reduce his personal debt to the trustee; trust authorized trustee to make payments to beneficiary for his general welfare and comfort in its uncontrolled discretion, paying down beneficiary's debt provided for his welfare and comfort, and it was within trustee's discretion to make those payments upon beneficiary's request, regardless of which creditor he intended to pay. West's V.C.A. § 55–548.02.

**[10] Trusts 390 ☞217.3(6)**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

712 F.Supp.2d 476
**(Cite as: 712 F.Supp.2d 476)**

390 Trusts
    390IV Management and Disposal of Trust Property
        390k216 Investments
            390k217.3 Nature of Investment or Security in General
                390k217.3(6) k. Income and diversification. Most Cited Cases
    Corporate trustee had no duty under **Virginia** law to seek a court's intervention in pursuing diversification of the trust assets, which predominantly consisted of the corporate trustee's stock; language of the trust waived the prudent investor rule with respect to the corporate trustee's stock, trust granted both the corporate trustee and co-trustee the authority to take action with regard to investment decisions in their uncontrolled discretion, and co-trustee made the decision to withhold consent to diversification, as was his right under the terms of the trust. West's V.C.A. § 26–45.3.

**[11] Trusts 390 ⚖═231(1)**

390 Trusts
    390IV Management and Disposal of Trust Property
        390k231 Individual Interest in Transactions
            390k231(1) k. In general. Most Cited Cases
    Any failure of corporate trustee to monitor the stock of the trustee in the trust and to warn and protect the trust did not amount to a breach of the fiduciary duty of loyalty under **Virginia** law, since giving advice on the sale or purchase of its stock could have resulted in violation of the prohibition on self-dealing. West's V.C.A. § 55–548.02.

**\*479** Churchill G. Bowles, Bowles Affiliates PC, Joseph Earl Blackburn, Jr., Blackburn Conte Schilling & Click PC, Richmond, **VA**, for Plaintiffs.

William Paul Childress, III, David Alan Rudlin, Hunton & Williams LLP, Richmond, **VA**, for Defendants.

*MEMORANDUM OPINION* (Cross Motions for Summary Judgment)
HENRY E. HUDSON, District Judge.
    This case involves a dispute over the stewardship of the assets of an inter vivos trust. It is before the Court on cross motions for summary judgment. Plaintiff W.A.K. II ("W.A.K." or "Plaintiff"), a minor presently twelve years old, has moved for summary judgment on all issues except for damages. Defendant/Third–Party Plaintiff Wachovia Bank N.A. ("Wachovia," "Bank," or "Defendant") filed a motion for summary judgment on all counts in W.A.K.'s complaint and for partial summary judgment against Third–Party Defendant William A. **Karo** ("Drew Karo ") as to Count I of the Third–Party Complaint. Drew **Karo** moved for summary judgment as to all counts in the Third–Party Complaint. The parties have submitted memoranda of law in support of their respective positions, and the Court heard oral argument on May 4, 2010. For the reasons stated herein, Plaintiff's motion is denied-in-part, and Defendant's motion is granted-in-part.

*I.*

    The trust at issue in this case was created for certain designated members of the **Karo** family. On October 18, 1966, Rosalie S. **Karo** established the **Karo** Inter Vivos Residual Trust ("Trust") for the benefit of her husband, Andrew T. **Karo** ("Toney **Karo** "), and her descendants. The couple's son, Drew **Karo** (Third–Party Defendant), and minor grandson, W.A.K., are the couple's only living issue. The Trust originally established Central National Bank ("CNB") and Toney **Karo** as co-trustees. CNB later merged with Central Fidelity Bank and subsequently with Wachovia, which currently serves as a Trustee. Mrs. **Karo** established the Trust with a number of assets, but predominately CNB common stock.

    Through a series of bank mergers, the Trust became the holder of a number of shares of Wachovia stock, and this stock has remained a significant portion of the Trust's assets. On October

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

712 F.Supp.2d 476
(Cite as: 712 F.Supp.2d 476)

17, 2007, the Trust owned 60,000 shares of Wachovia common stock, constituting approximately *480 65 percent of the Trust's assets. On several occasions between 2003 and 2007, Wachovia recommended to Toney and Drew **Karo** that the Trust diversify its assets, but the **Karos** withheld consent to do so. In fact, Toney and Drew signed several "Letters of Retention" ("LORs") acknowledging Wachovia's advice but indicating a desire to preserve the Trust's ownership of the Wachovia stock. In recent years, Wachovia's stock price suffered a substantial decline, as did that of most banking institutions. As Wachovia's share price declined, so did the value of the Trust.

W.A.K., a remainderman of the Trust,[FN1] brought this suit in the Circuit Court for the City of Richmond alleging that Wachovia failed to uphold its fiduciary duties as a Trustee. The Defendant removed the case to this Court on September 14, 2009. Plaintiff filed an Amended Complaint on November 9, 2009. Count I alleges that Wachovia breached its fiduciary duty of prudence by failing to diversify the Trust portfolio, leaving a disproportionate volume of trust assets in Wachovia stock. Count II claims that Wachovia breached its fiduciary duty of loyalty, alleging that the bank failed to assume control and act as the sole trustee, allowed Drew **Karo** to act as a co-trustee, made improper distributions, improperly solicited disclosure letters, and failed to monitor or warn about the declining value of the Wachovia stock. Count III asks the Court to remove Wachovia as a Trustee.

      FN1. On August 13, 2008, Toney **Karo** disclaimed his income interest in the Trust, and Drew **Karo** disclaimed his remainder interest in the Trust on January 28, 2009.

On November 17, 2009, Wachovia brought a third-party complaint against Drew **Karo**. Count I of the third-party complaint seeks indemnification from Drew **Karo** for any judgment, costs, and expenses incurred in the underlying litigation as a result of the letters of retention signed by Drew.

Count II alleges that Wachovia is entitled to contribution from Drew for any liability found in the underlying suit. Count III asks for equitable recovery of distributions made from trust funds to Drew between 2006 and 2008.

## II.

The Court may grant either party's motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that [the moving party] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts ... in the light most favorable to the non-moving party." *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990) (internal quotations omitted).

## III.

### A. Count I–Duty of Prudence

In Count I, Plaintiff W.A.K. alleges a breach of fiduciary duty of prudence by Defendant Wachovia for failure to diversify the trust assets.

### *481 1. Retention of Wachovia Stock

The Prudent Investor Rule, as codified in Va.Code § 26–45.4 [FN2] and § 55–548.04, lays out the standard of care that a trustee must exercise in managing a trust. This rule requires that the trustee "invest and manage trust assets as a prudent investor would ... considering [all] circumstances of the trust ... [and] exercising reasonable care, skill,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

712 F.Supp.2d 476
**(Cite as: 712 F.Supp.2d 476)**

and caution." Va.Code § 26–45.4.

> FN2. Va.Code § 26–45.4 is incorporated into the Uniform Trust Code by Va.Code § 55–548.01.

Wachovia's defense to this claim is three-fold. Wachovia argues that the trust effectively waived the Prudent Investor Rule, that Toney, as co-trustee, repeatedly declined to consent to the sale of Wachovia stock, and lastly, that Drew instructed Wachovia to retain the stock despite the Bank's advice to the contrary and that his waiver is binding on the Plaintiff, his minor son.

### a. Waiver of the Prudent Investor Rule

[1] Wachovia argues first that the terms of the Trust waived the requirements of the Prudent Investor Rule, precluding liability for the investment decisions at issue. The Prudent Investor Rule "may be expanded, restricted, eliminated, or otherwise altered by the provisions of a trust." Va.Code § 26–45.3. For such a waiver to be effective, the language of the trust must "expressly manifest [ ] an intention that [the Rule] be waived" in one of the following ways:

(i) by reference to "prudent man" or "prudent investor" rule,

(ii) by reference to power of the trustee to make "speculative" investments,

(iii) by an express authorization to acquire or retain a specific asset or type of asset such as a closely held business, or

(iv) by other language synonymous with (i), (ii) or (iii).

*Id.* Wachovia argues that the **Karo** Trust expressly manifests an intent to waive the requirements of the Prudent Investor Rule and authorized retention of specific assets.

Article Three of the **Karo** Trust vests the Trustees with broad discretion in the investment of the Trust assets. Three provisions are particularly relevant. First, the Trust empowers the Trustees to take actions "as they in their uncontrolled discretion may deem advisable," subject to certain conditions. Second, the Trust authorizes the Trustees "[t]o retain as permanent any now existing investments (including stock of the corporate Trustee or in any of its affiliates and holding companies) of the trust property and any investments hereafter transferred to the Trustees...." Thirdly, the Trust authorizes the Trustees "to invest the trust property and from time to time alter, change, or vary such investments and reinvestments thereof without being confined to investments lawful through statute or otherwise for fiduciaries in the State of **Virginia**...."

[2] The question of whether the language of a trust effectively waives the Prudent Investor Rule is one for the court. *See, e.g., Hoffman v. First Va. Bank,* 220 **Va.** 834, 841, 263 S.E.2d 402, 407 (1980). In considering the language of the **Karo** Trust, the Court finds that it waived the requirements of the Prudent Investor Rule as it related to the Trust property at the Trust's creation (specifically including stock of the corporate trustee and related companies) and any investments later transferred to the Trust. Although the language of waiver was not so broad as to grant an unlimited waiver of the Prudent Investor Rule, the language unequivocally expressed Rosalie **Karo's** intent that the Trustees could maintain the initial assets of the Trust (specifically including the stock of the corporate Trustee) and any *482 assets transferred to the Trust without being bound by the Prudent Investor Rule.

[3] Plaintiff argues that the authorization to retain the investments originally in the trust applies only to the CNB stock and not to the successor Wachovia stock. Plaintiff argues that the Court must conduct an analysis similar to that in *Hirsh v. Hirsh,* 209 **Va.** 630, 166 S.E.2d 286 (1969), to determine whether the Wachovia stock should be treated as the equivalent of the CNB stock. In

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

712 F.Supp.2d 476
**(Cite as: 712 F.Supp.2d 476)**

*Hirsh,* the trust at issue prohibited the "selling, transferring or exchanging [of] Lock Joint stock without the approval of certain beneficiaries of the trust...." *Id.* at 630, 166 S.E.2d at 286. Lock Joint merged with another company to form Interpace. In subsequent litigation, the **Virginia** Supreme Court confronted the question of whether the prohibition on sale of the Lock Joint stock applied equally to the Interpace stock. *Id.* at 630–34, 166 S.E.2d at 286–88. To answer this question, the court was required to determine whether the new stock was "substantially equivalent" to its predecessor. *Id.* at 634, 166 S.E.2d at 288–89.

For several reasons, this Court is not convinced that a *Hirsh* —type analysis is necessary in this case. First, the **Karo** Trust, rather than referring to the CNB stock by name, refers only to "any now existing investments (including stock of the corporate Trustee or in any of its affiliates and holding companies)...." The Trust appears to stake out a specific exemption for the stock of the corporate trustee, whoever it may be at a particular time. Second, and perhaps more specifically, the Trust exempts "any investments hereafter transferred to the Trustees...." The Wachovia stock was not acquired by purchase. It was transferred into the Trust at the time of the merger and thus falls under the exemption of investments "transferred to the Trustees." Third, as Defendant notes, the National Banking Act states that when a state or national bank merges into a national bank, like Wachovia, the post-merger entity is deemed to be the same corporation as the bank which preceded the merger. 12 U.S.C. § 215a(e); *Cannon v. Dixon,* 115 F.2d 913, 915 (4th Cir.1940); *see also* Va.Code § 6.1–36 (similar rule under the **Virginia** Banking Act).

Since the Trust's waiver of the Prudent Investor Rule applies to the retention of the Wachovia stock, no breach of the duty of prudence was committed by its retention. Furthermore, Wachovia's duty only required that its interpretation of the Trust language be reasonable and relied on in good faith. As the

Uniform Trust Code states, "A trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance." Va.Code § 55–550.06. **Virginia** law further provides that "[a] trustee shall not be liable to a beneficiary for the trustee's good faith reliance on a waiver of the [prudent investor rule]." Va.Code § 26–45.3. Wachovia's interpretation of the Trust language was at least a *reasonable* interpretation, relied on in good faith.

***b. Toney Karo's Actions as Co–Trustee***

Wachovia argues additionally that it is not liable for the losses suffered by the Trust because Toney, as a co-trustee, consented to the retention of the Wachovia stock. The Trust named Toney and CNB as co-trustees. As stated in the Amended Complaint, "On several occasions, [Wachovia] recommended the Trust's 60,000 share Wachovia stock position be diversified, but Toney and Drew did not agree." Am. Compl. ¶ 14. On October 3, 2003, Toney signed a document provided by Wachovia entitled "Direction to Retain–Wachovia Corporation Security." The document acknowledged that Toney directed the retention **\*483** of 65,000 shares of Wachovia stock despite the fact that it was unwise and contrary to Wachovia's investment policies. The document specifically released Wachovia from liability and responsibility for Toney's investment decision and indemnified Wachovia for any resulting losses or damages. The document also stated that it would remain in effect until withdrawn. On April 11, 2004, Toney signed a similar document again provided by Wachovia, this time covering 65,000 shares of Wachovia common stock and 71,612 shares of Wachovia preferred stock. Toney signed a third retention document on September 29, 2005, reiterating the bank's investment warnings. Wachovia sent a fourth document to Drew and Toney on October 17, 2007, this time covering only the 60,000 shares of Wachovia stock. On November 7, 2007, Drew signed on behalf of his father,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

712 F.Supp.2d 476
**(Cite as: 712 F.Supp.2d 476)**

withholding consent to diversification and stating that it was executed under authority of a Power of Attorney. There is no evidence that any of these retention documents were returned unsigned or that Toney ever attempted to rescind these retention authorizations.

### c. Waiver by Drew Karo

Based on the execution of the above-described documents, Wachovia additionally argues that the trust beneficiaries waived any potential claims for breach of the duty of prudence resulting from retention of Wachovia stock. **Virginia** law provides in pertinent part that:

A trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the conduct constituting the breach, released the trustee from liability for the breach, or ratified the transaction constituting the breach, unless:

1. The consent, release, or ratification of the beneficiary was induced by improper conduct of the trustee; or

2. At the time of the consent, release, or ratification, the beneficiary did not know of the beneficiary's rights or of the material facts relating to the breach.

Va.Code § 55–550.09. It is clear that Toney and Drew consented to the retention of the Wachovia stock through the various LORs. The remaining question, however, is whether Wachovia's actions somehow breached their duty to Plaintiff W.A.K., a minor and residual remainderman. Wachovia alleges that Drew, as W.A.K.'s parent, had authority to consent to Wachovia's actions on W.A.K.'s behalf. **Virginia** law provides that "[a] parent may represent and bind the parent's minor or unborn child if a guardian of the estate or guardian for the child has not been appointed" and there is no conflict of interest between the parent and the minor. Va.Code § 55–543.03; see also Va.Code § 55–543.04. In assessing the conflict issue, these statutes permit

the Court to examine whether interests are aligned only with respect to the "particular question or dispute." Va.Code §§ 55–543.03,–543.04. Precedent from **Virginia** courts applying these statutes is scant and unilluminating. Consequently, this Court is reluctant to interpret this statute in the absence of state court guidance unless critical to the resolution of this case.

The Court, however, is satisfied that the terms of the Trust, coupled with Toney's actions as co-trustee, as detailed above, do not demonstrate an actionable breach of duty of prudence on Wachovia's part. Accordingly, with respect to the conflict issue, the Court does not reach this issue but doubts that a conflict exists under the circumstances presented in this case. Plaintiff urges the Court to consider Drew's requests for distributions from the Trust corpus as being at tension with W.A.K.'s interests. The "particular question or dispute" presented is the investment **\*484** strategy of the remaindermen. At the time the letters of retention were submitted, Drew had not disclaimed his interest in the Trust and was still a remainderman. Although some of the distributions to Drew were used to retire personal debt, others defrayed family-related expenses. Moreover, at the time, Drew relied on the Trust as an income source. Therefore, both Drew and W.A.K. had an interest in the long-term growth of assets in the Trust. As such, the Court doubts their interests were in conflict in this context. See NationsBank of **Virginia**, N.A. v. Estate of Grandy, 248 **Va.** 557, 560, 450 S.E.2d 140, 142–43 (1994).

### 2. Failure to Act as Sole Trustee

[4] Next, Plaintiff argues that Wachovia should have treated Toney as an "'unavailable' co-trustee" and assumed control as sole trustee.[FN3] Article Three, Clause 3 of the Trust provides that "[s]hould either of the Trustees fail or cease to act, then all title, powers, authorities, and discretions which otherwise would be possessed by both shall be possessed by the one so accepting or so continuing to act." The Court is unpersuaded by Plaintiff's

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

712 F.Supp.2d 476
**(Cite as: 712 F.Supp.2d 476)**

argument that Toney's instructions should be disregarded. Plaintiff alleges that Toney "had little interest or disposition to be involved in Trust matters...." Toney's subjective interest in being involved in the Trust is irrelevant. Under the terms of the Trust, the assets were administered under the joint direction of Wachovia and Toney. While Toney assumed a passive role, he unquestionably assisted in governing the Trust's administration throughout the life of the Trust. With respect to the Trust's ownership of Wachovia stock, Toney signed retention documents in 2003, 2004, and 2005, as mentioned above. In November of 2006, Toney signed a letter authorizing a withdrawal of $100,000 from the Trust. In other instances, Drew acted on Toney's behalf through the exercise of a lawful durable power of attorney. While Plaintiff may take issue with the consequences of Toney's investment decisions, he is unable to direct the Court's attention to any specific instances of a knowing failure to act.

> FN3. The parties have stipulated that all claims and contentions that Toney lacked the capacity to serve as a co-trustee are withdrawn. The Court will view W.A.K.'s allegation only that Toney *failed* to act; not that he lacked the capacity to do so.

Toney's continued participation in governing the Trust also detracts from W.A.K.'s argument that Wachovia abused its discretion by retaining the Wachovia stock. W.A.K. argues that Wachovia had the independent duty to unilaterally sell the Wachovia stock as soon as it was viewed as imprudent to retain a concentrated amount. The Trust, however, required action by the Trustees jointly. Wachovia provided advice to Toney that he chose to disregard. As long as Toney withheld consent, Wachovia was powerless to act. Consequently, this contention cannot support a breach of prudence claim.

**3. Failure to Provide Advice on Wachovia Stock**

[5]   Alternatively, Plaintiff contends that Wachovia breached its duty of prudence by failing

to provide advice to the co-trustee about the investment-worthiness of Wachovia stock. Such advice, however, has obvious legal and practical implications.

First, Plaintiff argues that "It is a breach of the fiduciary duty of loyalty for a trustee to administer its own stock in a trust unless authorized to do so." Mem. in Supp. of Mot. for Summ. J. at 12. Plaintiff further argues that "Because the **Karo** Trust does not exclude any assets from the trustee's investment responsibilities, the **\*485** trustees have a duty to monitor, advise and protect regarding all trust assets, including Wachovia stock." *Id.* Plaintiff's logic would place Wachovia in an untenable position—it could either give advice on the Wachovia stock and violate the duty of loyalty, or it could abstain and violate the duty of prudence.[FN4] At oral argument, Plaintiff argued that Wachovia should have given Toney publicly-available information regarding the investment-worthiness of Wachovia stock. Plaintiff's argument, however, ignores the necessary implications of the prohibition on self-dealing by a corporate trustee. **Virginia** law specifically prohibits a bank acting as a trustee from purchasing trust assets from itself. Va.Code § 6.1–24. **Virginia** law also bars a trustee from engaging in transactions with a corporation in which the trustee has a significant interest, subject to certain exceptions. Va.Code § 55–548.02. A necessary corollary precludes a bank serving as a trustee from circumventing this prohibition by enlisting a co-trustee to conduct the conflicted transaction. Plaintiff's argument that Wachovia should have advised on its own stock flies in the face of this prohibition.

> FN4. Advice by Wachovia in this manner could potentially be the basis of an accusation of trading on insider information. 17 C.F.R. § 240.10b–5.

In recognition of these potential conflicts, Wachovia provided numerous disclaimers acknowledging its potential conflict of interest in the Trust's ownership of Wachovia stock. In

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

712 F.Supp.2d 476
**(Cite as: 712 F.Supp.2d 476)**

addition to these admonitions, the disclaimers stated Wachovia's policy of diversification of Trust assets unless directed otherwise, giving Toney and Drew the ultimate authority to direct the Trustees' actions. Toney acknowledged and ratified the disclaimer in 2003. Toney and Drew did so together in 2004 and 2005, and Drew signed on his and Toney's behalf in 2007. Wachovia satisfied its duty by disclosing the conflict to Toney and Drew and giving them the ultimate authority to direct the investment. Wachovia fulfilled all duties required under **Virginia** law and the terms of the trust instrument.

### B. Count II–Duty of Loyalty

Count II of the Amended Complaint alleges a breach of fiduciary duty of loyalty. As a fiduciary, a trustee owes a duty of loyalty to the beneficiaries of the trust. Va.Code § 55–548.02. The Restatement, Third of Trusts lays out the duty of loyalty in detail:

(1) Except as otherwise provided in the terms of the trust, a trustee has a duty to administer the trust solely in the interest of the beneficiaries, or solely in furtherance of its charitable purpose.

(2) Except in discrete circumstances, the trustee is strictly prohibited from engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests.

(3) Whether acting in a fiduciary or personal capacity, a trustee has a duty in dealing with a beneficiary to deal fairly and to communicate to the beneficiary all material facts the trustee knows or should know in connection with the matter.

Restatement (Third) of Trusts § 78 (2007).

W.A.K. argues that Wachovia breached its duty of loyalty through several actions. The Court will address each in turn.

### 1. Improper Trustee Delegation

[6] First, Plaintiff alleges that Wachovia violated its duty of loyalty through "improper trustee delegation" by "permitting Drew to act as a co-trustee by consulting with and executing Bank administration documents." As stated above, *486 Drew endorsed several documents that approved retention of Wachovia stock, but he did so in different capacities. Drew signed the 2004, 2005, and 2007 letters as a beneficiary. A beneficiary can authorize a trustee to engage in an otherwise prohibited transaction. § 55–548.02(B)(4). Drew's signing as a beneficiary did not somehow convert him to a co trustee.

Drew also signed the 2007 letter on behalf of Toney pursuant to a durable power of attorney. Such a delegation of trustee duties is consistent with Va.Code § 55–548.07. Plaintiff's argument rests on two references to Drew as a "co-trustee" in an e-mail and a credit memorandum. Such scant references do not constitute actual delegation of duties. Plaintiff points to no actions by Wachovia or Drew that would legally or factually elevate Drew to a "co-trustee."

### 2. No Unanimous Trustee Action

[7] Next, Plaintiff redeploys his contention that Wachovia should have treated Toney as an unavailable co-trustee and should have acted as the sole trustee. As discussed above, Toney did not fail to act. Toney signed documents or acted through his agent on numerous occasions. Plaintiff's allegations that Wachovia employees did not meet with Toney face-to-face or speak directly with Toney is of little import. Toney's actions speak for themselves. Plaintiff's purported disagreement with his grandfather's investment decisions has no effect on the Trustees' duties. This theory of breach is without legal support.

### 3. Misleading Exculpation Requests

[8] Plaintiff alleges that the numerous LORs sent to Toney and Drew seeking authorization to hold Wachovia stock were self-serving, misleading, and constituted a violation of the duty of loyalty. Plaintiff argues that these letters misrepresented

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

712 F.Supp.2d 476
**(Cite as: 712 F.Supp.2d 476)**

Wachovia's fiduciary duties by stating that it could not monitor or manage the Trust's Wachovia stock. As stated above, if Wachovia had given advice on the sale or purchase of Wachovia stock, it could have found itself in violation of the prohibition on self-dealing. The LORs notified the co-trustee and beneficiary of the potential conflict and reminded them of their authority to direct the investment of Trust assets. The content of these disclosures was factually and legally sound and did not constitute a breach of the duty of loyalty.

### 4. Self–Serving Discretionary Distributions

[9] Plaintiff alleges that Wachovia further violated its duty of loyalty by issuing $200,000 in trust distributions to Drew, which were apparently used to reduce his personal debt to Wachovia. Plaintiff argues that these distributions amounted to self-dealing. In 2007 and 2008, Drew wrote to Faye Harris, a vice president with Wachovia, requesting $100,000 in trust funds. Both of Drew's letters stated: "These funds will be directly used to curtail several credit card balances and credit lines that I have with Wachovia." The language of the Trust gives the corporate trustee the authority to make distributions to support Drew's "general welfare and comfort." The validity of these financial obligations do not appear to be at issue.

A beneficiary may void a transaction that violates the trustee's duty of loyalty unless "[t]he transaction was authorized by the terms of the trust." Va.Code § 55–548.02 (other exceptions apply). Wachovia was, in this case, acting pursuant to language in the Trust that authorized it to make such distributions "in its uncontrolled discretion." The **Virginia** Supreme Court has held that a Trustee acting under such authority is only liable if the beneficiary establishes that it acted dishonestly, in bad faith, or abused its discretion. *487 *Hoffman,* 220 **Va**. at 842, 263 S.E.2d at 408. The Trust authorized the corporate trustee to make payments to Drew for his "general welfare and comfort including, among other things, support, maintenance, education, and hospital, medical, and

nursing expenses" Paying down Drew's credit card balances and credit lines provided for Drew's welfare and comfort. It was within Wachovia's discretion to make these payments upon his request, regardless of which creditor Drew intended to pay. Where the Trust authorizes such payments, the trustee's decision to act accordingly is not an abuse of discretion. *Hoffman,* 220 **Va**. at 842, 263 S.E.2d at 408.

### 5. Failure to Seek Guidance from a Court

[10] On an alternative front, Plaintiff maintains that Wachovia violated its fiduciary duty of loyalty by not seeking a Court's intervention in pursuing diversification of the Trust assets. Plaintiff points to Wachovia's seeking of guidance in a similar but unrelated case, *Wachovia Bank v. Gray,* Case No. CH05–1546 (Richmond City Cir. Ct.), as evidence that Wachovia was aware of its duty to do so in cases of this type. Plaintiff cites the Second Restatement of Trusts, which Wachovia relied upon in the *Gray* case, for the proposition that Wachovia was duty-bound to seek a court's guidance in resolving a deadlock between trustees. In relevant part, the Restatement explains:

> If the circumstances are such that it is the duty of the trustees to exercise a power conferred upon them, and one of them refuses to concur in the exercise of the power, the other trustees are not justified in merely acquiescing in the non-exercise of the power. See § 185. In such a case it is their duty to apply to the court for instructions.

Restatement (Second) of Trusts § 184 cmt. c (1959). For this provision to apply, there must be an action that the trustees, as fiduciaries, are required to exercise. As discussed above, the language of the Trust waived the Prudent Investor Rule for the Wachovia stock. It was not a breach of fiduciary duty to retain the Wachovia stock, and there was thus no duty to seek a court's intervention. Additionally, the Trust granted both Toney and the corporate trustee the authority to take action with regard to investment decisions "in their uncontrolled discretion." Toney made the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

712 F.Supp.2d 476
**(Cite as: 712 F.Supp.2d 476)**

decision to withhold consent to diversification, as was his right under the terms of the Trust.[FN5] There was no legal duty for Wachovia to seek the aid and guidance of a court.

> FN5. Also critical to the analysis is the well-reasoned basis for Toney's decision to not diversify. Aff. of Frederick Hall ¶¶ 9, 14 (stating that Toney, through Drew, expressed his desire to retain the Wachovia stock for tax reasons, historic stock performance, and sentimental considerations); Aff. of Faye Harris ¶ 19 (same).

**6. Failure to Monitor, Warn, and Protect**

[11] Finally, Plaintiff argues that Wachovia's failure to monitor the Wachovia stock in the Trust constituted a breach of the duty of loyalty. Plaintiff contends that any perceived prohibition on giving advice on its own stock was trumped by an "over-arching duty to be prudent and to monitor, warn and protect the Trust even if it holds its own stock." As discussed above, were Wachovia to give advice on the sale or purchase of Wachovia stock, it could have found itself in violation of the prohibition on self-dealing. Therefore, Wachovia's decision to abstain from giving advice on its own stock was a legally-sound decision and not a violation of its fiduciary duty.

**\*488 IV.**

For the reasons stated above, Plaintiff's motion for summary judgment is denied as to Counts I and II of the Amended Complaint. Defendant's motion for summary judgment is granted as to Counts I and II of the Amended Complaint. The Court finds that Wachovia did not violate the fiduciary duty of prudence or the fiduciary duty of loyalty owed to Plaintiff.

Plaintiff's and Defendant's motions for summary judgment as to Count III of the Amended Complaint and the motions for summary judgment on the Third–Party Complaint remain pending. Should the parties wish to continue prosecuting

these remaining claims, the Court will rule on these aspects of the motion on a later date.

An appropriate Order will accompany this Memorandum Opinion.

E.D.Va.,2010.
W.A.K. ex rel. Karo v. Wachovia Bank, N.A.
712 F.Supp.2d 476

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

No. 10-2023

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

**W.A.K. II,** *by his next friend* **PAGE KARO,**
*Plaintiff/Appellant,*

v.

**WACHOVIA BANK, N.A.,**
*Defendant/Appellee.*

_____

**On Appeal from the United States District Court
for the Eastern District of Virginia
Richmond Division**

_____

### DEFENDANT-APPELLEE'S MOTION TO DISMISS APPEAL
### AS NOT WITHIN THE JURISDICTION OF THE COURT[*]

_____

D. Alan Rudlin
William P. Childress
**HUNTON & WILLIAMS LLP**
951 East Byrd Street
Richmond, Virginia 23219

*Counsel for Defendant-Appellee*

_____

[*]Pursuant to Local Rule 27(a), Plaintiff-Appellant intends to file a response in opposition.

EXHIBIT
3

## I.    PRELIMINARY STATEMENT

Defendant-Appellee Wachovia Bank, N.A. ("Wachovia"),[1] pursuant to Federal Rule of Appellate Procedure 27, respectfully moves for the dismissal of this appeal on the ground that the Court lacks subject matter jurisdiction over the case.  The Plaintiff-Appellant ("W.A.K.") seeks review of the district court's May 12, 2010 Opinion and Order ("Order") dismissing breach of fiduciary claims he asserted as a beneficiary of a trust fund and the district court's award of attorney's fees and costs to Wachovia.  This Court lacks jurisdiction to hear this appeal because W.A.K. has been divested of standing by an event that occurred after the district court's Order, which precludes W.A.K. from having any further cognizable interest in the property at issue here.  At the time of filing his lawsuit below, W.A.K.'s standing was derived from his prior status as a current principal beneficiary and as a contingent beneficiary of the Karo Residual Trust Fund ("Karo Trust" or "Trust").  Following the district court's summary judgment ruling, the lifetime beneficiary of the Karo Trust died, thereby terminating the Karo Trust and W.A.K.'s interest in the fund.  This Court should dismiss this appeal based on this intervening event.

---

[1] On or about March 20, 2010, Wachovia Bank, N.A. became Wachovia Bank, a division of Wells Fargo Bank, N.A.

## II.   BACKGROUND & PROCEDURAL HISTORY

As described by the district court in its opinion granting Wachovia's motion for summary judgment, "This case involves a dispute over the stewardship of the assets of an inter vivos trust." *W.A.K. v. Wachovia Bank, N.A.*, Case No. 3:09CV575, slip op. at 1 (E.D. Va. May 12, 2010); Doc. No. 90, which is attached as Exhibit A.[2] The Karo Trust was primarily funded with a concentration of bank stock, which it consistently retained for decades. W.A.K. alleges Wachovia breached fiduciary duties by allowing the Karo Trust to maintain this concentration and seeks to recover on behalf of the Trust losses allegedly incurred as a result. W.A.K.'s father, also a current principal beneficiary and the presumptive remainder beneficiary, and his grandfather, the lifetime income beneficiary and co-trustee, had repeatedly refused to allow the concentration to be reduced. Am. Compl. ¶ 14, Doc. No. 28.

### A.   THE KARO TRUST FUND

In October 1966, W.A.K.'s grandmother, Rosalie Schwarzschild Karo ("Mrs. Karo"), established a trust fund, which she funded primarily with stock in the Central National Bank ("CNB"), a bank her father had founded in Richmond,

---

[2] Pursuant to F.R.A.P. 27(a)(2)(B), Wachovia also submits affidavits and exhibits in support of this Motion. These exhibits are largely derived from summary judgment exhibits filed in the district court.

Virginia. A successor of CNB later merged with Wachovia. Mrs. Karo named CNB and her husband, Andrew T. Karo ("Toney Karo"), as co-trustees of the Trust and each shared investment authority for the Trust. Mrs. Karo died in 1974.

The Karo Trust agreement directed the trustees to pay Toney Karo for his lifetime all net trust income. *See* Article I, clause 4(c), attached at Exhibit B-1. The Karo Trust agreement also broadly authorized the corporate trustee to make distributions from the Trust's corpus to any of Rosalie Karo's issue for "such issue's general welfare and comfort." *Id*. The Trust agreement further provided that upon Toney Karo's death, the Karo Trust terminated and the corpus of the Karo Trust was to be distributed to Mrs. Karo's "then living issue per stirpes." *Id*. clause 4(d). Rosalie and Toney Karo had one child, William A. Karo ("Drew Karo"). Drew Karo has one child, W.A.K., II ("W.A.K."), who was born in 1998. *See* Harris Affidavit, attached as Exhibit B (hereafter "Harris Aff."). Drew Karo and W.A.K. are Mrs. Karo's only "issue," and both were authorized to seek discretionary distributions of corpus from the Karo Trust during Toney Karo's lifetime. As Mrs. Karo only child, Drew Karo was also the presumptive taker of the Trust, and W.A.K. would receive the remainder only if his father died before Toney Karo and W.A.K. survived both Toney Karo and Drew Karo.

## B. Drew Karo's History with the Karo Trust

Drew Karo has benefited substantially from the Karo Trust for over a decade. Starting as early as 1996 and continuing through 2009, Drew Karo requested and received multiple distributions from the corpus of the Karo Trust. Harris Aff. ¶ ¶ 6-15; *see also* Exhibit B-2. Additionally, in 1995, Drew Karo borrowed over $100,000 from the Karo Trust to purchase a home. Harris Aff. ¶ ¶ 16-17; *see also* Exhibit B-3.

In August of 2008, Drew Karo, using his power of attorney for Toney Karo, attempted to disclaim Toney Karo's interest in the Trust. Harris Aff. ¶ ¶ 18-21; Exhibit B-4. In doing so, Drew Karo contended the disclaimer, "effected a transfer of [Toney's] income interest to [Drew], thereby terminating the Trust in favor of [Drew]" or alternatively, that the disclaimer had "resulted in a merger of all Trust interests as a fee in [Drew]." Exhibit B-4. On October 8, 2008, after Wachovia had questioned the disclaimer's legal validity and refused to deliver the corpus to Drew Karo, Drew Karo filed suit in the Circuit Court for the City of Richmond, Virginia to have the Karo Trust terminated and the assets distributed to himself. *Id.* Specifically, Drew Karo requested the state court to enter a judgment declaring that he "is now vested with ownership of all Karo Trust assets . . . ." *Id.* However, the state court ruled that the disclaimer made by Drew Karo for his father was barred under Virginia law. *Id.*; *see also* Am. Compl. ¶ 8, Doc. No. 28. Shortly

-4-

thereafter, on January 6, 2009, the state court entered another order granting Drew Karo's request to modify the Karo Trust to permit distributions of principal to Toney Karo, while adding a spendthrift clause to protect the trusts assets from creditors. Exhibit B-1. In part, this spendthrift clause states: "the beneficiaries hereunder shall have no right to anticipate, to pledge or in any manner to alienate their interest either the income arising from or the corpus of any trust created hereunder . . ." *Id.*

Approximately three weeks later, on January 30, 2009, Drew Karo delivered a second disclaimer to Wachovia by which he purported to disclaim his own remainder interest in the corpus of the Trust. Harris Aff. ¶ 22; Exhibit 5. He did <u>not</u> disclaim his present right to receive discretionary distributions of principal and in fact, thereafter continued to request and receive principal distributions from the Trust. Harris Aff. ¶ 23.

## C. Federal Court Litigation by W.A.K.

Just months after Drew Karo's personal disclaimer, W.A.K. filed suit in Virginia state court through his mother and next friend, Page Karo. The case was removed to federal court. In this suit, W.A.K. asserted: (1) a claim for breach of the duty of prudence; (2) a claim for breach of the duty of loyalty; and (3) a claim seeking removal of Wachovia as trustee of the trust fund. Am. Compl., Doc. No. 28. W.A.K. sought to have Wachovia held liable for the decline in value the Karo

Trust allegedly suffered based on the concentration of bank stock it held during the financial crisis of 2008. W.A.K. also sought to recover $200,000 of distributions from the Karo Trust that Wachovia had authorized to Drew Karo. *Id.*

On November 17, 2009, Wachovia filed a third-party complaint against Drew Karo related to indemnity agreements he had signed, whereby he agreed to indemnify Wachovia for any losses it incurred as a result of continuing to hold the bank stock. Doc. No. 30. On March 15, 2010, each party filed a motion for summary judgment, in whole or in part. On May 12, 2010, the Court issued an Opinion, and entered an Order on the cross motions for summary judgment. Doc. No. 90, attached as Exhibit A. In this Opinion and Order, the district court granted Wachovia's motion for summary judgment as to the breach of fiduciary duty claims with prejudice (Counts I and II). W.A.K. then voluntarily dismissed his claim seeking removal of Wachovia as trustee (Count III). The district court later granted Wachovia's motion for summary judgment against Drew Karo, holding him contractually liable for Wachovia's reasonable attorney's fees incurred in defending W.A.K.'s suit and in prosecuting the third-party complaint. Drew Karo did not appeal the district court's ruling. In this appeal, W.A.K. seeks review of the district court's dismissal of Counts I and II of the Amended Complaint, the breach of fiduciary duty claims.

### D. DEATH OF TONEY KARO

Toney Karo died on or about May 17, 2010, after the district court's May 12, 2010 entry of summary judgment for Wachovia. Harris Aff. ¶ 24. Upon Toney Karo's death, his lifetime interest terminated and the trust remainder vested in the "then living issue per stirpes" of Mrs. Karo. *See* Article I, clause 4(d), attached at Exhibit B-1. Although both Drew Karo and W.A.K. survived Toney Karo, Drew Karo became the sole vested remainder beneficiary at Toney Karo's death unless his second disclaimer attempt on January 30, 2009 was valid under Virginia law. Thus, Toney Karo's death materially altered the beneficiaries' interest and rights with respect to the Karo Trust.

### III.   SUMMARY OF ISSUE

The question before this Court is whether the death of the income beneficiary, Toney Karo, has divested W.A.K. of standing to pursue claims against Wachovia related to its stewardship of the Karo Trust. To answer this question, the Court must address whether Drew Karo's disclaimer of January 30, 2009 is valid under Virginia law. If the disclaimer was not valid, the appeal must be dismissed. W.A.K. only has a cognizable interest in this litigation if his father, Drew Karo, is deemed to have predeceased him for purposes of Virginia law.

In the typical case of intervening mootness, the effect of a subsequent event on party's standing is self-evident. *See Tiverton v. Pastore*, 469 U.S. 238, 239

(1985) (dismissing *writ of certiorari* as moot where business challenging revocation of its liquor license went out of business, so that "no decision on the merits by this Court can now have an effect on the [establishment's] liquor license"). Here, the mootness determination is more complex because it must be discerned from the factual and legal background from which this case arises.

Because Drew Karo survived Toney Karo, W.A.K.'s standing is completely premised upon the validity of Drew Karo's disclaimer. If this disclaimer was valid, Virginia law treats Drew Karo as having predeceased Toney Karo for purposes of determining his interests in the remainder of the Trust. The disclaimer now directly implicates the Court's jurisdiction and therefore its validity and effect must be determined.

## IV.    DISCUSSION OF AUTHORITY

### A. INTERVENING MOOTNESS REQUIRES DISMISSAL

Counsel for Wachovia are obligated to bring the question of the disclaimer's validity and effect on W.A.K.'s standing to this Court's attention so it may properly determine whether there is jurisdiction over this appeal. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 68, n.23 (1997) (stating that counsel has a duty to bring facts that may raise a question of mootness to a court's attention). Jurisdiction is a threshold question that must be satisfied before the merits of the case can be decided. *See Steel Co. v. Citizens for a Better Env't,* 523

U.S. 83, 101-102 (1998). Mootness has been described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizona*, 520 U.S. at 67, n. 22. A plaintiff who originally had standing to file suit may lose that standing during the course of the litigation by a subsequent intervening event that eliminates his or her interest in the litigation. *See id.* at 68-71; *see also White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 457 (4th Cir. 2005) (standing depends not upon the merits, but on whether the plaintiff has a cognizable interest and is a proper party).

### B. TONEY KARO'S DEATH DIVESTS W.A.K. OF STANDING

If Drew Karo's disclaimer was invalid, then W.A.K. lacks standing to maintain this suit as a result of Toney Karo's death. W.A.K.'s suit is not one for individual damages; rather, it is a surcharge action to have Wachovia restore money to the Karo Trust. His claims are equitable. *See* Restatement of Trusts (Second) §§ 199, 205 (1959). At the time this suit was filed, W.A.K.'s standing derived from his status as a beneficiary holding a present interest (discretionary distributee) and a future interest (contingent remainderman) in the Karo Trust. *See* Va. Code § 55-550.01 (allowing "beneficiary" to bring claims against a trustee); and § 55-541.03 (defining "beneficiary" as "a person that has a present or future beneficial interest in a trust, vested or contingent"). "Any beneficiary of a trust can

maintain a suit against the trustee . . . for breach of trust," including "a beneficiary

who only has a future interest that is contingent." 6 Mark Asher et al., *Scott &*

*Asher on Trusts* § 24.4 (rev. 5th ed. Supp. 2010). However, if an event occurs

which makes it "impossible for the contingent beneficiary to take, he or she has no

standing to maintain a suit against the trustee." *Id.* Based on the terms of the Karo

Trust, in the absence of a valid disclaimer by Drew Karo, the remainder interest

vested solely in Drew Karo upon Toney Karo's death; the Karo Trust is deemed

terminated and all other interests in the corpus are now extinguished. Drew Karo

survived his father, and there are sufficient undisputed facts in the record for this

Court to find his disclaimer of the remainder interest is invalid under Virginia law.

## C. THE VIRGINIA UNIFORM DISCLAIMER ACT GOVERNS VALIDITY

Here, the effectiveness of the "disclaimer" is governed by the Virginia

Uniform Disclaimer of Property Interests Act.[3] *See* Va. Code §§ 64.1-196.1 et seq.

A valid disclaimer is treated as a refusal to accept property. *See* Va. Code § 64.1-

196.1. Accordingly, the effect of a valid disclaimer is that the property passes

from the original transferor directly to the substituted taker, determined as if the

disclaimed interest would have taken effect in possession or enjoyment. *See* Va.

Code § 64.1-196.1; *Abbott v. Willey*, 479 S.E.2d 528, 529-530 (1997) (finding

---

[3]. This statute is based on the Uniform Disclaimer of Property Interests Act
(UDPIA). "Some form of the UDPIA has been enacted in at least nineteen states."
*Carvalho v. Estate of Carvalho*, 978 A.2d 455, 460 (Vt. 2009).

valid disclaimer "relates back" to the creation of the interest" and the disclaimant is
treated as having died before effective date of transfer) (decided under former law);
*see also Drye v. United States*, 528 U.S. 49, 53 (1998) (analyzing Arkansas law).
As a consequence of this legal fiction, a valid disclaimer is not considered a
"transfer, assignment, or release." Va. Code § 64.1-196.4(G).  On the other hand,
an invalid disclaimer is the equivalent of a transfer from the disclaimant to the
substituted taker.  Va. Code § 64.1-196.12(F).

To be effective under Virginia law, the disclaimer must satisfy several
requirements.  First, the disclaimer of an interest in a trust must:  (1) be in writing;
(2) declare the disclaimer; (3) describe the interest disclaimed; (4) be signed by the
disclaimant; and (5) be delivered to the trustee  *See* Va. Code §§ 64.1-196.4 (D), 1-
196.11(E).  In addition to these procedural requirements, the disclaimer must not
otherwise be barred by the law.

Virginia law bars a disclaimer if, before the disclaimer becomes effective,
the disclaimant "accepts the interest sought to be disclaimed" or "the disclaimant
voluntarily assigns, conveys, encumbers, pledges, or transfers the interest sought to
be disclaimed or contracts to do so[.]" Va. Code § 64.1-196.12(B)(i)-(ii).  These
statutory provisions reflect the common law principle that an individual cannot

-11-

"refuse to accept" an interest if he or she has previously enjoyed its benefits or exercised control or otherwise acted in a manner consistent with ownership.[4]

Wachovia does not question whether procedural requirements for a valid disclaimer have been met in this case. However, in order for this Court's jurisdiction to continue to exist, this Court must find that Drew Karo neither personally accepted the interest he later sought to disclaim nor voluntarily encumbered it. Virginia, like most jurisdictions, looks to the beneficiary's conduct prior to disclaiming to determine if the disclaimer is barred. The degree of dominion and control a beneficiary has attempted to exercise over property is an important factor in evaluating whether a disclaimer is valid because taking, or attempting to take, control of property is a hallmark of "acceptance."

In *Niklason v. Ramsey*, 353 S.E.2d 783, 784 (Va. 1987), applying an earlier version of the disclaimer statute, the Supreme Court of Virginia found a disclaimer was invalid because the beneficiary had exercised "dominion and control" over the interest which he sought to disclaim. The beneficiary in the *Niklason* case had

---

[4] *See also* George Gleason Bogert, *Law of Trusts and Trustees* § 172 (rev. 2d. ed. Supp. 2009) ("If a beneficiary accepts the benefits from a trust or interest therein, he is considered as having been a beneficiary from the date when the settlor's acts of trust creation were completed . . . [Acceptance] also imposes upon him any burdens or liabilities which ownership of the equitable interest involves."); *Id.* § 171 ("Right to disclaim may be barred if the beneficiary by words or conduct has accepted the gift interest . . ."); *see also In re Estate of Gates*, 596 N.Y.S.2d 194, 197 (N.Y. App. Div. 1993) ("Acceptance . . . connotes an act of voluntarily receiving something or consensually acceding to it.").

entered into a contract to divide his mother's estate in certain proportions before
attempting to disclaim his interest in the estate. The Court found the disclaimant's
agreement with his family members to divide their mother's estate prevented him
from later disclaiming his interest. *Id.* at 784 ("We are persuaded that by
contracting away whatever interest he may have had in his mother's estate, Hugh
exercised dominion over her estate . . ."). Thus, acceptance may be found where
the beneficiary merely attempts to control the interest he has disclaimed.

Other jurisdictions follow a similar standard regarding barred disclaimers of
property. For example, after analyzing case law on barred disclaimers from
multiple jurisdictions, including Virginia, the Ninth Circuit distilled the following
standard for determining the validity of a disclaimer: a disclaimer is prohibited
when the beneficiary's conduct <u>implies an intent</u> by him to direct or control the
property in a manner that conveys more than a *de minimis* benefit to the
beneficiary or a third party. *In re Kolb*, 326 F.3d 1030, 1037 (9th Cir. 2003).
Thus, if a beneficiary's conduct suggests that he <u>intended</u> to accept property, he
may not later disclaim that property. *Id.* at 1038.

In applying this standard, the Ninth Circuit found that by merely listing a
contingent remainder interest on a loan application the beneficiary had implicitly
accepted the interest for purposes of California's disclaimer statute, which is
similar to Virginia's. Drew Karo's acceptance, both implied and express, here has

-13-

been far more extensive; multiple undisputed facts indicate that prior to his disclaimer in January of 2009, Drew both accepted the benefits of the trust corpus and affirmed his own status as the presumptive remainderman. He therefore could not later "refuse to accept" the remainder interest. In short, his disclaimer was barred under Virginia law.

## D. ACTS BARRING THE DISCLAIMER

On January 30, 2009, Drew Karo purportedly disclaimed his remainder interest in the corpus of the Karo Trust; however, in the years prior to disclaiming, Drew Karo consistently evidenced his intent to accept this property. He requested and obtained hundreds of thousands of dollars from the corpus. More significantly, he sued to obtain outright ownership of the very assets he later sought to disclaim. These acts, whether viewed cumulatively or in isolation, show the disclaimer is barred under Virginia law. Va. Code § 64.1-196.12(B); *accord* Treas. Reg. § 25.2518-2(d)(1) ("Acceptance is manifested by an affirmative act which is consistent with ownership of the interest in property. Acts indicative of acceptance include using the property or the interest in property; accepting dividends, interest, or rents from the property; and directing others to act with respect to the property or interest in property.")[5]

---

[5] Although federal tax law on disclaimers is distinct from state law on the issue, state high courts have found federal law on the issue instructive in interpreting their own disclaimer statutes. *See, e.g., Badouh v. Hale*, 22 S.W.3d 392, 397 (Tex.

1.     **Drew Karo declared he owned the property before disclaiming.**

For a disclaimer to be valid under Virginia law, the beneficiary must "disclaim" before accepting the interest. In August of 2008, Drew Karo disclaimed his father's lifetime interest in the income of the Trust through a power of attorney and asserted that this act terminated the Trust, thereby vesting the corpus in him. When Wachovia refused to recognize Toney Karo's disclaimer as valid and deliver the corpus to Drew Karo, he filed suit in Virginia state court to compel distribution of the funds he had claimed he owned. In that suit, filed on October 8, 2008, Drew Karo requested the state court "enter a judgment declaring that [he] is now vested with ownership of all Karo Trust assets." Exhibit B-4. In multiple other pleadings filed in the suit, he repeatedly argued the Trust had terminated "in his favor, thereby vesting ownership of all Trust assets in him on August 13, 2008." *Id.*

Unlike *Kolb*, where an intent to accept a remainder interest was implied, Drew Karo overtly attempted to obtain the property through this litigation. He unequivocally represented to the state court that the property was his. *See In re Will of Hall*, 456 S.E.2d 439, 441 (S.C. Ct. App. 1995) (finding that by representing she was the owner of property for purposes of selling it, beneficiary

---

2000) ("We believe the Internal Revenue Code's qualified disclaimer section is instructive on the issue of what actions qualify as an exercise of dominion and control.").

had accepted property and could not disclaim it).   Drew Karo's desire and intent to accept the remainder interest was explicit by his words and actions.   Consequently, Drew Karo accepted the remainder interest for purposes of Virginia Code § 64.1-196.12(B)(i).   The plain terms of the statute compel the conclusion that the disclaimer is barred by Drew Karo's overt attempts to obtain the property through litigation.

### 2.   <u>Drew Karo accepted benefits from Trust before disclaiming</u>.

Even without Drew Karo's express claims of ownership in state court, his disclaimer would still be barred.   His "acceptance" of the remainder interest in the Karo Trust is further evidenced by substantial principal sums he requested and received from the corpus both before and after disclaiming.   From 1996 through the date he purportedly disclaimed, Drew requested numerous distributions from the Karo Trust, which he was entitled to seek.   As a result of these requests, the corpus was repeatedly invaded for his benefit. *See* Harris Aff. ¶¶ 6-15; Exhibit B-2.   One of W.A.K.'s core allegations in this case is that  Drew Karo received $400,000 in distributions from the corpus of the Karo Trust between 2006 and 2008.   Am. Compl. ¶ 35, Doc. No. 28.   Accordingly, there is no dispute that Drew Karo obtained considerable distributions from the corpus – the very property he sought to disclaim. *See, e.g., Hartsfield v. Lescher*, 721 F. Supp. 1052, 1055 (E.D. Ark. 1989) (finding receipt of payments from trust constitutes "acceptance" and bars a

subsequent disclaimer of interest).  Under the plain terms of Virginia Code § 64.1-196.12(B)(i), Drew Karo's request and acceptance of these benefits also serve as a bar to his disclaimer.

### 3.    Drew Karo encumbered his interest before disclaiming.

A disclaimer is also barred under Virginia Code § 64.1-196.12(B)(ii) if "the disclaimant voluntarily assigns, conveys, encumbers, pledges, or transfers the interest sought to be disclaimed . . . ."  The record indicates that Drew repeatedly encumbered his interest in the Karo Trust.

First, in 1995, Drew Karo borrowed $117,000 from the Trust to purchase property. Harris Aff. ¶¶ 16-17; Exhibit B-3.  Under equitable principles of trust law, Drew Karo's interest in the Karo Trust was pledged to secure repayment of this loan.  The Restatements (Second) of Trusts provides that if a beneficiary owes a debt to a trust fund in which he holds a beneficial interest then his interest can be subject to a charge for the amount he owes to the trust. § 251 cmts. a-d.  Based on his status as a beneficiary, the loan made to Drew Karo was secured by his interest in the Karo Trust and an equitable lien attached to this interest.  This lien should be considered an encumbrance for purposes of Virginia Code § 64.1-196.12(B)(ii). *See Badouh v. Hale*, 22 S.W.3d 392, 396-97 (Tex. 2000).

Similarly, as a beneficiary, Drew Karo executed multiple indemnification agreements related to the investments held or obtained by the Karo Trust. *See* Am.

-17-

Compl. ¶ 15 and Am. Compl. Exhibits, Doc. No. 28.  Pursuant to the Restatements
(Second) of Trust, when a beneficiary agrees to indemnify a trustee for the manner
in which the trust is administered, he places his interest in the trust subject to a
charge.   § 256 cmt. d.   Under contract law, a right to payment based on an
indemnification agreement arises <u>at the time</u> the indemnification agreement is
executed.  *See, e.g., Woburn Assocs. v. Kahn (In re Hemmingway Transport, Inc.),*
954 F.2d 1, 9 (1st Cir. 1992); *In re THC Financial Corp.,* 686 F.2d 799, 802-04
(9th Cir. 1982) ("[A] contractual indemnification claim exists as a contingent claim
against the indemnitor as of the date the indemnification agreement is executed." ).
Thus, each of these indemnification agreements encumbered Drew Karo's interest
at the time of execution because he agreed to assume certain future liabilities,
costs, and expenses incurred by the trustee in the administration of the trust.  These
agreements barred any subsequent disclaimer.

### 4.   <u>Drew Karo's Disclaimer is Illusory</u>.

Drew Karo disclaimed his remainder interest in the Trust corpus while
retaining his ability to request and receive distributions from corpus during his
father's life.   Even if one ignores the multiple acts of "acceptance" described
above, Drew Karo's disclaimer was simply illusory.  Although the Virginia statute
allows a person to disclaim "any interest" in property, Va. Code § 64-1-196.4,
general principles of law and equity still apply.  Va. Code § 64-1-196.3  Unlike a

beneficiary who disclaims a remainder interest while retaining an income interest
(or vice versa), Drew Karo purportedly disclaimed the remainder of the Karo Trust
while effectively retaining the right as a current principal beneficiary to receive the
very same property during Toney Karo's lifetime, without any limitation. Harris
Aff. ¶ 22; Exhibit B-5. Any distribution of principal Drew Karo received as a
current beneficiary necessarily reduced the amount of principal remaining in the
Trust at Toney Karo's death. In short, it is not possible to say what, if anything,
Drew Karo actually disclaimed.

### E. TRANSFER RESULTING FROM INVALID DISCLAIM IS BARRED BY TRUST

For the reasons stated above, there are sufficient undisputed facts to show
Drew Karo's disclaimer was invalid under Virginia Code § 64.1-96.12(B). By
law, therefore, the attempted disclaimer operated as an affirmative "transfer" from
Drew Karo to W.A.K. *See* Va. Code § 64.1-196.12(F)("a disclaimer of an interest
in property, which is barred by this section, takes effect as a transfer of the interest
disclaimed to the persons who would have taken the interest under this chapter had
the disclaimer not been barred."). However, because Drew Karo's invalid
disclaimer (transfer) occurred after a Virginia court modified the Karo Trust to
include a spendthrift provision, any "transfer" by Drew was a nullity. *See* Va.
Code § 55-545.02 ("A beneficiary may not transfer an interest in a trust in
violation of a valid spendthrift provision"); *Jackson v. Fid. and Deposit Co.*, 608

S.E.2d 901, 906 (Va. 2005). Therefore, upon Toney Karo's death, the remaining

Trust assets became Drew Karo's sole property, and W.A.K.'s standing was lost.

## V. CONCLUSION

Wherefore, for the reasons stated herein, Wachovia asks the Court to dismiss

this appeal for lack of subject matter jurisdiction because W.A.K. has been

divested of standing by the termination of the Karo Trust.


Pursuant to Local Rule 27(a), Counsel for Wachovia has informed Counsel

for Plaintiff-Appellant of the intended filing of this motion, and Counsel for

Plaintiff-Appellant intends to file a response in opposition.


**WACHOVIA BANK, N.A.**


_____/s/_____

D. Alan Rudlin (Bar # 17010)
William P. Childress (VSB # 72823)
**HUNTON & WILLIAMS LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Phone: 804-788-8200
Fax: 804-788-8218
Email: arudlin@hunton.com
Email: wchildress@hunton.com

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No. 10-2023**          **Caption:**     <u>W.A.K. v. Wachovia Bank, N.A.</u>

## CERTIFICATE OF SERVICE

The undersigned attorney herby certifies that on October 18, 2010 a true and correct copy of the foregoing Motion to Dismiss was electronically filed with the Clerk of Court using the CM/ECF system and a copy was <u>hand delivered</u> to the following counsel of record:

Joseph E. Blackburn, Jr., Esq.
Blackburn, Conte, Schilling & Click, PC
300 West Main Street
Richmond, Virginia 23220
Telephone: 804-782-1111
Facsimile: 804-648-3914

Bowlman T. Bowles, Jr., Esq.
Churchill G. Bowles, Esq.
404 W Franklin Street
Richmond, Virginia 23241-0085
Telephone: 804-780-0236
Facsimile: 804-780-9134

*Counsel for Appellant*

I further certify that a copy of the foregoing was sent by first-class mail to:
Paul McCourt Curley, Esq.
Canfield Baer LLP
2201 Libbie Avenue, Suite 200
Richmond, VA 23230

*Counsel for William A. ("Drew") Karo*

/s/ _____

D. Alan Rudlin
Attorney for Appellee              Dated: October 18, 2010

# Exhibit A

*W.A.K. v. Wachovia Bank, N.A.*, Case No. 3:09CV575, Summary Judgment Slip
Opinion and Order (E.D. Va. May 12, 2010); Doc. No. 90-91.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| W.A.K., II, A MINOR, BY ) <br> PAGE S. KARO, HIS NEXT FRIEND, ) <br> NATURAL GUARDIAN AND ) <br> MOTHER, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WACHOVIA BANK, N.A. *et al.*, ) <br> ) <br>     Defendants. ) | Civil Action No. 3:09CV575-HEH |

## MEMORANDUM OPINION
### (Cross Motions for Summary Judgment)

This case involves a dispute over the stewardship of the assets of an inter vivos trust. It is before the Court on cross motions for summary judgment. Plaintiff W.A.K. II ("W.A.K." or "Plaintiff"), a minor presently twelve years old, has moved for summary judgment on all issues except for damages. Defendant/Third-Party Plaintiff Wachovia Bank N.A. ("Wachovia," "Bank," or "Defendant") filed a motion for summary judgment on all counts in W.A.K.'s complaint and for partial summary judgment against Third-Party Defendant William A. Karo ("Drew Karo") as to Count I of the Third-Party Complaint. Drew Karo moved for summary judgment as to all counts in the Third-Party Complaint. The parties have submitted memoranda of law in support of their respective positions, and the Court heard oral argument on May 4, 2010. For the reasons stated herein, Plaintiff's motion is denied-in-part, and Defendant's motion is granted-in-part.


EXHIBIT
A

Case 13-33011-KRH    Doc 38-1    Filed 01/07/14    Entered 01/07/14 10:40:05    Desc
Exhibit(s) 1 - 9    Page 51 of 151
Case: 10-2023    Document: 17-2    Date Filed: 10/18/2010    Page: 3
Case 3:09-cv-00575-HEH    Document 90    Filed 05/12/10    Page 2 of 20

## I.

The trust at issue in this case was created for certain designated members of the Karo family. On October 18, 1966, Rosalie S. Karo established the Karo Inter Vivos Residual Trust ("Trust") for the benefit of her husband, Andrew T. Karo ("Toney Karo"), and her descendants. The couple's son, Drew Karo (Third-Party Defendant), and minor grandson, W.A.K., are the couple's only living issue. The Trust originally established Central National Bank ("CNB") and Toney Karo as co-trustees. CNB later merged with Central Fidelity Bank and subsequently with Wachovia, which currently serves as a Trustee. Mrs. Karo established the Trust with a number of assets, but predominately CNB common stock.

Through a series of bank mergers, the Trust became the holder of a number of shares of Wachovia stock, and this stock has remained a significant portion of the Trust's assets. On October 17, 2007, the Trust owned 60,000 shares of Wachovia common stock, constituting approximately 65 percent of the Trust's assets. On several occasions between 2003 and 2007, Wachovia recommended to Toney and Drew Karo that the Trust diversify its assets, but the Karos withheld consent to do so. In fact, Toney and Drew signed several "Letters of Retention" ("LORs") acknowledging Wachovia's advice but indicating a desire to preserve the Trust's ownership of the Wachovia stock. In recent years, Wachovia's stock price suffered a substantial decline, as did that of most banking institutions. As Wachovia's share price declined, so did the value of the Trust.

2

W.A.K., a remainderman of the Trust,[1] brought this suit in the Circuit Court for the
City of Richmond alleging that Wachovia failed to uphold its fiduciary duties as a
Trustee. The Defendant removed the case to this Court on September 14, 2009. Plaintiff
filed an Amended Complaint on November 9, 2009. Count I alleges that Wachovia
breached its fiduciary duty of prudence by failing to diversify the Trust portfolio, leaving
a disproportionate volume of trust assets in Wachovia stock. Count II claims that
Wachovia breached its fiduciary duty of loyalty, alleging that the bank failed to assume
control and act as the sole trustee, allowed Drew Karo to act as a co-trustee, made
improper distributions, improperly solicited disclosure letters, and failed to monitor or
warn about the declining value of the Wachovia stock. Count III asks the Court to
remove Wachovia as a Trustee.

On November 17, 2009, Wachovia brought a third-party complaint against Drew
Karo. Count I of the third-party complaint seeks indemnification from Drew Karo for any
judgment, costs, and expenses incurred in the underlying litigation as a result of the letters
of retention signed by Drew. Count II alleges that Wachovia is entitled to contribution
from Drew for any liability found in the underlying suit. Count III asks for equitable
recovery of distributions made from trust funds to Drew between 2006 and 2008.

## II.

The Court may grant either party's motion for summary judgment only "if the

---

[1] On August 13, 2008, Toney Karo disclaimed his income interest in the Trust, and Drew
Karo disclaimed his remainder interest in the Trust on January 28, 2009.

3

pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits . . . show that there is no genuine issue as to any material fact and that [the

moving party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The

"party seeking summary judgment always bears the initial responsibility of informing the

district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine

issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548,

2553 (1986). A genuine issue of material fact exists under Rule 56 "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When evaluating a

motion under Rule 56, the Court must construe all "facts and inferences to be drawn from

the facts . . . in the light most favorable to the non-moving party." *Miller v. Leathers*, 913

F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted).

### III.

### A. Count I–Duty of Prudence

In Count I, Plaintiff W.A.K. alleges a breach of fiduciary duty of prudence by

Defendant Wachovia for failure to diversify the trust assets.

#### 1. Retention of Wachovia Stock

The Prudent Investor Rule, as codified in Va. Code § 26-45.4[2] and § 55-548.04,

lays out the standard of care that a trustee must exercise in managing a trust. This rule

---

[2]Va. Code § 26-45.4 is incorporated into the Uniform Trust Code by Va. Code §
55-548.01.

Case 13-33011-KRH   Doc 38-1   Filed 01/27/14   Entered 01/27/14 10:49:35   Desc
Exhibit(s) 1 - 6   Page 54 of 151
Case: 10-2023   Document: 17-2   Date Filed: 10/18/2010   Page: 6
Case 3:09-cv-00575-HEH   Document 90   Filed 05/12/10   Page 5 of 20

requires that the trustee "invest and manage trust assets as a prudent investor would . . . considering [all] circumstances of the trust . . . [and] exercising reasonable care, skill, and caution." Va. Code § 26-45.4.

Wachovia's defense to this claim is three-fold. Wachovia argues that the trust effectively waived the Prudent Investor Rule, that Toney, as co-trustee, repeatedly declined to consent to the sale of Wachovia stock, and lastly, that Drew instructed Wachovia to retain the stock despite the Bank's advice to the contrary and that his waiver is binding on the Plaintiff, his minor son.

### a. Waiver of the Prudent Investor Rule

Wachovia argues first that the terms of the Trust waived the requirements of the Prudent Investor Rule, precluding liability for the investment decisions at issue. The Prudent Investor Rule "may be expanded, restricted, eliminated, or otherwise altered by the provisions of a trust." Va. Code § 26-45.3. For such a waiver to be effective, the language of the trust must "expressly manifest[] an intention that [the Rule] be waived" in one of the following ways:

> (i) by reference to "prudent man" or "prudent investor" rule,
> (ii) by reference to power of the trustee to make "speculative" investments,
> (iii) by an express authorization to acquire or retain a specific asset or type of asset such as a closely held business, or
> (iv) by other language synonymous with (i), (ii) or (iii).

*Id.* Wachovia argues that the Karo Trust expressly manifests an intent to waive the requirements of the Prudent Investor Rule and authorized retention of specific assets.

5

Case 13-33011-KRH    Doc 38-1    Filed 07/27/14    Entered 07/27/14 10:49:35    Desc
Exhibit(s) 1 - 8    Page 55 of 151
Case: 10-2023    Document: 17-2    Date Filed: 10/18/2010    Page: 7
Case 3:09-cv-00575-HEH    Document 90    Filed 05/12/10    Page 6 of 20

Article Three of the Karo Trust vests the Trustees with broad discretion in the investment of the Trust assets. Three provisions are particularly relevant. First, the Trust empowers the Trustees to take actions "as they in their uncontrolled discretion may deem advisable," subject to certain conditions. Second, the Trust authorizes the Trustees "[t]o retain as permanent any now existing investments (including stock of the corporate Trustee or in any of its affiliates and holding companies) of the trust property and any investments hereafter transferred to the Trustees . . . ." Thirdly, the Trust authorizes the Trustees "to invest the trust property and from time to time alter, change, or vary such investments and reinvestments thereof without being confined to investments lawful through statute or otherwise for fiduciaries in the State of Virginia . . . ."

The question of whether the language of a trust effectively waives the Prudent Investor Rule is one for the court. *See, e.g., Hoffman v. First Va. Bank*, 220 Va. 834, 841, 263 S.E.2d 402, 407 (1980). In considering the language of the Karo Trust, the Court finds that it waived the requirements of the Prudent Investor Rule as it related to the Trust property at the Trust's creation (specifically including stock of the corporate trustee and related companies) and any investments later transferred to the Trust. Although the language of waiver was not so broad as to grant an unlimited waiver of the Prudent Investor Rule, the language unequivocally expressed Rosalie Karo's intent that the Trustees could maintain the initial assets of the Trust (specifically including the stock of the corporate Trustee) and any assets transferred to the Trust without being bound by the

6

Case 1:13-30011-KRH   Doc 38-1   Filed 07/27/14   Entered 07/27/14 10:40:35   Desc
Exhibit(s) 1 - 8   Page 56 of 151
Case: 10-2023   Document: 17-2   Date Filed: 10/18/2010   Page: 8
Case 3:09-cv-00575-HEH   Document 90   Filed 05/12/10   Page 7 of 20

Prudent Investor Rule.

Plaintiff argues that the authorization to retain the investments originally in the trust applies only to the CNB stock and not to the successor Wachovia stock. Plaintiff argues that the Court must conduct an analysis similar to that in *Hirsch v. Hirsch*, 209 Va. 630, 166 S.E.2d 286 (1969), to determine whether the Wachovia stock should be treated as the equivalent of the CNB stock. In *Hirsch*, the trust at issue prohibited the "selling, transferring or exchanging [of] Lock Joint stock without the approval of certain beneficiaries of the trust . . . ." *Id.* at 630, 166 S.E.2d at 286. Lock Joint merged with another company to form Interpace. In subsequent litigation, the Virginia Supreme Court confronted the question of whether the prohibition on sale of the Lock Joint stock applied equally to the Interpace stock. *Id.* at 630-34, 166 S.E.2d at 286-88. To answer this question, the court was required to determine whether the new stock was "substantially equivalent" to its predecessor. *Id.* at 634, 166 S.E.2d at 288-89.

For several reasons, this Court is not convinced that a *Hirsch*-type analysis is necessary in this case. First, the Karo Trust, rather than referring to the CNB stock by name, refers only to "any now existing investments (including stock of the corporate Trustee or in any of its affiliates and holding companies) . . . ." The Trust appears to stake out a specific exemption for the stock of the corporate trustee, whoever it may be at a particular time. Second, and perhaps more specifically, the Trust exempts "any investments hereafter transferred to the Trustees . . . ." The Wachovia stock was not

7

Case 13-38011-KRH  Doc 38-1  Filed 07/27/14  Entered 07/27/14 10:49:35  Desc
Exhibit(s) 1 - 6  Page 57 of 151
Case: 10-2023  Document: 17-2  Date Filed: 10/18/2010  Page: 9
Case 3:09-cv-00575-HEH  Document 90  Filed 05/12/10  Page 8 of 20

acquired by purchase. It was transferred into the Trust at the time of the merger and thus

falls under the exemption of investments "transferred to the Trustees." Third, as

Defendant notes, the National Banking Act states that when a state or national bank

merges into a national bank, like Wachovia, the post-merger entity is deemed to be the

same corporation as the bank which preceeded the merger. 12 U.S.C. § 215a(e); *Cannon*

*v. Dixon*, 115 F.2d 913, 915 (4th Cir. 1940); *see also* Va. Code § 6.1-36 (similar rule

under the Virginia Banking Act).

Since the Trust's waiver of the Prudent Investor Rule applies to the retention of the

Wachovia stock, no breach of the duty of prudence was committed by its retention.

Furthermore, Wachovia's duty only required that its interpretation of the Trust language

be reasonable and relied on in good faith. As the Uniform Trust Code states, "A trustee

who acts in reasonable reliance on the terms of the trust as expressed in the trust

instrument is not liable to a beneficiary for a breach of trust to the extent the breach

resulted from the reliance." Va. Code § 55-550.06. Virginia law further provides that

"[a] trustee shall not be liable to a beneficiary for the trustee's good faith reliance on a

waiver of the [prudent investor rule]." Va. Code § 26-45.3. Wachovia's interpretation of

the Trust language was at least a *reasonable* interpretation, relied on in good faith.

### b. Toney Karo's Actions as Co-Trustee

Wachovia argues additionally that it is not liable for the losses suffered by the

Trust because Toney, as a co-trustee, consented to the retention of the Wachovia stock.

The Trust named Toney and CNB as co-trustees. As stated in the Amended Complaint, "On several occasions, [Wachovia] recommended the Trust's 60,000 share Wachovia stock position be diversified, but Toney and Drew did not agree." Am. Compl. ¶ 14. On October 3, 2003, Toney signed a document provided by Wachovia entitled "Direction to Retain - Wachovia Corporation Security." The document acknowledged that Toney directed the retention of 65,000 shares of Wachovia stock despite the fact that it was unwise and contrary to Wachovia's investment policies. The document specifically released Wachovia from liability and responsibility for Toney's investment decision and indemnified Wachovia for any resulting losses or damages. The document also stated that it would remain in effect until withdrawn. On April 11, 2004, Toney signed a similar document again provided by Wachovia, this time covering 65,000 shares of Wachovia common stock and 71,612 shares of Wachovia preferred stock. Toney signed a third retention document on September 29, 2005, reiterating the bank's investment warnings. Wachovia sent a fourth document to Drew and Toney on October 17, 2007, this time covering only the 60,000 shares of Wachovia stock. On November 7, 2007, Drew signed on behalf of his father, withholding consent to diversification and stating that it was executed under authority of a Power of Attorney. There is no evidence that any of these retention documents were returned unsigned or that Toney ever attempted to rescind these retention authorizations.

9

### 3. Waiver by Drew Karo

Based on the execution of the above-described documents, Wachovia additionally

argues that the trust beneficiaries waived any potential claims for breach of the duty of

prudence resulting from retention of Wachovia stock. Virginia law provides in pertinent

part that:

> A trustee is not liable to a beneficiary for breach of trust if the beneficiary
> consented to the conduct constituting the breach, released the trustee from
> liability for the breach, or ratified the transaction constituting the breach,
> unless:
> 1. The consent, release, or ratification of the beneficiary was induced by
>    improper conduct of the trustee; or
> 2. At the time of the consent, release, or ratification, the beneficiary did not
>    know of the beneficiary's rights or of the material facts relating to the
>    breach.

Va. Code § 55-550.09. It is clear that Toney and Drew consented to the retention of the

Wachovia stock through the various LORs. The remaining question, however, is whether

Wachovia's actions somehow breached their duty to Plaintiff W.A.K., a minor and

residual remainderman. Wachovia alleges that Drew, as W.A.K.'s parent, had authority

to consent to Wachovia's actions on W.A.K.'s behalf. Virginia law provides that "[a]

parent may represent and bind the parent's minor or unborn child if a guardian of the

estate or guardian for the child has not been appointed" and there is no conflict of interest

between the parent and the minor. Va. Code § 55-543.03; *see also* Va. Code § 55-543.04.

In assessing the conflict issue, these statutes permit the Court to examine whether

interests are aligned only with respect to the "particular question or dispute." Va. Code

10

Case 13-33011-KRH   Doc 76-1   Filed 01/27/14   Entered 01/27/14 10:40:35   Desc
Exhibit(s) 1 - 6   Page 53 of 153
Case: 10-2023   Document: 17-2   Date Filed: 10/18/2010   Page: 12
Case 3:09-cv-00575-HEH   Document 90   Filed 05/12/10   Page 11 of 20

§§ 55-543.03, -543.04. Precedent from Virginia courts applying these statutes is scant and unilluminating. Consequently, this Court is reluctant to interpret this statute in the absence of state court guidance unless critical to the resolution of this case.

The Court, however, is satisfied that the terms of the Trust, coupled with Toney's actions as co-trustee, as detailed above, do not demonstrate an actionable breach of duty of prudence on Wachovia's part. Accordingly, with respect to the conflict issue, the Court does not reach this issue but doubts that a conflict exists under the circumstances presented in this case. Plaintiff urges the Court to consider Drew's requests for distributions from the Trust corpus as being at tension with W.A.K.'s interests. The "particular question or dispute" presented is the investment strategy of the remaindermen. At the time the letters of retention were submitted, Drew had not disclaimed his interest in the Trust and was still a remainderman. Although some of the distributions to Drew were used to retire personal debt, others defrayed family-related expenses. Moreover, at the time, Drew relied on the Trust as an income source. Therefore, both Drew and W.A.K. had an interest in the long-term growth of assets in the Trust. As such, the Court doubts their interests were in conflict in this context. *See NationsBank of Virginia, N.A. v. Estate of Grandy*, 248 Va. 557, 560, 450 S.E.2d 140, 142-43 (1994).

## 2. Failure to Act as Sole Trustee

Next, Plaintiff argues that Wachovia should have treated Toney as an

11

"'unavailable' co-trustee" and assumed control as sole trustee.[3] Article Three, Clause 3 of the Trust provides that "[s]hould either of the Trustees fail or cease to act, then all title, powers, authorities, and discretions which otherwise would be possessed by both shall be possessed by the one so accepting or so continuing to act." The Court is unpersuaded by Plaintiff's argument that Toney's instructions should be disregarded. Plaintiff alleges that Toney "had little interest or disposition to be involved in Trust matters . . . ." Toney's subjective interest in being involved in the Trust is irrelevant. Under the terms of the Trust, the assets were administered under the joint direction of Wachovia and Toney. While Toney assumed a passive role, he unquestionably assisted in governing the Trust's administration throughout the life of the Trust. With respect to the Trust's ownership of Wachovia stock, Toney signed retention documents in 2003, 2004, and 2005, as mentioned above. In November of 2006, Toney signed a letter authorizing a withdrawal of $100,000 from the Trust. In other instances, Drew acted on Toney's behalf through the exercise of a lawful durable power of attorney. While Plaintiff may take issue with the consequences of Toney's investment decisions, he is unable to direct the Court's attention to any specific instances of a knowing failure to act.

Toney's continued participation in governing the Trust also detracts from W.A.K.'s argument that Wachovia abused its discretion by retaining the Wachovia stock.

---

[3]The parties have stipulated that all claims and contentions that Toney lacked the capacity to serve as a co-trustee are withdrawn. The Court will view W.A.K.'s allegation only that Toney *failed* to act; not that he lacked the capacity to do so.

Case 13-33011-KRH   Doc 38-1   Filed 01/27/14   Entered 01/27/14 10:40:37   Desc
Exhibit(s) 1 - 6   Page 62 of 151
Case: 10-2023   Document: 17-2   Date Filed: 10/18/2010   Page: 14
Case 3:09-cv-00575-HEH   Document 90   Filed 05/12/10   Page 13 of 20

W.A.K. argues that Wachovia had the independent duty to unilaterally sell the Wachovia stock as soon as it was viewed as imprudent to retain a concentrated amount. The Trust, however, required action by the Trustees jointly. Wachovia provided advice to Toney that he chose to disregard. As long as Toney withheld consent, Wachovia was powerless to act. Consequently, this contention cannot support a breach of prudence claim.

### 3. Failure to Provide Advice on Wachovia Stock

Alternatively, Plaintiff contends that Wachovia breached its duty of prudence by failing to provide advice to the co-trustee about the investment-worthiness of Wachovia stock. Such advice, however, has obvious legal and practical implications.

First, Plaintiff argues that "It is a breach of the fiduciary duty of loyalty for a trustee to administer its own stock in a trust unless authorized to do so." Mem. in Supp. of Mot. for Summ. J. at 12. Plaintiff further argues that "Because the Karo Trust does not exclude any assets from the trustee's investment responsibilities, the trustees have a duty to monitor, advise and protect regarding all trust assets, including Wachovia stock." *Id.* Plaintiff's logic would place Wachovia in an untenable position – it could either give advice on the Wachovia stock and violate the duty of loyalty, or it could abstain and violate the duty of prudence.[4] At oral argument, Plaintiff argued that Wachovia should have given Toney publicly-available information regarding the investment-worthiness of Wachovia stock. Plaintiff's argument, however, ignores the necessary implications of the

---

[4]Advice by Wachovia in this manner could potentially be the basis of an accusation of trading on insider information. 17 C.F.R. § 240.10b-5.

13

Case 13-33011-KRH    Doc 38-1    Filed 01/27/14    Entered 01/27/14 10:40:35    Desc
Exhibit(s) 1 - 6    Page 63 of 151
Case: 10-2023   Document: 17-2   Date Filed: 10/18/2010   Page: 15
Case 3:09-cv-00575-HEH   Document 90   Filed 05/12/10   Page 14 of 20

prohibition on self-dealing by a corporate trustee. Virginia law specifically prohibits a bank acting as a trustee from purchasing trust assets from itself. Va. Code § 6.1-24. Virginia law also bars a trustee from engaging in transactions with a corporation in which the trustee has a significant interest, subject to certain exceptions. Va. Code § 55-548.02. A necessary corollary precludes a bank serving as a trustee from circumventing this prohibition by enlisting a co-trustee to conduct the conflicted transaction. Plaintiff's argument that Wachovia should have advised on its own stock flies in the face of this prohibition.

In recognition of these potential conflicts, Wachovia provided numerous disclaimers acknowledging its potential conflict of interest in the Trust's ownership of Wachovia stock. In addition to these admonitions, the disclaimers stated Wachovia's policy of diversification of Trust assets unless directed otherwise, giving Toney and Drew the ultimate authority to direct the Trustees' actions. Toney acknowledged and ratified the disclaimer in 2003. Toney and Drew did so together in 2004 and 2005, and Drew signed on his and Toney's behalf in 2007. Wachovia satisfied its duty by disclosing the conflict to Toney and Drew and giving them the ultimate authority to direct the investment. Wachovia fulfilled all duties required under Virginia law and the terms of the trust instrument.

**B. Count II–Duty of Loyalty**

Count II of the Amended Complaint alleges a breach of fiduciary duty of loyalty.

14

As a fiduciary, a trustee owes a duty of loyalty to the beneficiaries of the trust. Va. Code § 55-548.02. The Restatement, Third of Trusts lays out the duty of loyalty in detail:

> (1) Except as otherwise provided in the terms of the trust, a trustee has a duty to administer the trust solely in the interest of the beneficiaries, or solely in furtherance of its charitable purpose.
> (2) Except in discrete circumstances, the trustee is strictly prohibited from engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests.
> (3) Whether acting in a fiduciary or personal capacity, a trustee has a duty in dealing with a beneficiary to deal fairly and to communicate to the beneficiary all material facts the trustee knows or should know in connection with the matter.

Restatement (Third) of Trusts § 78 (2007).

W.A.K. argues that Wachovia breached its duty of loyalty through several actions. The Court will address each in turn.

### 1. Improper Trustee Delegation

First, Plaintiff alleges that Wachovia violated its duty of loyalty through "improper trustee delegation" by "permitting Drew to act as a co-trustee by consulting with and executing Bank administration documents." As stated above, Drew endorsed several documents that approved retention of Wachovia stock, but he did so in different capacities. Drew signed the 2004, 2005, and 2007 letters as a beneficiary. A beneficiary can authorize a trustee to engage in an otherwise prohibited transaction. § 55-548.02(B)(4). Drew's signing as a beneficiary did not somehow convert him to a co-trustee.

Drew also signed the 2007 letter on behalf of Toney pursuant to a durable power

15

Case 13-33011-KRH   Doc 38-1   Filed 01/27/14   Entered 01/27/14 10:40:35   Desc
Exhibit(s) 1 - 6   Page 58 of 151
Case: 10-2023   Document: 17-2   Date Filed: 10/18/2010   Page: 17
Case 3:09-cv-00575-HEH   Document 90   Filed 05/12/10   Page 16 of 20

of attorney. Such a delegation of trustee duties is consistent with Va. Code § 55-548.07.
Plaintiff's argument rests on two references to Drew as a "co-trustee" in an e-mail and a
credit memorandum. Such scant references do not constitute actual delegation of duties.
Plaintiff points to no actions by Wachovia or Drew that would legally or factually elevate
Drew to a "co-trustee."

### 2. No Unanimous Trustee Action

Next, Plaintiff redeploys his contention that Wachovia should have treated Toney
as an unavailable co-trustee and should have acted as the sole trustee. As discussed
above, Toney did not fail to act. Toney signed documents or acted through his agent on
numerous occasions. Plaintiff's allegations that Wachovia employees did not meet with
Toney face-to-face or speak directly with Toney is of little import. Toney's actions speak
for themselves. Plaintiff's purported disagreement with his grandfather's investment
decisions has no effect on the Trustees' duties. This theory of breach is without legal
support.

### 3. Misleading Exculpation Requests

Plaintiff alleges that the numerous LORs sent to Toney and Drew seeking
authorization to hold Wachovia stock were self-serving, misleading, and constituted a
violation of the duty of loyalty. Plaintiff argues that these letters misrepresented
Wachovia's fiduciary duties by stating that it could not monitor or manage the Trust's
Wachovia stock. As stated above, if Wachovia had given advice on the sale or purchase

16

of Wachovia stock, it could have found itself in violation of the prohibition on self-dealing. The LORs notified the co-trustee and beneficiary of the potential conflict and reminded them of their authority to direct the investment of Trust assets. The content of these disclosures was factually and legally sound and did not constitute a breach of the duty of loyalty.

### 4. Self-Serving Discretionary Distributions

Plaintiff alleges that Wachovia further violated its duty of loyalty by issuing $200,000 in trust distributions to Drew, which were apparently used to reduce his personal debt to Wachovia. Plaintiff argues that these distributions amounted to self-dealing. In 2007 and 2008, Drew wrote to Faye Harris, a vice president with Wachovia, requesting $100,000 in trust funds. Both of Drew's letters stated: "These funds will be directly used to curtail several credit card balances and credit lines that I have with Wachovia." The language of the Trust gives the corporate trustee the authority to make distributions to support Drew's "general welfare and comfort." The validity of these financial obligations do not appear to be at issue.

A beneficiary may void a transaction that violates the trustee's duty of loyalty unless "[t]he transaction was authorized by the terms of the trust." Va. Code § 55-548.02 (other exceptions apply). Wachovia was, in this case, acting pursuant to language in the Trust that authorized it to make such distributions "in its uncontrolled discretion." The Virginia Supreme Court has held that a Trustee acting under such authority is only liable

17

Case 13-33011-KRH    Doc 38-1    Filed 07/27/14    Entered 07/27/14 10:40:37    Desc
Exhibit(s) 1 - 8    Page 67 of 151
Case: 10-2023    Document: 17-2    Date Filed: 10/18/2010    Page: 19
Case 3:09-cv-00575-HEH    Document 90    Filed 05/12/10    Page 18 of 20

if the beneficiary establishes that it acted dishonestly, in bad faith, or abused its

discretion. *Hoffman*, 220 Va. at 842, 263 S.E.2d at 408. The Trust authorized the

corporate trustee to make payments to Drew for his "general welfare and comfort

including, among other things, support, maintenance, education, and hospital, medical,

and nursing expenses . . . ." Paying down Drew's credit card balances and credit lines

provided for Drew's welfare and comfort. It was within Wachovia's discretion to make

these payments upon his request, regardless of which creditor Drew intended to pay.

Where the Trust authorizes such payments, the trustee's decision to act accordingly is not

an abuse of discretion. *Hoffman*, 220 Va. at 842, 263 S.E.2d at 408.

## 5. Failure to Seek Guidance from a Court

On an alternative front, Plaintiff maintains that Wachovia violated its fiduciary

duty of loyalty by not seeking a Court's intervention in pursuing diversification of the

Trust assets. Plaintiff points to Wachovia's seeking of guidance in a similar but unrelated

case, *Wachovia Bank v. Gray*, Case No. CH05-1546 (Richmond City Cir. Ct.), as

evidence that Wachovia was aware of its duty to do so in cases of this type. Plaintiff cites

the Second Restatement of Trusts, which Wachovia relied upon in the *Gray* case, for the

proposition that Wachovia was duty-bound to seek a court's guidance in resolving a

deadlock between trustees. In relevant part, the Restatement explains:

> If the circumstances are such that it is the duty of the trustees to exercise a
> power conferred upon them, and one of them refuses to concur in the exercise
> of the power, the other trustees are not justified in merely acquiescing in the
> non-exercise of the power. See § 185. In such a case it is their duty to apply

Case 13-38011-KRH   Doc 38-1   Filed 01/27/14   Entered 01/27/14 10:40:35   Desc
Exhibit(s) 1 - 8   Page 68 of 151
Case: 10-2023   Document: 17-2   Date Filed: 10/18/2010   Page: 20
Case 3:09-cv-00575-HEH   Document 90   Filed 05/12/10   Page 19 of 20

to the court for instructions.

Restatement (Second) of Trusts § 184 cmt. c (1959). For this provision to apply, there must be an action that the trustees, as fiduciaries, are required to exercise. As discussed above, the language of the Trust waived the Prudent Investor Rule for the Wachovia stock. It was not a breach of fiduciary duty to retain the Wachovia stock, and there was thus no duty to seek a court's intervention. Additionally, the Trust granted both Toney and the corporate trustee the authority to take action with regard to investment decisions "in their uncontrolled discretion." Toney made the decision to withhold consent to diversification, as was his right under the terms of the Trust.[5] There was no legal duty for Wachovia to seek the aid and guidance of a court.

### 6. Failure to Monitor, Warn, and Protect

Finally, Plaintiff argues that Wachovia's failure to monitor the Wachovia stock in the Trust constituted a breach of the duty of loyalty. Plaintiff contends that any perceived prohibition on giving advice on its own stock was trumped by an "over-arching duty to be prudent and to monitor, warn and protect the Trust even if it holds its own stock." As discussed above, were Wachovia to give advice on the sale or purchase of Wachovia stock, it could have found itself in violation of the prohibition on self-dealing. Therefore, Wachovia's decision to abstain from giving advice on its own stock was a legally-sound

[5]Also critical to the analysis is the well-reasoned basis for Toney's decision to not diversify. Aff. of Frederick Hall ¶¶ 9, 14 (stating that Toney, through Drew, expressed his desire to retain the Wachovia stock for tax reasons, historic stock performance, and sentimental considerations); Aff. of Faye Harris ¶ 19 (same).

19

Case 13-33011-KRH Doc 38-1 Filed 01/27/14 Entered 01/27/14 10:49:35 Desc
Exhibit(s) 1 - 8 Page 69 of 151
Case: 10-2023 Document: 17-2 Date Filed: 10/18/2010 Page: 21
Case 3:09-cv-00575-HEH Document 90 Filed 05/12/10 Page 20 of 20

decision and not a violation of its fiduciary duty.

## IV.

For the reasons stated above, Plaintiff's motion for summary judgment is denied as
to Counts I and II of the Amended Complaint. Defendant's motion for summary
judgment is granted as to Counts I and II of the Amended Complaint. The Court finds
that Wachovia did not violate the fiduciary duty of prudence or the fiduciary duty of
loyalty owed to Plaintiff.

Plaintiff's and Defendant's motions for summary judgment as to Count III of the
Amended Complaint and the motions for summary judgment on the Third-Party
Complaint remain pending. Should the parties wish to continue prosecuting these
remaining claims, the Court will rule on these aspects of the motion on a later date.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

ENTERED this 12th day of May, 2010.
Richmond, VA

20

Case 13-33011-KRH    Doc 38-1    Filed 01/27/14    Entered 01/27/14 10:49:35    Desc
Exhibit(s) 1 - 6    Page 60 of 151
Case: 10-2023    Document: 17-2    Date Filed: 10/18/2010    Page: 22
Case 3:09-cv-00575-HEH    Document 91    Filed 05/12/10    Page 1 of 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| W.A.K., II, A MINOR, BY | ) | |
| PAGE S. KARO, HIS NEXT FRIEND, | ) | |
| NATURAL GUARDIAN AND | ) | |
| MOTHER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09CV575-HEH |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER
### (Cross Motions for Summary Judgment)

THIS MATTER is presently before the Court on cross motions for summary judgment.

For the reasons detailed in the accompanying Memorandum Opinion, Plaintiff's motion for summary judgment is DENIED as to Counts I and II of the Amended Complaint. Defendant Wachovia Bank, N.A.'s motion for summary judgment is GRANTED as to Counts I and II of the Amended Complaint.

The Clerk is directed to send a copy of this Order to all counsel of record.

/s/
Henry E. Hudson
United States District Judge

Date: May 12, 2010
Richmond, VA

# Exhibit B

Affidavit of Faye Harris, October 18, 2010.

# IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| W.A.K., II, a minor, by Page S. Karo, <br> his next friend, natural guardian, and mother, | ) <br> ) <br> ) | |
| Plaintiff/Appellant, | ) | No.   10-2023 |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. Individually <br> and as Trustee of the Rosalie S. Karo Trust <br> u/a October 18, 1966, | ) <br> ) <br> ) | |
| | ) | |
| Defendant/Appellee | ) | |
| | ) | |

## AFFIDAVIT OF FAYE HARRIS

Comes now the affiant Faye Harris, and after first being duly sworn, deposes and states as follows:

1.     My name is Faye Harris.  I currently reside in Chesterfield County, Virginia.  I am over 21 years of age and of sound mind.  I am authorized to make this Affidavit on behalf of Wachovia Bank ("Wachovia"); and I make these statements based on my personal knowledge or upon a review of records kept in the normal course of business at Wachovia's offices.  There are six Exhibits attached to this Affidavit.  I understand that portions of these Exhibits were filed in the trial court and are part of the summary judgment record for this case.

2.     When I joined Wachovia Bank in January 2000, I was assigned as the trust advisor for the Rosalie Karo Residual Trust ("Karo Trust").  I have served continuously as a trust advisor for the Karo Trust since joining Wachovia.

3.     When I became a trust advisor for the Karo Trust, I understood from reviewing the Karo Trust Agreement: (a) the account had been set up by Mrs. Rosalie Karo several decades

Affidavit of Faye Harris - Page 1



earlier; (b) that Mrs. Karo had passed away decades before; (c) that she had made her husband, Toney Karo, a co-trustee along with the Bank; (d) that she had required the trustees to unanimously agree on investment decisions as to which they had unfettered discretion; (e) that she had included retention language allowing the trustees to hold certain investments in the account, including the stock of the corporate trustee which had been a large concentration of the Trust's assets from inception; (f) that she had only one child, Drew Karo ("Drew"); and (g) that Drew would take the entire remainder of the Trust's assets if he outlived his father, Toney Karo, based on the method of distribution required by Mrs. Karo.

4.     An accurate and authentic copy of the Karo Trust Agreement, which has been maintained in the Karo Trust file during the normal course of business is attached as Exhibit 1. On January 6, 2009, the Karo Trust Agreement was modified by an order of the Circuit Court for the City of Richmond, Virginia.  A certified copy of this modification order is also attached as Exhibit 1.

5.     Shortly after I became trust advisor, I also became aware that Drew had a young son, W.A.K., who was also a beneficiary under the Trust.  I knew that Drew's son had the same beneficial interest in the remainder of the Trust as Drew, but that W.A.K. would only take as an alternate to Drew based on the method of distribution set up by Mrs. Karo.  Thus, I knew that W.A.K. would only take the residue of the Trust if Drew died before Toney and W.A.K. also survived Toney.

6.     Mrs. Karo authorized the corporate trustee to make distributions from the trust's corpus to her living issue at the corporate trustee's sole discretion for such things as her issue's general welfare and comfort including health, support, and maintenance.

Affidavit of Faye Harris - Page 2

7.     In 2006, Drew began to request discretionary distributions from the Karo Trust. This was the first request for discretionary distributions that he had made during my time as trust advisor on the Karo Trust account.   Drew was already familiar with his ability to request distributions because he had done so on a few occasions when Charles Paul was the trust advisor.

8.     Upon my review of the files maintained in the normal course of business by the Wachovia Trust Department for the Karo Trust account, I have located numerous written requests made by Drew to the corporate trustee for distributions of corpus from the Karo Trust. Accurate and authentic copies of certain of these written requests from Drew are attached as Exhibit 2.   I am familiar with Drew's signature as I have witnessed him sign documents in my presence over the years.   Each of the documents attached as Exhibit 2 contains a written signature, which I recognize as Drew's signature.

9.     In the fall or summer of 2006, Drew informed me that he was going to seek assistance from the Karo Trust in an effort to get some of his debt under control to better improve his financial situation.

10.     Drew explained that the purpose in seeking these distributions was so that he could eliminate lower balance debts with higher interest rates.   He then planned to apply the income he had been using to service those debts toward his higher balance debts.   I understood the ultimate goal was to put Drew in a better financial position for himself and his family by freeing up income which he had been using to just service older debts.

11.     As a result of Drew's requests for distributions from the Karo Trust, distributions were made in the following amounts and on the following dates to Drew:

|                   |          |
| ----------------- | -------- |
| November 29, 2006 | $50,000  |
| January 8, 2007   | $25,000  |
| July 11, 2007     | $25,000  |
| January 20, 2007  | $50,000  |

Affidavit of Faye Harris - Page 3

| August 27, 2007 | $50,000 |
| January 15, 2008 | $50,000 |
| February 26, 2008 | $30,000 |
| April 18, 2008 | $20,000 |
| May 9, 2008 | $100,000 |

12.     The payments referenced in paragraph 11 came from the corpus of the Karo Trust and were made pursuant to Article 1, clause 4 of the Karo Trust Agreement.

13.     After these $400,000 in distributions were made, Drew continued to request additional distributions from the corpus of the Karo Trust for the support of himself and his family.

14.     At the time, Drew informed me that he needed additional distributions because he was heavily reliant on dividends generated by his personal Wachovia stock holding and that a reduction in the Wachovia common stock dividends in 2008 had severely limited his income.

15.     Between May 9, 2008 and January 28, 2009, Wachovia approved and paid over $120,000 to Drew from the corpus of the Karo Trust, which Drew had requested pursuant to Article 1, clause 4 of the Karo Trust Agreement. These distributions were made in the following amounts and on the following dates to Drew:

| June 12, 2008 | $23,100 |
| July 18, 2008 | $1,500 |
| July 28, 2008 | $8,999.53 |
| August 1, 2008 | $1,500 |
| August 14, 2008 | $11,553. 76 |
| August 22, 2008 | $13,879.50 |
| September 10, 2008 | $5,859.61 |
| October 1, 2008 | $1,500 |
| October 7, 2008 | $12,779.74 |
| October 16, 2008 | $234 |
| November 3, 2008 | $1,500 |
| November 6, 2008 | $13,448.14 |
| December 1, 2008 | $1,500 |
| December 10,2008 | $11,573.51 |
| January 28,2009 | $11,470.84 |

Affidavit of Faye Harris - Page 4

16.     Upon my review of the Karo Trust file, I have also located a Deed of Trust Note, dated January 26, 1996 and a letter from Drew and Toney Karo related to this Deed of Trust. These documents have been maintained in the normal course of business by the corporate trustee for the purpose of administering the Karo Trust account. Accurate and authentic copies of these documents are attached as Exhibit 3.

17.     These documents show that Drew requested and received a loan from the Karo Trust fund in 1996 in the amount of $117,000. This loan would have been made from the corpus of the Trust and was authorized by both trustees.

18.     In August of 2008, Drew executed a disclaimer on behalf of his father, Toney, using a power of attorney Toney had given to him. Through Drew, Toney attempted to disclaim his interest in the Karo Trust.

19.     After executing and delivering this disclaimer to Wachovia, Drew requested that the corporate trustee deliver the residue of the Karo Trust to him because he owned it. Wachovia refused to recognize the validity of Toney Karo's disclaimer, which had been executed by Drew for his father.

20.     In October of 2008, Drew filed suit in the Circuit Court for the City of Richmond, Virginia against Wachovia to compel it to deliver the corpus of the Trust to him and to recognize the validity of Toney's disclaimer. At the time, Drew was represented by Churchill Bowles and Bo Bowles in his efforts to obtain the funds, the same counsel that have represented W.A.K. in this litigation.

21.     Accurate and authentic copies of the Complaint, Amended Complaint and other pleadings filed by Drew in the Circuit Court for the City of Richmond are attached hereto as Exhibit 4.

Affidavit of Faye Harris - Page 5

22.     On January 30, 2009, Drew delivered to me a disclaimer purporting to disclaim his remainder interest in the Karo Trust, and cover letter.  These documents have been maintained in the Karo Trust file since they were received by me.  An accurate and authentic copy of these documents are attached as Exhibit 5.

23.     Drew continued to request distributions from the Karo Trust following January 30, 2009, and Wachovia made many distributions to Drew pursuant to these requests.

24.     On or about May 16, 2010, Toney Karo died.  Mr. Karo's obituary was published in the *Richmond-Times Dispatch* on May 30, 2010.  An accurate and authentic copy of the obituary, which was obtained from the newspaper's website, is attached as Exhibit 6.  Mr. Karo was survived by his only son, Drew, and his only grandson, W.A.K.

25.     I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NOT.

_Faye Harris_

Faye Harris

STATE OF VIRGINIA)

CITY OF RICHMOND)

Sworn to and subscribed, under penalty of perjury under the laws of the United States of America, on this 18th day of October 2010, the Affiant Faye Harris, known to me or identified by drivers' license, testified to the above.

IN WITNESS THEREOF, I have hereunto set my hand and notarial seal.

_Norma Frances Bliley_
Notary Public

My commission expires 11-30-2012

OFFICIAL SEAL
NOTARY PUBLIC-COMMONWEALTH OF VIRGINIA
NORMA FRANCES BLILEY
COUNTY OF CHESTERFIELD
ID# 7182798
My Commission Expires
November 30, 2012

# Exhibit B-1

Attachment to Faye Harris Affidavit-Exhibit B

Rosalie Karo Trust Agreement, dated October 18, 1966, and as amended on May 15, 1971.

Consent Order modifying Rosalie Karo Trust Agreement, Entered January 6, 2009, Richmond, Virginia Circuit Court.



Art. III

THIS TRUST AGREEMENT made this _1?_ day of _October_
1966, between ROSALIE S. KARO, herein called "Grantor", and ANDREW T.
KARO and THE CENTRAL NATIONAL BANK OF RICHMOND, VIRGINIA, herein called
"Trustees";

### W I T N E S S E T H :

That the Grantor hereby grants, assigns, transfers, and delivers
unto the Trustees the property (herein called "trust estate") described
in Schedule A hereto attached as a part hereof to be held and administered
by the Trustees upon the trusts hereinafter set out.

### ARTICLE ONE

Clause 1. The Trustees shall invest and reinvest the trust es-
tate and collect the income therefrom. They shall, subject to the later
terms of this Clause and after deducting all taxes, commissions, and other
expenses properly chargeable thereto, pay such income to the Grantor during
her lifetime in quarterannual installments or at such more frequent intervals
as they may deem advisable. Should the Trustees at any time or times in
their uncontrolled judgment deem that the Grantor is then in such condition
as to be mentally or physically incapable of using such income properly,
such income shall not be paid to her while they deem such condition exists;
and during any such period the Trustees may from time to time use or apply
for and/or pay to her for her general welfare and comfort including, among
other things, support, maintenance, expenses of maintaining her home, debts
and taxes owing by her, and hospital, medical, and nursing expenses so
much of such income as they in their uncontrolled discretion may deem
advisable free of this trust, and any income not so expended shall become a
part of the corpus of the trust estate. Further, the Trustees may from time
to time use or apply for and/or pay to the Grantor for her general welfare and



comfort including, among other things, support, maintenance, expenses of maintaining her home, debts and taxes owing by her, and hospital, medical, and nursing expenses and/or, with or without the intervention of a guardian, use or apply for and/or pay to any of her issue for such issue's general welfare and comfort including, among other things, support, maintenance, education, and hospital, medical, and nursing expenses so much of the corpus of the trust estate as they in their uncontrolled discretion may deem advisable free of this trust.

Clause 2.   (a)  Upon the Grantor's death, the Trustees shall first pay from the then corpus of the trust estate all expenses incident to her funeral and burial that would otherwise be payable out of her estate, all expenses of the administration of her estate by her personal representatives (other than federal and estate taxes, both state and federal), and all obligations and liabilities owing by her at the time of her death.  They shall be entitled to rely conclusively upon any written statement of any personal representative of the Grantor as to the validity and amount of any such funeral expenses, administration expenses, obligations, or liabilities. They shall not be liable to any person interested as a beneficiary herein or to any party interested herein by reason of the first sentence of this paragraph, should they make any payment hereunder to anyone who they shall in good faith believe is entitled thereto under the terms of this paragraph or should they not make any payment to any party so entitled because they shall have had no actual knowledge of the existence of such party's claim under the terms of this paragraph.

(b)  After carrying out the terms of paragraph (a) of this Clause, the Trustees shall pay from the corpus of the trust estate to each of the following named persons the sum of Twenty-Five Hundred ($2,500) Dollars, should such person be in the employ of the Grantor and/or her husband at the time of the Grantor's death:

1. DOROTHY THORNTON
2. ROBERT H. REID

(c)  Subject to the terms of the earlier paragraphs of this
Clause, upon the Grantor's death the Trustees shall divide the then corpus
of the residuary estate defined in paragraph (d) of Clause 3 of this
Article into two parts, herein called the "marital trust" and the "residual
trust". The marital trust shall consist of the fractional share of the
residuary estate provided in said paragraph (d), while the residual trust
shall consist of the balance of the residuary estate.

Clause 3.  (a)  The Trustees shall invest the marital trust and
pay the net income therefrom to ANDREW T. KARO, husband of the Grantor,
during his lifetime in quarter-annual installments or at such more frequent
intervals as the Trustees may deem advisable. Further, he shall have the
right from time to time to withdraw all or any part of the corpus of the
marital trust free of this trust by instruments in writing signed by him and
delivered to the Trustees. In addition, the corporate Trustee may from
time to time use or apply for and/or pay to him for his general welfare and
comfort including, among other things, support, maintenance, and hospital,
medical, and nursing expenses so much of the corpus of the marital trust
as it in its uncontrolled discretion may deem advisable free of this trust.

(b)  The Grantor's husband is hereby given as to the corpus of
the marital trust existing at his death a general power of appointment by
his will in favor of his estate and/or, at his election, of any party or
parties whomsoever upon such terms, trusts, and conditions as he may de-
sire, and accordingly upon his death the corporate Trustee shall deliver the
then corpus of the marital trust as his will may direct free of this trust,
provided, however, that such general power of appointment by his will shall
be operative only if there be in such will specific reference to the said
power herein so given to him. Subject to the terms of paragraph (c) of this
Clause 3, should he fail to so appoint as to all or any portion of such cor-
pus, then upon his death such unappointed corpus shall become a part of the

corpus of the residual trust to be administered and/or distributed after
his death under the terms of paragraph (d) of Clause 4 of this Article.

(c)   In the event the Grantor's husband shall have failed to
appoint all or any portion of the marital trust by his will and shall not
have provided adequately in his will for the payment of inheritance and
estate taxes, both state and federal, assessed by virtue of his death upon
such unappointed corpus of the marital trust to the exoneration of such
unappointed corpus, the corporate Trustee shall before further administering
and distributing such unappointed corpus in accordance with the terms of para-
graph (b) of this Clause 3 pay from such unappointed corpus either to the
appropriate taxing authorities or in reimbursement to the personal representa-
tive of the Grantor's husband that portion of such taxes properly applicable
to such unappointed corpus.

(d)   That fractional share of the residuary estate constituting
the marital trust earlier mentioned in this Article is described as follows
(the words "residuary estate" wherever used in this instrument shall mean
all of the trust estate (including all property devised and bequeathed in the
Grantor's will to the Trustees to be held and administered by them as a part
of the trust estate) which shall remain after discharging therefrom all
expenses of the Grantor's funeral and burial, all expenses of the administra-
tion of her estate by her personal representatives (other than inheritance
and estate taxes assessed by reason of the Grantor's death) and all obligations
and liabilities of the Grantor properly chargeable against the trust estate
and (b) after carrying out the terms of paragraph (b) of Clause 2 of this
Article but (c) without deducting from the trust estate any inheritance and
estate taxes, both state and federal, assessed by reason of the Grantor's
death:

The numerator of the fraction shall be the amount equal to the
maximum estate tax marital deduction (allowable in determining the federal

estate tax payable by reason of the Grantor's death) minus the value for federal estate tax purposes of all items in the Grantor's gross estate which qualify for the marital deduction and which pass or have passed from the Grantor to her husband upon or prior to her death other than under this Clause (the words "pass or have passed" shall have the same meaning as such words shall have under the provisions of the Internal Revenue Code in effect at the Grantor's death); provided, however, that in computing the numerator the values as finally determined for federal estate tax purposes shall control.

The denominator of the fraction shall be an amount equal to the value of the residuary estate; and to the extent that items initially in the residuary estate are included in the Grantor's gross estate the value at which they are included in her gross estate as finally determined for federal estate tax purposes shall control, and to the extent that they are not so included their value at the time they would have been valued had they been so included for federal estate tax purposes shall control in determining the denominator.

When distribution is made, there shall be allocated to the marital trust the above described fractional share of the residuary estate without regard to whether the total value of what is so allocated is more or less than the amount of the numerator of the above-described fraction.

The corporate Trustee is empowered to make allocation or division of property, real and personal, in the residuary estate between the above described fractional share constituting the marital trust and the balance of the residuary estate comprising the residual trust in kind, in money, or partly in both in such manner as they in their uncontrolled discretion may deem advisable within the fractional limits hereinabove mentioned; provided,

however, that only assets which qualify for the federal estate tax marital
deduction shall be allocated to the fractional share constituting the
marital trust.

Clause 4. (a) The balance of the residuary estate (after deduct-
ing therefrom the fractional share thereof constituting the marital trust)
is called the "residual trust"; but the residual trust shall also include
the marital trust should the Grantor's husband not survive her.

(b) The Trustees shall pay from the corpus of the residual trust
all inheritance and estate taxes, both state and federal, assessed by
reason of the Grantor's death; and the Trustees shall not seek exoneration
or reimbursement from any personal representative of the Grantor or from
the Grantor's estate or from any property, real or personal, passing under
her will or by her intestacy or from any beneficiary under any life insur-
ance policies existing upon her life at the time of her death or from the
proceeds of any such policies or from any other property of whatsoever
character and howsoever owned or held or from the owner of such other
property because any portion of such taxes may have been assessed by reason
of the existence of such policies or property.

(c) Subject to the terms of paragraph (b) hereof, upon the death
of the Grantor the Trustees shall invest the residual trust and shall pay
the net income therefrom to the Grantor's husband during his lifetime in
quarterannual installments or at such more frequent intervals as they may
deem advisable. Further, the corporate Trustee may from time to time, with
or without the intervention of a guardian, use or apply for and/or pay to
any of the Grantor's issue for such issue's general welfare and comfort in-
cluding, among other things, support, maintenance, education, and hospital,
medical, and nursing expenses so much of the corpus of the residual trust
as it in its uncontrolled discretion may deem advisable free of this trust.

(d)  Upon the death of the Grantor's husband (or upon the
Grantor's death, should he not survive her), the corporate Trustee shall,
subject to the later terms of this paragraph, deliver the then corpus
of the residual trust to the Grantor's then living issue per stirpes.
Should any one of such issue be then under the age of forty-five years
of age, the corporate Trustee shall retain in trust such issue's portion
of the residual trust and shall thereafter from time to time, with or
without the intervention of a guardian, use or apply for and/or pay to
such issue for his or her general welfare and comfort including, among other
things, support, maintenance, education, and hospital, medical, and
nursing expenses so much of the income and/or corpus of such portion as
it in its uncontrolled discretion may deem advisable free of this trust
until such issue attains the age of twenty-five, whereupon such issue shall
receive one-third of the then corpus of such portion free of this trust
and shall thereafter receive the net income from the balance of such cor-
pus in quarterannual installments or at such more frequent intervals as it
may deem advisable.  When such issue reaches thirty-five years of age,
he or she shall receive one-half of the then corpus of such portion free of
this trust, while the balance of such corpus shall be delivered to him or
her free of this trust when he or she attains the age of forty-five years.
However, before all of such corpus is so delivered to such issue, the
corporate Trustee may from time to time use or apply for and/or pay to such
issue for his or her general welfare and comfort including, among other
things, support, maintenance, education, and hospital and medical expenses
so much thereof as it in its uncontrolled discretion may deem advisable
free of this trust.

## ARTICLE TWO

The Grantor reserves the right at any time or times by instruments

in writing signed by her and delivered to the Trustees before her death
to terminate or revoke this trust in whole or in part and to amend, alter,
change, or modify this trust or any part or parts thereof; provided, however,
that Articles Three and Seven shall not be amended, altered, changed, or
modified without the Trustee's written consent. Upon any such revocation
or termination, the Trustees shall deliver the then trust estate or such
portions thereof designated by the Grantor to her or to such other party
or parties as she may in writing designate free of this trust; and the
receipt of such party or parties shall be sufficient discharge to the
Trustees for such of the trust estate so delivered. The Grantor is to have
no right to terminate, revoke, amend, alter, change, or modify this trust
or any part or parts thereof by her will.

Other property may be granted, assigned, transferred, devised,
bequeathed, or delivered from time to time to the Trustees by the Grantor
or by anyone else to be held and administered by the Trustees under the
provisions of this agreement as a part of the trust estate to the same
effect as if such property had been at this time transferred hereunder to
the Trustees.

ARTICLE THREE

Clause 1. The Trustees are hereby authorized and empowered at
such times, upon such terms and conditions, and in such manner as they in
their uncontrolled discretion may deem advisable to act as follows with
the "trust property" (which designation "trust property" shall include
the trust estate, the marital trust, the residual trust, and/or any part or
parts thereof and any and all investments and reinvestments thereof): To
retain as permanent any now existing investments (including stock of the
corporate Trustee or in any of its affiliates and holding companies) of
the trust property and any investments hereafter transferred to the Trustees;

to invest the trust property and from time to time to alter, change, or vary
such investments and reinvestments thereof without being confined to invest-
ments lawful through statute or otherwise for fiduciaries in the State of
Virginia, the Trustees being expressly authorized to invest in such real
estate and personal property as they in their uncontrolled discretion may
deem advisable including, but without being limited to, mortgages, notes,
bonds, common and/or preferred stocks and debentures of private and/or pub-
lic service corporations (including stock in the corporate Trustee or in any
of its affiliates and holding companies) and interests in any one or more
common trust funds at any time or times established and maintained by the
corporate Trustee for the collective investments of funds held by it alone
(or with others) in fiduciary capacities and being expressly given uncon-
trolled discretion as to the times within which all investments and rein-
vestments are to be made, the nature and character of the same, and the
rates of interest and/or income thereon; to sell, resell, exchange, or other-
wise dispose of the trust property, all sales to be made at public auction or
privately for cash or credit; to lease the trust property, the leases whereof
may be for terms extending beyond the period of any trust herein provided;
to make any repairs, alterations, additions, and improvements to the trust
property; to mortgage, encumber, or pledge the trust property; to borrow
money without any personal liability to the Trustees therefor and to secure
the same by mortgages, pledges, or other encumbrances upon the trust property;
to join in any lease, mortgage, consolidation, merger, exchange, reorganiza-
tion, exchange of stock for that of a holding company, or foreclosure of any
corporation or other business organization the bonds, stocks, or other
securities of which constitute the trust property, to take and hold any
securities and/or investments issued under such plan, and to pay any assess-
ments, charges, or expenses involved therein; to vote in person or by general
or restricted proxy any and all shares of corporate stock (including stock
of the corporate Trustee, its affiliates and holding companies) constituting

the trust property; to cause any stock or other securities comprising a
part of the trust property to be registered or placed in the name of any
person, firm, or corporation (other than the Trustees) as nominee without
disclosing or describing this trust and to keep the same in such nominee's
name as long as they may deem such action advisable; to make division or
distribution of the trust property in kind, in money, or partly in both;
to compromise and adjust any claims against or in favor of the trust
property; and to make all instruments necessary or proper to effectuate the
powers hereinabove provided.  Notwithstanding anything hereinabove to the
contrary, the Grantor's husband shall have the power in writing to direct
the Trustees to convert all or any part of the corpus of the marital trust
which may at any time be uninvested, or, if invested, be unproductive of
income, into income producing property selected by the Trustees in accordance
with the powers of sale and investments hereinabove conferred in this
Clause 1.

Clause 2.  The Trustees are authorized and empowered from time
to time, upon such terms and conditions, and in such manner as they in
their uncontrolled discretion may deem advisable and for the best inter-
ests of the beneficiaries of the residual trust, to use all or any part
or parts of the corpus of the residual trust (a) to acquire by purchase
or exchange from the personal representatives of the Grantor's estate
and/or the trustees under her will any property, real or personal, consti-
tuting a part of her estate or any investment or reinvestment thereof,
such purchase to be at such prices privately or at public auction as the
Trustees in their uncontrolled discretion may deem advisable and (b) to
make such loans or advances of money to the said personal representatives
and/or trustees and/or the Grantor's estate in such amounts and upon such
terms and conditions either without security or upon such security as the
Trustees in their uncontrolled discretion may deem advisable.  The Trustees
are hereby authorized to retain as permanent investments of the residual

070

trust all property received by them by purchase or exchange under the provi-
sions of this Clause, and in addition all powers given to them in Clause 1
of this Article shall apply fully to all such property.  The Trustees shall
not be liable for any loss or diminution to the residual trust resulting from
their exercise of any powers conferred upon them in this Clause.  The powers
in this Clause are given to the Trustees for the purpose of enabling them
to prevent the sacrifice of the assets in the Grantor's estate through con-
version into cash to pay administration expenses, taxes, and debts should the
Trustees in their uncontrolled discretion deem it advisable so to do, as
those interested in the residual trust will profit by the prevention of any
such sacrifice.  However, such powers are entirely discretionary with the
Trustees and are in no way obligatory upon them; and the failure of the
Trustees to exercise such powers shall not subject them to liability to
anyone.

   Clause 3.  Should either of the Trustees at any time fail or cease
to act, then all title, powers, authorities, and discretions which otherwise
would be possessed by both shall be possessed by the one so accepting or so
continuing to act.  However, the powers of encroachment upon corpus given
in any part of Article One hereof to the corporate Trustee shall in no
event and under no circumstances pass to or be exercisable by the Grantor's
husband as Trustee.  Should at any time the corporate Trustee fail or cease
to act as Trustee hereunder, then, if and when any person or corporation
is appointed by an appropriate court as substituted trustee in its place
and stead, such substituted trustee shall, in addition to succeeding to the
title, powers, authorities, and discretions (other than said powers of en-
croachment upon corpus) which the corporate Trustee would have possessed as
Trustee had it been still acting, also possess the said power of encroachment
upon corpus to the same extent and effect as the corporate Trustee would have
so possessed had it been still acting as Trustee.  Should at any time both of

Case 13-33011-KRH  Doc 38-1  Filed 01/27/14  Entered 01/27/14 10:40:35  Desc
Exhibit(s) 1 - 6  Page 90 of 153
Case: 10-2023  Document: 17-4  Date Filed: 10/18/2010  Page: 13

Case 3:09-cv-00575-HEH  Document 50-3  Filed 03/15/10  Page 19 of 40

the Trustees fail or cease to act as such, then all title, powers, authori-
ties, and discretions which otherwise would be possessed by both and/or by
either (including the said powers of encroachment upon corpus) shall be
possessed by any successor trustee or trustees duly appointed to administ-
er the trusts hereunder.

ARTICLE FIVE

Should the Grantor and her husband die simultaneously or at so
nearly the same time that there is no sufficient evidence that they died
other than simultaneously, it shall be conclusively presumed for all purpos-
es relative to this agreement and the dispositions under the marital trust that
the Grantor died before he died, any rule of law or statute to the contrary
notwithstanding.

ARTICLE SIX

The Trustees accept the trusts, duties, and obligations herein
provided and agree to perform the same as hereinabove set forth.  In so
doing, they may employ appropriate agents and/or attorneys; but they shall
not be liable to any parties interested herein for any act, default, or mis-
conduct of such agents and/or attorneys selected by them with due care.

ARTICLE SEVEN

As compensation for its services hereunder, the corporate Trustee
shall receive a commission of five per cent uponthe annual gross income
of the trust estate, the marital trust,and the residual trust and all
subsequent additions thereto.  The individual trustee shall receive no
compensation for acting as a Trustee hereunder.

IN WITNESS WHEREOF the Grantor and the individual Trustee have
hereunto set their respective hands and seals, and the corporate Trustee
has caused its corporate name to be signed hereto and its corporate seal

072

to be hereto affixed and duly attested by its duly authorized officers.

_____ (SEAL)
Rosalie S. Karo

_____ (SEAL)
Andrew Y. Karo

Attest:                          THE CENTRAL NATIONAL BANK OF RICHMOND, VIRGINIA,

_____     By _____
Assistant Trust Officer              Vice President and Senior Trust Officer

073

"SCHEDULE A"

Attached to and forming part of Trust Agreement dated October 18, _____, 1966, between ROSALIE S. KARO as Grantor and ANDREW T. KARO and THE CENTRAL NATIONAL BANK OF RICHMOND, VIRGINIA, as Trustees

The following constitute the property which the Grantor grants, assigns, transfers, and delivers unto the Trustees to be held and administered by them upon the trusts set forth in this Agreement.

| | |
|---|---|
| 320 shs | American Telephone & Telegraph Co., capital |
| 136 shs | Beech-Nut Life Savers, Inc., common |
| 404 shs | Bristol-Myers Co., common |
| 400 shs | Broad-Grace Arcade Corp., preferred |
| 13,844 shs | The Central National Bank of Richmond, capital |
| 55 shs | The Chase Manhattan Bank, capital |
| 100 shs | E. I. duPont DeNemours & Co., common |
| 386 shs | General Motors Corp., common |
| 651 shs | Jewel Tea Co., Inc., common |
| 810 shs | The Life Insurance Co. of Virginia, capital |
| 1,495 shs | Honeywell, Inc., common |
| 100 shs | Pacific Lighting Corp., common |
| 100 shs | Phillips Petroleum Co., capital |
| 62 shs | Standard Oil of New Jersey, capital |
| 480 shs | Sterling Drug, Inc., common |
| 750 shs | Virginia Electric & Power Co., common |
| 7 shs | Warner-Lambert Pharmaceutical Co., $4 cumulative convertible |
| 152 shs | Warner-Lambert Pharmaceutical Co., common |

Cash -- $102.29

This "Schedule A" is incorporated as a part of the said Trust Agreement.

_____
Rosalie S. Karo

_____
Andrew T. Karo

THE CENTRAL NATIONAL BANK OF RICHMOND, VIRGINIA,

By _____
Vice President and Senior Trust Officer

074

Drew DOB 6/11/58
DAD DOB - 3/31/29

AMENDMENT TO TRUST AGREEMENT DATED
OCTOBER 18, 1966, BETWEEN ROSALIE S.
KARO, GRANTOR, AND ANDREW T. KARO
AND THE CENTRAL NATIONAL BANK OF
RICHMOND, TRUSTEES (THE "AGREEMENT")

TO:  Andrew T. Karo and The Central National Bank of Richmond

Pursuant to the rights reserved in Article Two of the
Agreement, the following changes are hereby made:

A.  Paragraph (b) of Clause 2 of Article One of the
Agreement is deleted.

B.  A new paragraph is added at the end of paragraph (d)
of Clause 4 of Article One of the Agreement, reading as follows:

If after the death of Andrew T. Karo, the
corporate Trustee shall be retaining a share
(or all) of the residual trust for the benefit
of the Grantor's son, William Andrew Karo, then
so long as any portion of the residual trust
shall be so held, the corporate Trustee shall
consult from time to time with Wilbur R. Cross
respecting the education and general welfare of
the Grantor's said son.  The provisions of this
paragraph shall not be deemed to limit the
authority of the corporate Trustee to act in its
discretion, and they are intended only to assure
that the corporate Trustee will have available
the advice and guidance of Wilbur R. Cross respect-
ing the aforesaid matters.

In all respects not herein altered, I hereby ratify and
confirm the Agreement as heretofore executed and delivered
by me.

IN WITNESS WHEREOF, I have hereunto set my hand and seal
all on this 5th day of May, 1971.

*Rosalie S. Karo*   [SEAL]

In token of their receipt of the foregoing amendment and
their willingness to administer the agreement as so amended,

-1-

Andrew T. Karo has hereunto set his hand and seal and The

Central National Bank of Richmond has caused this instrument

to be executed in its name, all on the 5th day of

May , 1971.

_Andrew T. Karo_ [SEAL]
Andrew T. Karo, Trustee.

THE CENTRAL NATIONAL BANK OF
RICHMOND, Trustee

By _____
Vice President

Attest:

_____
Vice Pres & Trust Officer

-2-

**WE ASK FOR THIS:**

Matthew M. Farley (VSB No. 42749)
ARMSTRONG BRISTOW
  FARLEY & SCHWARZSCHILD PLC
1807 Libbie Avenue, Suite 200
Richmond, VA 23226
Telephone: (804) 282-6170
Facsimile: (804) 282-6175

Counsel for Wachovia Bank, National Association, Trustee

Robert M. Morgan, Esquire (VSB No. 14599 )
Blackburn, Conte, Schilling & Click, PC
300 West Main Street
Richmond, VA 23220
Telephone: (804) 782-1111
Facsimile: (804) 648-3914

Counsel for Andrew T. Karo

Bowlman T. Bowles, Jr. (VSB No. 05268)
Churchill G. Bowles (VSB No. 42619)
Bowles Affiliates
P.O. Box 12085
Richmond, VA 23241-0085
Telephone: (804) 780-0236
Facsimile: (804) 780-9134

Counsel for William A. Karo

4

VIRGINIA:

## IN THE CIRCUIT COURT OF THE CITY OF RICHMOND
### John Marshall Courts Building

IN RE:  Rosalie S. Karo *Inter Vivos* Trust u/a, dated December 18, 1966      )   Case No.

### CONSENT ORDER

THIS DAY CAME Wachovia Bank, National Association, Trustee ("**the
Trustee**") of the Rosalie S. Karo *Inter Vivos* Trust, created under agreement between
Rosalie S. Karo, as Grantor, and Andrew T. Karo and The Central National Bank of
Richmond, Virginia, as Trustees, dated December 18, 1966 ("**the Trust**"), and all parties
interested in the Trust, by their respective counsel, on the Trustee's Petition for
Modification of Trust, and it appearing to the Court that:

For the reasons stated in the Petition, the proposed modification of the
Trust is permitted pursuant to § 55-544.11(B) and § 55-544.12(A) of the Code of
Virginia;

The proposed modification of the Trust is consistent with Grantor's
probable intentions;

All of the beneficiaries of the Trust consent to the relief sought in the
Petition and the terms of this Order;

All interested parties received notice of this proceeding pursuant to § 55-
542.06 of the Code of Virginia;

And, it further appearing to the Court that it is appropriate and proper to do
so, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1.      The Rosalie S. Karo *Inter Vivos* Trust, created under agreement
between Rosalie S. Karo, as Grantor, and Andrew T. Karo and The Central National
Bank of Richmond, Virginia, as Trustees, dated December 18, 1966, is hereby amended
by replacing the current subparagraph (c) of Clause 4 of Article One with the following
new subparagraph (c):

(c)  Subject to the terms of paragraph (b) hereof, upon the death of the
Grantor the Trustees shall invest the residual trust and shall pay the net income
therefrom to Grantor's husband during his lifetime in quarterannual installments or
at such more frequent intervals as they may deem advisable.  In addition, if the
corporate Trustee determines, in its sole discretion, that the net income of the
residual trust is not sufficient to provide adequately for the health, support, and
maintenance of Grantor's husband, the corporate Trustee may, from time to time,
expend for the benefit of Grantor's husband so much of the corpus of the residual
trust as it in its uncontrolled discretion may deem advisable for such purposes.
Further, the corporate Trustee may from time to time, with or without the
intervention of a guardian, use or apply for and/or pay to any of the Grantor's
issue for such issue's general welfare and comfort including, among other things,
support, maintenance, education, and hospital, medical, and nursing expenses so
much of the corpus of the residual trust as it in its uncontrolled discretion may
deem advisable free of this trust.  Notwithstanding anything herein to the contrary
and to the extent permitted by law, the beneficiaries hereunder shall have no right
to anticipate, to pledge or in any manner to alienate their interests in either the

2

income arising from or the corpus of any trust created hereunder, and their

interests shall not be liable for their debts, contracts or engagements or be subject

to execution, attachment, garnishment, sequestration or other legal process.

2.    The costs and expenses, including reasonable attorney's fees,

incurred by the Trustee herein are proper costs of administration which shall be paid from

the Trust.

Nothing further to be done, this matter shall be placed among the ended

causes.

The Clerk shall send copies of this Order to counsel of record.

ENTER:    1 / 6 / 09

_____

Richmond Circuit Court Judge

A Copy,
Teste:    BEVILL M. DEAN, CLERK
BY: _____ .C.

3

Paul McCourt Curley (VSB No. 43971)
Canfield Baer LLP
2201 Libbie Avenue, Suite 200
Richmond, VA 23230
Telephone: (804) 673-6600
Facsimile: (804) 673-6604

Counsel for ████████████████

X:\Wachovia - 300020\Karo Trust\Order Modifying Trust.doc

5

# Exhibit B-2

Attachment to Faye Harris Affidavit-Exhibit B

Correspondence from William A. ("Drew") Karo concerning discretionary distributions from Karo Trust.

Case 13-33011-KRH   Doc 78-1   Filed 01/27/14   Entered 01/27/14 10:40:35   Desc
Exhibit(s) 1 - 5   Page 101 of 151
Case: 10-2023   Document: 17-5   Date Filed: 10/18/2010   Page: 2
Case 3:09-cv-00575-HEH   Document 50-3   Filed 03/15/10   Page 32 of 40

501 9017385

Faye K. Harris                                      November 15, 2006
Vice President
Wachovia Trust

Dear Faye,

      This is a letter of request to invade the Rosalie S. Karo
Trust # ▓▓▓▓▓▓ in the amount of $100,000.00 dollars. These
funds will be directly used to curtail several credit card balances
and credit lines that I have with Wachovia. (see attached exhibit)
      These amounts I have incurred over the last several
years due to living expenses including income deficits, rising
interest, and education for my son. This is the first step in a
graduated plan to curtail my overall debt of which you, Fred Hall
and I have discussed. Please do not hesitate to call me, if I can
answer questions regarding this request.

                                Sincerely,

                                William Andrew Karo



Case 13-33011-KRH   Doc 38-1   Filed 07/07/14   Entered 07/07/14 10:49:57   Desc
Exhibit(s) 1 - 8   Page 102 of 151
Case: 10-2023   Document: 17-5   Date Filed: 10/18/2010   Page: 3

Case 3:09-cv-00575-HEH   Document 50-3   Filed 03/15/10   Page 33 of 40

Faye K. Harris                              November 22, 2006
Vice President
Wachovia Trust

Dear Faye,

      It is my understanding that Drew, my son, has
established a need to invade the Rosalie S. Karo Trust #
████████ in the amount of $100,000.00 dollars. I acknowledge
this request as co-trustee with Wachovia bank and give my
approval.

        Sincerely,

        Andrew T. Karo



Faye K. Harris                                              June 21, 2007
Vice President
Wachovia Trust

Dear Faye,

    This is a letter of request to invade the Rosalie S. Karo
Trust # ███████ in the amount of $100,000.00 dollars. These
funds will be directly used to curtail several credit card balances
and credit lines that I have with Wachovia.

    These amounts I have incurred over the last several
years due to living expenses including income deficits, rising
interest, and education for my son. This is a continuation in a
graduated plan to curtail my overall debt of which you, Fred Hall
and I have discussed. Please do not hesitate to call me, if I can
answer questions regarding this request.

                Sincerely,

                William Andrew Karo



Faye K. Harris                                                     January 9, 2008
Vice President
Wachovia Trust

Dear Faye,

      This is a letter of request to invade the Rosalie S. Karo
Trust # ▮▮▮▮▮▮ in the amount of $100,000.00 dollars. These
funds will be directly used to curtail several credit card balances
and credit lines that I have with Wachovia.

      These amounts I have incurred over the last several
years due to living expenses including income deficits, rising
interest, and education for my son. This is a continuation in a
graduated plan to curtail my overall debt of which you, Annette
Osterbind, and I have discussed. Please do not hesitate to call me, if
I can answer questions regarding this request.

        Sincerely,

        William Andrew Karo



APR. 24. 2008 11:44AM    WACHOVIA PERSONAL TR                                   NO. 3157    P. 2/2

April 24, 2008

Mrs. Faye K. Harris
Vice President and Trust Advisor
Wachovia Trust
P. O. Box 27602
Richmond, VA 23261

Re: ███████ Rosalie Schwarzschild Karo Trust

Dear Faye:

Recent market conditions are such that I find it necessary to again ask for financial assistance from my mother's trust. The prior distributions greatly assisted me in curtailing my debt obligations during 2006 and 2007. During 2007 I suffered a loss of $70,000 on a Florida property that I had intended to move into and then sell my current Florida home. The Florida market had deteriorated so much I realized that my overall financial condition was in jeopardy and action was needed to reduce my loss and curtail my debt.

My request is for an immediate $100,000 distribution to be used to cover two margins. I have two loans that were secured with Wachovia Corp. common stock. With the large decline in the value of the Wachovia stock additional funds are needed to cover the margin. With the large dividend cut for Wachovia stock my cash flow has been greatly reduced and I find it difficult to cover my immediate obligations.

The trust language does permit distributions to me for my health, maintenance, and support and my general welfare and comfort.

Sincerely,

*William A Karo*

William A. Karo

089

JUN-10-2008 10:33AM    WACHOVIA PERSONAL TR FEDEX KINKOS    1143    NO.3528  P. 3  02

Faye K. Harris
Vice-President
Wachovia Trust

June 9, 2008

Dear Faye,

      This letter of request to invade the Rosalie S. Karo Trust #_____ in the amount of $230,000.00 is specific due to the devaluation of Wachovia's stock price and the recent cut in the dividend by 41%.

      These funds will be directly applied as follows : 1)The complete curtailment of my margin balance at Wachovia Brokerage in the amount of $202,125.00. This will release my residual collateral of Wachovia shares of 12,500 to be reapplied to my current commercial note with Wachovia and prevent further margin calls due at this current price. I recently used the last invasion of $100,00.00 plus $50,000.00 from my home equity line to reduce the existing principle balance to its' current level of $650,000.00. 2) The rest of these funds are comprised of various balances due. $6200.00 Crown Account Line, $5600.00 June Mortgage payments my primary residence and Florida Condo, $11,400.00 Real Estate Taxes 329 Greenway Lane, and a recent payment of $6,100.00 to replace the upstairs central H/AC unit at my residence.

      Please do not hesitate to call me, if I can answer any further questions regarding this most important request supporting the maintenance of my welfare and well being. Thanks for all of your continued help.

Sincerely yours,

*William A Karo*

William Andrew Karo

EXHIBIT

JUL. 11. 2008  8:43AM    WACHOVIA PERSONAL TR                    NO. 3747   P. 2



Faye K. Harris
Vice-President
Wachovia Trust                          July 2, 2008

Dear Faye,

   This letter of request to invade the Rosalie S. Karo
Trust #1              is for my health, welfare, and maintenance for
the next 6 months! I have comprised a total amount of my
expenses for the last 6 months which is $119,092 or $19,849 per
month.

   These figures are comprised as follows based on the
last 6 month totals:

| | |
|---|---|
| ████████████ mortgage payment - $ | 24,780 |
| Insurance | 1313 |
| ADT security | 212 |
| Utilities- Dominion Power | 1424 |
| City DPU | 2341 |
| 2 vehicles gas | 4200 |
| Car pmt. | 4866 |
| Food | 12000 |
| Medical & Pharmacy | 4560 |
| Medical Insurance | 5844 |
| Wachovia credit line interest | 20103 |
| Wachovia home equity | 7470 |
| Robinson lawn care | 2350 |
| Country Club of Va. | 9903 |
| Comcast | 811 |
| Verizon | 834 |
| Wireless | 1005 |
| ████████████ mortgage payment- $ | 8748 |
| condo fees | 3996 |
| utilities | 1152 |
| insurance | 1180 |

                                        119,092

091

Case 13-33011-KRH   Doc 38-1   Filed 01/27/14   Entered 01/27/14 10:40:35   Desc
Exhibit(s) 1 - 8   Page 108 of 151
Case: 10-2023   Document: 17-5   Date Filed: 10/18/2010   Page: 9
Case 3:09-cv-00575-HEH   Document 50-3   Filed 03/15/10   Page 39 of 40

JUL. 11. 2008   8:43AM      WACHOVIA PERSONAL TR                        NO. 3747   P. 3

These are one time payments in the last 6 months that I have
incurred that have not been accounted for in the last 6 months:

| | |
|---|---:|
| Va. Dept. of Taxation | $ 1773 |
| Personal Property Taxes | 1075 |
| Accounting services | 1200 |
| WAK II's camps | 3535 |
| School supplies, tuition deposit, & Testing fees | 1238 |
| 1801 N. Flagler Drive Real Estate Taxes | 8241 |

This sum total of $ 17,062 is in addition to the last 6 months
of health, welfare, and maintenance.

Please do not hesitate to call me, if can answer any
further questions regarding this most important request supporting
the maintenance of my welfare and well being. Thanks for all of
your continued help.

Sincerely yours,

*William A. Karo*

William Andrew Karo

Case 13-33011-KRH    Doc 38-1    Filed 01/07/14    Entered 01/07/14 10:40:35    Desc
Case 13-33011-KRH    Doc 78-1    Filed 07/21/14    Entered 07/21/14 14:39:57    Desc
EXHIBIT(s) 1 - 8    Page 109 of 151
Case: 10-2023    Document: 17-5    Date Filed: 10/18/2010    Page: 10
Case 3:09-cv-00575-HEH    Document 50-3    Filed 03/15/10    Page 40 of 40

AUG. 20. 2008 12:21PM    WACHOVIA PERSONAL TR                    NO. 4070    P. 2



8-7-08

Mrs. Faye Harris
Wachovia Trust
1021 E. Cary Street
Richmond, Virginia

Re: Rosalie Karo Trust

Faye:

I appreciate the assistance I am receiving from my mother's trust. Your committee declined payment of the interest due on the commercial loan account. I thought this would not be an issue as long as the trust paid the mortgages and other monthly expenses. My plan was to pay the commercial loan interest from the Wachovia dividend as well as any other expense not paid by the trust. With the second dividend cut I cannot pay the monthly interest amount.

I understand the committee's not wanting to continue paying for the loan. But it makes no sense for the loan to fail simply because of the monthly interest payment. I have my entire net worth securing that loan. The future dividends of Wachovia are currently my only source of income. For my family to lose the Wachovia stock we will lose our future. The funds I have used from the trust will be lost as well. I ask the committee to reconsider its position and pay the interest for the next six months.

The Lexus payment is for a leased vehicle. The final payment is due this month. Regardless I must return the car with new tires and I must pay the personal property tax. Tires and property tax are normal living expenses and I request that you reimburse me for these as well.

*Drew Karo*
Drew Karo

\* Lexus will allow for me to continue my monthly payment for up to six months past the final payment in August. I am currently look for a new lease with a small monthly payment!

\* The Dealership wants $1,700 to replace the tires. I had it for $900 approximately at Mavez Tire saving $800.

093

DEC. 23. 2008  2:11PM     WACHOVIA WESTHAMPTON                    NO. 058    P. 2/3

*SCHEDULE B*

PARS 61977

Faye K. Harris
Vice-President
Wachovia Trust                                    December 23, 2008

Dear Faye,
    This letter of request to invade the Rosalie S. Karo
Trust # ███████████ is for a continuation of my health, welfare,
and maintenance for the next 6 months! These discretionary
distributions are to include these previously approved payments:

$1500 for Food and Gas
Wachovia Mortgage for Florida Condo
Flagler Point Condo Fees
Wachovia Mortgage for █████████
Wachovia Equity Line for █████████
Wachovia Commercial Loan
Real Estate Taxes: ████████████
               ████████ Florida
ADT Quarterly
Erie Insurance for Auto, Homeowners on Greenway
Florida Peninsula wind ins. for Condo
Nationwide Insurance of Florida Homeowners
Dominion Power
Verizon Wireless
Verizon house phone
City of Richmond water and gas
Anthem Health Insurance for you and your family
Medical to include dentist and medicine
Lawncare

    Please expedite this approval and if there are an
questions regarding this request do not hesitate to contact

EXHIBIT
D-28

Case 13-33011-KRH   Doc 38-1   Filed 01/27/14   Entered 01/27/14 10:40:35   Desc
Exhibit(s) 1 - 6   Page 104 of 153
Case: 10-2023   Document: 17-5   Date Filed: 10/18/2010   Page: 12

Case 3:09-cv-00575-HEH   Document 50-4   Filed 03/15/10   Page 3 of 38

DEC. 23. 2008   2:11PM    WACHOVIA WESTHAMPTON                NO. 058    P. 3/3

Sincerely,

*William A Karo*

William Andrew Karo

MAY. 29. 2009  9:07AM   WACHOVIA WESTHAMPTON                NO. 594   P. 2

50190.1438S

Faye K. Harris                                  May 26, 2009
Vice President &
Wachovia Trust Committee

Dear Faye and Wachovia Trust Committee,
        This is a letter of request to invade the Rosalie S. Karo
Trust # ▇▇▇▇▇▇ in the amount of $50,000.00 dollars. Even
though the trust has paid some of my families monthly expenses
over the last 10 months, I still have several large bills that need to
be paid.
        The bills that need your attention are as follows:
    1) my son ▇▇▇▇▇, education for the 2009-2010 tuition at
    St. Christophers School approx. $ 20,000.00.
    2) credit card bills with FIA Cardservices Visa aprox.
    $18,000.00, MC $3,400.00, my wife's Visa $16,000.00 —my
    credit card limits we reduced approx. $24,000.00 when
    Wachovia got rid of their credit card services in March. I
    have always paid on time and made large balance payments
    of $5000.00 or more through the history of 29 years on my
    Visa and 17 years on my MC. In speaking with the credit
    dept. for my cards I learned that the reason for the reduction
    in credit was related to my home equity line, of which I have
    never missed a payment. They stated and advised that due to
    the many changes in the laws they were unable to discuss
    my options unless I was no longer current.
    3) My monthly bills for June are approx. $7,700.00 which are
    pre-approved.
        If you have any questions regarding my
comments please do not hesitate to call me. I invoke you to
react to this letter and expeditiously deposit theses fund !

                                        Sincerely,
                                        William A. Karo
                                        William A. Karo

098

SEP. 9.2009  3:57PM    WACHOVIA WESTHAMPTON                    NO. 887    P. 1

Faye K. Harris
Vice-President
Wachovia Trust                              September 9, 2009

Dear Faye,

This letter of request to invade the Rosalie S. Karo Trust # ████████ is for a continuation of my health, welfare, and maintenance for the purchase of my leased Lexus GS 300 which I paid for on 8-24-09 in the amount of $25,905.04. The ownership of this vehicle occurred after a 12 month extension on my current lease had ended. I require a vehicle for transportation for my sales job with Bankers life & Casualty. This is a one time expense outside of my normal monthly request for the last 6 months!

This discretionary distribution for reimbursement for the purchase of this vehicle is what enables me to earn income for my family currently.

Please expedite this approval and if there are any questions regarding this request do not hesitate to contact me

Sincerely,

William A. Karo

William Andrew Karo



099

*AA0021012*
*File - Legal*

May 30, 1996

Mr. Charles Paul
Central Fidelity Trust Department
P. O. Box 27602
Richmond, VA 23261

Dear Charles:

 This letter of request is for funds in the amount of $28,000.00 to be distributed for the sole purpose and payment of medical expenses recently incurred.

 As per our telephone conversation, these funds are to be sourced by invading the principal of my mother's residual trust (account ▮▮▮▮▮▮▮).

 It is our understanding that these funds may be procured on this basis. Thank you again for your diligent attention to this request.

 Sincerely yours,

*William A. Karo*

William A. Karo

WAK/lhc

WB001239

*44002/012*

Mr. William A. Karo
~~███████████~~
Richmond, Virginia 23220


January 22, 1998


Central Fidelity National Bank
Mr. Charles Paul
Trust Department
Post Office Box 27602
Richmond, Virginia 23261


Dear Charles,

As per our telephone conversation, this letter is to request funds in the amount of
$30,000.00. These funds are to be drawn from my mother's residual trust (account
number 4███████). These funds are for personal expenses incurred in 1997. Thank you
for your help regarding this matter. Please contact me if I can be of further assistance.


Sincerely,

*William A. Karo*

William A. Karo

WB001238

October 22, 1999

Mr. Charles Paul
Wachovia Bank
Trust Department
Richmond, Virginia

Dear Charles,

As per our telephone conversation, I am requesting the sale of 2600 shares of Bristol
Meyers Squibb from the Rosalie Schwarzschild Karo trust account ▓▓▓▓▓▓. These
funds will be applied toward the down payment of my primary residence and to reduce
my existing credit line.

Thank you for your prompt attention to this matter.

Sincerely yours,

*William A. Karo*

William A. Karo

WB001237

# Exhibit B-3

Attachment to Faye Harris Affidavit-Exhibit B

Correspondence enclosing Disclaimer of William A. ("Drew") Karo, dated January 30, 2009.

Disclaimer of Drew Karo.

Richmond, Virginia 23226
January 30, 2009

**BY HAND**

Ms. Faye K. Harris
Vice President
Wachovia Trust
102 E. Cary Street
Richmond, Virginia 23219

Re: Disclaimer of Karo Trust

Dear Ms. Harris:

I enclose for delivery and filing with Wachovia Trust a Disclaimer of my remainder interest in the Karo Residual Trust pursuant to Va. Code §64.1-196.1, et seq.

Should you have any questions, please call Bowlman Bowles. Please also acknowledge receipt of these materials and note that I have accepted delivery of the disclaimer to my father as his attorney-in-fact.

Thank you in advance for your cooperation and assistance, I am,

Very truly yours,

William A. Karo

William A. Karo

Enclosure
cc: Andrew T. Karo (By Hand)
    Bowlman T. Bowles, Jr.



110

<u>DISCLAIMER</u>

THIS DISCLAIMER, made this 28th day of January, 2009, by William A. Karo ("Disclaimant"), of Richmond, Virginia;

WHEREAS, Rosalie S. Karo ("Grantor") died in 1974, having created on October 10, 1966 an Intervivos Residual Trust (Trust) f/b/o Andrew T. Karo, et al, with Wachovia Bank (formerly Central National Bank) and Andrew T. Karo, as Co-Trustees;

WHERAS, pursuant to Article I, Clause 4(c) of the Trust, the Disclaimant's father was granted a life income interest, and upon his death the Trust passes to Grantor's then living issue, per stirpes, who at this time is her son, Disclaimant (who has one (1) child, ███████████).

WHEREAS, the Trust has a present value of approximately $1,200,000;

WHEREAS, pursuant to Chapter 8 of Title 64.1 of the Code of Virginia (1950, as amended) the Disclaimant has the right to disclaim in whole or in part the succession to any property, real or personal, or interest therein which would otherwise pass to him under the Trust; and

NOW, THEREFORE, the Disclaimant desires to exercise his right to disclaim his interest in and right to his remainder interest in the Trust, and does hereby for himself, his estate and his legal representatives, irrevocably disclaims and declines to accept any remainder interest of said Residual Trust.

IN WITNESS WHEREOF, the Disclaimant has hereunto set his hand and seal this 28th day of January, 2009.

_William A. Karo_ (SEAL)

By:  William A. Karo

STATE OF VIRGINIA

CITY OF RICHMOND, to-wit:

I, the undersigned, a Notary Public in and for the jurisdiction aforesaid do hereby certify that WILLIAM A. KARO, whose name is signed to the above Disclaimer, has acknowledged his signature before me this 28th day of January, 2009.

_Laura C. Hatfield_
My Commission Expires                    Notary Public
May 31, 2011

My commission expires: _____

My registration number is: _7135917_

# Exhibit B-4

### Attachment to Faye Harris Affidavit-Exhibit B

Correspondence from Andrew T. Karo and William A. ("Drew") Karo regarding a loan from the Karo Trust, dated December 11, 1995.

Deed of Trust Note, dated January 26, 1996.

Mr. Andrew T. Karo
Mr. William A. Karo
Richmond, VA 23226

December 11, 1995

Mr. Charles Paul
Central Fidelity Bank
P. O. Box 27602
Richmond, VA 23261

Dear Charles,

    As per our telephone conversation, my father and I have fully discussed the transaction regarding the Residual Trust Account #▬▬▬▬▬ This is a letter of request to execute the following:

1)    A Deed of Trust Note will be funded from the Municipal Bond Fund in the amount of $95,000.00 and the Dreyfus Tax Exempt Cash Management in the amount of $30,000.00.

2)    These funds totaling $125,000.00 will be used for a 1st Deed of Trust on the principal residence of William A. Karo at 7% interest, amortized for 30 years, with a monthly payment of $831.63 to be held by the Trust account.

    We have both reviewed the details of this transaction and ask that the Trust Account acknowledge our understanding of this request by our signatures on this letter.

Sincerely yours,

*Andrew T. Karo*

Andrew T. Karo

*William A. Karo*

William A. Karo



128

9WB045186

COPY

## DEED OF TRUST NOTE

$117,000.00

January 26, 1996
Richmond, Virginia

     FOR VALUE RECEIVED, WILLIAM A. KARO (the "Maker") promises to pay to A.T. KARO AND CENTRAL FIDELITY NATIONAL BANK, AS TRUSTEES OF THE RESIDUAL TRUST UNDER AGREEMENT DATED OCTOBER 10, 1966, AS AMENDED MAY 5TH, 1971 WITH ROSALIE KARO AS BENEFICIARY or order (the "Noteholder") at _____ or such other place as may be designated by the holder hereof, the principal sum of ONE HUNDRED SEVENTEEN THOUSAND AND 00/100 DOLLARS ($117,000.00), with interest on the unpaid balance at the rate of SEVEN PERCENT (7%) per annum, payable as follows:

     Principal and interest shall be due and payable in three hundred sixty (360) equal, consecutive monthly installments of Seven Hundred Seventy Eight and 40/100 Dollars ($778.40) each, commencing on March 1, 1996, and continuing on the same day of each month thereafter until February 1, 2026, when the remaining principal balance and all accrued and unpaid interest thereon shall be due and payable in full, unless sooner paid in accordance with the provisions of this Note.

     All payments shall be applied first to any sums which the Noteholder may have advanced on behalf of the Maker, then to pay interest currently due on the said debt, then to pay any late charges and the remainder thereof to apply as a credit to the principal sum due.

     The Maker reserves the right to prepay the balance in whole or in part at any time and from time to time without premium or penalty. Partial prepayments while not in default shall be applied to the installments due in the inverse order of their maturities.

     The Maker agrees to pay to the Noteholder a "late charge: of five percent (5%) of payment amount on any payment which is not paid when due.

     If default be made in (i) the payment of the principal balance of this Note or any other amount due hereunder, (ii) the performance of or compliance with any term, warranty, covenant, obligation or condition contained herein or (iii) upon the occurrence of an "Event of Default" as defined in the Purchase Money Deed of Trust securing this Note, this Note shall, at the option of the Noteholder, become immediately due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

     The Maker and endorsers hereof jointly and severally agree to waive demand, presentment, protest and notice of dishonor, and the benefit of the Homestead exemption,


EXHIBIT
15

or any other defenses and pleas on the ground of any extension or extensions of the time of payment or of the due date of this Note, in whole or in part, before or after maturity, with or without notice; and to pay all costs and expenses incurred in the collection of any amount payable hereunder after the same becomes due and until paid, including all attorneys' fees.

WITNESS the following signature and seal:

_William A. Karo_ (SEAL)
William A. Karo

This Note is secured by a Purchase Money Deed of Trust of even date herewith from the Maker to Central Fidelity National Bank and A.T. Karo, Trustees, conveying certain real estate in the City of Richmond, Virginia, and is countersigned by the Trustee for identification purposes only.

_A.T. Karo_
A.T. Karo

By: _Charles W. Paul_
Central Fidelity National Bank, Trustee, by its
Agent _CHARLES W. PAUL_
who's official title with the bank is _VICE PRESIDENT_

130

5

# Exhibit B-5

## Attachment to Faye Harris Affidavit-Exhibit B

Complaint filed in CL08-4650-4, City of Richmond, Virginia Circuit Court, October 8, 2008, by William A. ("Drew") Karo.

Amended Complaint filed in CL08-4650-4, City of Richmond, Virginia Circuit Court, October 13, 2008, by Drew Karo.

Memorandum in Support of Motion for Declaratory Judgment filed in CL08-4650-4, City of Richmond, Virginia Circuit Court, November 7, 2008, by Drew Karo.

Final Order entered in CL08-4650-4, City of Richmond, Virginia Circuit Court, November 25, 2008.

RECEIVED & FILED
CIRCUIT COURT

4:03 OCT 0 8 2008

BEVILL M. DEAN, CLERK
BY _____ D.C.

**VIRGINIA:**

## IN THE CIRCUIT COURT OF THE CITY OF RICHMOND

| | | |
|---|---|---|
| **WILLIAM A. KARO,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: _____ |
| | ) | CL08-4650-4 |
| **WACHOVIA BANK, NATIONAL ASSOCIATION** | ) | |
| Co-Trustee of the Rosalie S. Karo | ) | |
| Intervivos Trust u/a December 18, 1966, | ) | |
| | ) | |
| Serve:  Corporation Service Company | ) | |
| 11 S. 12th Street | ) | |
| P.O. Box 1463 | ) | |
| Richmond, Virginia 23218 | ) | |
| | ) | |
| Defendant. | ) | |

Filed in the Clerk's Office this 8 day of October, 20 08
at 4:03 A.M. (P.M.)
TESTE: BEVILL M. DEAN, CLERK
515-120.00
Catherine White

## COMPLAINT

The Plaintiff, William A. Karo (William), by counsel, states the following for his

Complaint for declaratory judgment pursuant to § 8.01-184, et. seq. of the Code of Virginia

1950, as amended:

1.      This is a declaratory judgment action brought pursuant to Virginia Code § 8.01-

184, et. seq.

2.      The plaintiff, William A. Karo, is a resident of the City of Richmond, Virginia.

3.      The defendant, Wachovia Bank, N.A. (Wachovia), is a national banking

association engaged in banking and related activities in the Commonwealth of Virginia,

including Richmond, Virginia.

4.      Rosalie S. Karo died in 1974, having created the Rosalie S. Karo Inter Vivos

Residual Trust (Trust) on December 18, 1966 for the benefit of her husband, Andrew T. Karo

(Andrew), and her issue, with Wachovia and Andrew as co-trustees. (Exhibit A).  The Trust

value on December 31, 2007 was approximately $4,400,000, and on July 1, 2008, approximately
$2,500,000. (Exhibit B).  Trust net income for 2007 was approximately $200,000, and is now
approximately $70,000. (Exhibit C).

5.      The Trust provides in Article I(4)(c) that Andrew receive lifetime income with the
remainder passing at his death to his son, William.

6.      Andrew has been receiving Trust income since 1966.

7.      On August 13, 2008, William executed and delivered to Wachovia the attached
disclaimer (Exhibit D) of Andrew's Trust income interest pursuant to Andrew's power of
attorney (dated August 18, 2006) authorizing him to do so. (Exhibit E, paragraph 15).

8.      Pursuant to Virginia Code § 64.1-196, et. seq. [Uniform Disclaimer of Property
Interests Act], such disclaimer effected a transfer of Andrew's income interest to William,
thereby terminating the Trust in favor of William.  Alternatively, such transfer resulted in a
merger of all Trust interests as a fee in William.

9.      Upon receipt of such disclaimer, Wachovia has refused to recognize its legal
validity. (Exhibit F).

10.     There exists an actual justiciable controversy and an antagonistic assertion and
denial of rights between the parties concerning the legal validity and effect of the disclaimer; that
is, whether the disclaimer is valid and if it causes the Trust to now terminate in favor of William.

11.     William has no adequate remedy at law to resolve this matter.

12.     William hereby moves this Court to hear this matter on an expedited and
immediate basis because until legal validity of the disclaimer is resolved, ownership and
responsibility for management of the Trust's assets remain uncertain and in flux, a situation that
in current tumultuous financial/market times disadvantages the Trust, its assets, and all of the

2

parties. Judicial notice should also be taken of current and rapidly deteriorating financial/market conditions, particularly the market value and fate of the Trustee as an operating entity.

Accordingly, William requests this Court to hear this matter on an immediate and expedited basis, and provide for: (1) a shortened response time for Wachovia, and (2) an immediate hearing for consideration of William's summary judgment motion (to be filed shortly), including a briefing schedule and other scheduling items as necessary.

WHEREFORE, for the foregoing reasons the plaintiff, William, by counsel, prays this Court: (1) hold an immediate hearing including an expedited response time; (2) schedule hearing times for consideration of this matter including a summary judgment hearing; and, (3) enter a judgment declaring that:

    a. The Karo Trust disclaimer is valid pursuant to Va. Code §64.1-196, et seq. [Uniform Disclaimer of Property Interests Act].

    b. William is now vested with ownership of all Karo Trust assets as of the date such disclaimer was executed and delivered to Wachovia, as co-trustee (August 13, 2008).

    c. The plaintiff be granted such other relief as the Court deems just and proper pursuant to § 8.01-184, et. seq. of the Code of Virginia, 1950, as amended.

    d. The plaintiff recover his costs and fees incurred in this matter, including reasonable attorneys' fees.

Respectfully submitted,

WILLIAM A. KARO

By Counsel

3

Bowlman T. Bowles, Jr. (VSB #05268)
David W. Whitehead (VSB #17184)
Churchill G. Bowles (VSB #42619)
BOWLES & WHITEHEAD, P.C.
P. O. Box 12085
Richmond, Virginia 23241
Telephone:     (804) 780-0236
Fax:              (804) 780-9134
        *Counsel for William A. Karo*

Date: October 8, 2008

4

RECEIVED & FILED
CIRCUIT COURT
4:03 OCT 0 8 2008
BEVILL M. DEAN, CLERK
BY _____ D.C.

VIRGINIA:

## IN THE CIRCUIT COURT OF THE CITY OF RICHMOND

WILLIAM A. KARO,                )
                                )
    Plaintiff,              )
                                )       Case No.: _____
v.                              )
                                )
WACHOVIA BANK, NATIONAL ASSOCIATION )
Co-Trustee of the Rosalie S. Karo  )
Intervivos Trust u/a December 18, 1966, )
                                )
    Defendant.              )

## MOTION FOR EXPEDITED PROCEEDINGS

The Plaintiff, William A. Karo (William), by counsel, states the following Motion For

Expedited Proceedings in this matter pursuant to Rules 1:9, 3:8 and any other applicable

authority.

1.    On October 8, 2008, William filed his Complaint for Declaratory Judgment with

this Court to seek a determination of the validity of a disclaimer filed with the Rosalie S. Karo

Inter Vivos Residual Trust (Trust) on August 13, 2008 with Wachovia Bank, N.A., (Wachovia)

Co-Trustee.  William submits the disclaimer terminated the Trust in his favor, thereby vesting

ownership of all Trust assets in him on August 13, 2008.

3.    Wachovia has refused to recognize the disclaimer's legal validity.  Rosalie S.

Karo died in 1974, having created the Trust on December 18, 1966 for the benefit of her

husband, Andrew T. Karo (Andrew), and her issue, with Wachovia and Andrew as co-trustees.

4.    The Trust value on December 31, 2007 was approximately $4,400,000, and on

July 1, 2008 approximately $2,500,000.  Trust net income during 2007 was approximately

$200,000, and is now approximately $70,000.  Wachovia stock constitutes a significant portion

of the Trust, and has declined in value approximately sixty-five percent (65%) from the disclaimer date through Wachovia's refusal to honor its validity (October 2, 2008).

5.      Until legal validity of the disclaimer is resolved, ownership and responsibility for management of the Trust's assets remain uncertain and in flux, a situation that in current tumultuous financial/market times disadvantages the Trust, its assets and all of the parties. Judicial notice should also be taken of current and rapidly deteriorating financial/market conditions, and particularly the fate of the Trustee as an operating entity. Accordingly, a hearing on the merits of William's Complaint for Declaratory Judgment is needed as quickly as possible to ensure a speedy resolution of the disclaimer's legal validity.

6.      For the foregoing reasons, William moves the Court to hold an immediate hearing and set expedited response, scheduling and hearing times for consideration of this matter and a summary judgment hearing.

7.      William suggests this proceeding be condensed to no more than thirty (30) days, including response times, briefing schedules and a final hearing on William's Motion for Summary Judgment.

WHEREFORE, the plaintiff, William A. Karo, by counsel, prays that this Court hold an immediate hearing to set expedited response, scheduling and hearing times for consideration of this matter and to set a summary judgment hearing consistent with same.

Respectfully submitted,

WILLIAM A. KARO

By Counsel

2

Bowlman T. Bowles, Jr. (VSB #05268)
David W. Whitehead (VSB #17184)
Churchill G. Bowles (VSB #42619)
BOWLES & WHITEHEAD, P.C.
P. O. Box 12085
Richmond, Virginia 23241
Telephone:    (804) 780-0236
Fax:    (804) 780-9134
        *Counsel for William A. Karo*

Date: October 8, 2008

3

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the Complaint was sent via facsimile and mailed, first

class, postage prepaid, this 8th day of October, 2008 to:


        Matthew M. Farley, Esquire
        Armstrong, Bristow, Farley
          & Schwarzschild, PLC
        1807 Libbie Avenue, Suite 200
        Richmond, Virginia 23226

4

VIRGINIA:

## IN THE CIRCUIT COURT OF THE CITY OF RICHMOND

| | |
|---|---|
| **WILLIAM A. KARO,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Case No.:  CL08-4650** |
| v. ) | |
| ) | |
| **WACHOVIA BANK, NATIONAL ASSOCIATION** ) | |
| Co-Trustee of the Rosalie S. Karo ) | |
| Intervivos Trust u/a December 18, 1966, ) | |
| ) | |
| **ANDREW T. KARO**, individually and as Co-Trustee ) | |
| of the Rosalie S. Karo Intervivos Trust ) | |
| u/a December 18, 1966, ) | |
| ) | |
| and ) | |
| ) | |
| **W.A.K. II** ) | |
| ████████████, a minor, ) | |
| ) | |
| Defendants. ) | |

### AMENDED COMPLAINT

The Plaintiff, William A. Karo (William), by counsel, states the following for his

Amended Complaint for declaratory judgment pursuant to § 8.01-184, et. seq. of the Code of

Virginia 1950, as amended:

1.       This is a declaratory judgment action brought pursuant to Virginia Code § 8.01-

184, et. seq.

2.       The plaintiff, William A. Karo, is a resident of the City of Richmond, Virginia.

3.       The defendant, Wachovia Bank, N.A. (Wachovia), is a national banking

association engaged in banking and related activities in the Commonwealth of Virginia,

including Richmond, Virginia.

4.       The defendant, Andrew T. Karo, is a resident of Henrico County, Virginia.

W.A.K. II

5.      The defendant, ████████████, a minor, is a resident of the City of

Richmond, Virginia.

6.      Rosalie S. Karo died in 1974, having created the Rosalie S. Karo Inter Vivos

Residual Trust (Trust) on December 18, 1966 for the benefit of her husband, Andrew T. Karo

(Andrew), and her issue, with Wachovia and Andrew as co-trustees. (Exhibit A). The Trust

value on December 31, 2007 was approximately $4,400,000, and on July 1, 2008, approximately

$2,500,000. (Exhibit B). Trust net income for 2007 was approximately $200,000, and is now

approximately $70,000. (Exhibit C).

7.      The Trust provides in Article I(4)(c) that Andrew receive lifetime income with the

remainder passing at his death to his son, William. The Article further provides for discretionary

Trust principal distributions for the benefit of William or any of Grantor's issue, including

William's son ████████████.

8.      Andrew has been receiving Trust income since 1966.

9.      On August 13, 2008, William executed and delivered to Wachovia the attached

disclaimer (Exhibit D) of Andrew's Trust income interest pursuant to Andrew's power of

attorney (dated August 18, 2006) authorizing him to do so. (Exhibit E, paragraph 15).

10.     Pursuant to Virginia Code § 64.1-196, et. seq. [Uniform Disclaimer of Property

Interests Act], such disclaimer effected a transfer of Andrew's income interest to William,

thereby terminating the Trust in favor of William. Alternatively, such transfer resulted in a

merger of all Trust interests as a fee in William.

11.     Upon receipt of such disclaimer, Wachovia has refused to recognize its legal

validity. (Exhibit F).

2

12.     There exists an actual justiciable controversy and an antagonistic assertion and denial of rights between the parties concerning the legal validity and effect of the disclaimer; that is, whether the disclaimer is valid and if it causes the Trust to now terminate in favor of William.

13.     William has no adequate remedy at law to resolve this matter.

14.     William hereby moves this Court to hear this matter on an expedited and immediate basis because until legal validity of the disclaimer is resolved, ownership and responsibility for management of the Trust's assets remain uncertain and in flux, a situation that in current tumultuous financial/market times disadvantages the Trust, its assets, and all of the parties. Judicial notice should also be taken of current and rapidly deteriorating financial/market conditions, particularly the market value and fate of the Trustee as an operating entity. Accordingly, William requests this Court to hear this matter on an immediate and expedited basis, and provide for: (1) a shortened response time for Wachovia, and (2) an immediate hearing for consideration of William's summary judgment motion (to be filed shortly), including a briefing schedule and other scheduling items as necessary.

WHEREFORE, for the foregoing reasons the plaintiff, William, by counsel, prays this Court: (1) hold an immediate hearing including an expedited response time; (2) schedule hearing times for consideration of this matter including a summary judgment hearing; and, (3) enter a judgment declaring that:

a. The Karo Trust disclaimer is valid pursuant to Va. Code §64.1-196, et seq. [Uniform Disclaimer of Property Interests Act].

b. William is now vested with ownership of all Karo Trust assets as of the date such disclaimer was executed and delivered to Wachovia, as co-trustee (August 13, 2008).

c. The plaintiff be granted such other relief as the Court deems just and proper pursuant to § 8.01-184, et. seq. of the Code of Virginia, 1950, as amended.

3

    d.  The plaintiff recover his costs and fees incurred in this matter, including reasonable attorneys' fees.

                        Respectfully submitted,

                        WILLIAM A. KARO

                        By Counsel

Bowlman T. Bowles, Jr. (VSB #05268)
David W. Whitehead (VSB #17184)
Churchill G. Bowles (VSB #42619)
BOWLES & WHITEHEAD, P.C.
P. O. Box 12085
Richmond, Virginia  23241
Telephone:     (804) 780-0236
Fax:          (804) 780-9134
    *Counsel for William A. Karo*

Date:  October 13, 2008

4

VIRGINIA:

### IN THE CIRCUIT COURT OF THE CITY OF RICHMOND

| | |
|---|---|
| WILLIAM A. KARO, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: CL08-4650 |
| | ) |
| WACHOVIA BANK, NATIONAL ASSOCIATION | ) |
| Co-Trustee of the Rosalie S. Karo | ) |
| Intervivos Trust u/a December 18, 1966, et al., | ) |
| | ) |
| Defendants. | ) |

### WILLIAM'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR DECLARATORY JUDGMENT

The Plaintiff, William A. Karo (William), by counsel, submits this Memorandum in Support of His Motion for Declaratory Judgment or, alternatively, in support of his Motion for Summary Judgment against the Defendants, Wachovia Bank, N.A. (Wachovia) and Andrew T. Karo (Andrew), Co-Trustees of the Rosalie S. Karo Intervivos Trust u/a December 18, 1966 (Karo Trust), and ███████████ a minor.

### I.
### UNDISPUTED MATERIAL FACTS[1]

Rosalie S. Karo (Rosalie) died in 1974, having previously created the Rosalie Karo Trust on December 18, 1966 for the benefit of her husband, Andrew, and her issue, with Wachovia and Andrew as Co-Trustees. (B.C. ¶6). The Trust provides in Article I (4)(c) & (d) that Andrew receive lifetime income with the remainder passing to Rosalie's issue upon Andrew's death. (B.C. ¶ 6, Exhibit A). Andrew has received Karo Trust income since 1966. (B.C. ¶ 8). William is the only child of Rosalie and he has one child, ███████████. (B.C. ¶ 7).

---

[1] Amended Bill of Complaint references are "B.C. ¶ ___", a copy of which is attached as Exhibit A, including exhibits A-F. Exhibit references include the exhibit's corresponding complaint paragraph, "B.C. ¶__, Exhibit __".

On August 13, 2008, William executed and delivered to Wachovia a disclaimer
(disclaimer) of Andrew's Trust income interest pursuant to Andrew's power of attorney to William
(dated August 18, 2006) authorizing him to do so. (B.C. ¶ 9, Exhibits D & E, paragraph 15). William
asserts the disclaimer effected a transfer of the Trust's income interest to him and accelerated its
remainder, thereby terminating the Trust outright to William (B.C. ¶ 10). For various reasons,
Wachovia refused to recognize the legal validity of the disclaimer. (B.C. ¶ 11, Exhibit F).

## II.
## STATUTORY BACKGROUND

In 1972, Virginia adopted a disclaimer statute (Va. Code §64.1-188, <u>et seq.</u>) permitting
prospective recipients to refuse acceptance of bequests and gifts by a written instrument (disclaimer),
provided the disclaimer was timely filed (ten months) and the recipient did not previously accept the gift
or any benefits therefrom. In many cases, a disclaimer minimizes transfer taxes by allowing the
disclaimed asset to pass to alternative takers as if the disclaimant was dead. In 2003, Virginia modified
the statute by adoption of the Uniform Disclaimer of Property Interests Act (UDPIA or Act) (Va. Code
§64.1-196, <u>et seq.</u>) and two important changes were made: (a) the elimination of time limits on filing
disclaimers; and (b) prior acceptance of gift/benefits by a recipient is no longer a bar to exercise of a
disclaimer right. It is these 2003 changes that now permit a valid disclaimer by William after a time
delay and his prior acceptance of benefits from the Karo Trust.

## III.
## ISSUES

1.   Was Andrew's disclaimer properly drafted, executed and delivered
     to the Trust.

2.   Did a substantial passage of time and/or prior acceptance of Trust
     benefits by Andrew bar his right to disclaim.

2

3.   Did Andrew's disclaimer effect a transfer of his Trust income

interest to and accelerate the remainder interest in William,

terminating the Trust.

## IV.
## CONCLUSIONS

A.   <u>Valid/Effective Disclaimer</u>.   The Karo disclaimer meets the Act's requirements, because

it:  (i) is written; (ii) states it is a disclaimer; (iii) identifies the (income) interest being disclaimed; (iv) is

signed by Andrew's agent acting under his power of attorney; (v) was personally delivered to the Trust;

and is thereafter irrevocable.

B.   <u>Time/Acceptance-Barred Disclaimer</u>.      There are no longer time limits on filing

disclaimers, and acceptance-barred disclaimer interests pass not by disclaimer but take effect as a

transfer of the disclaimed interest to the person who would have taken the interest if the disclaimer was

not barred.

C.   <u>Effect of Disclaimer</u>.  The effect of Andrew's Trust income disclaimer was to regard him

as then deceased, thereby effecting a transfer of his income interest to William, a Trust life

income/remainder interest fee simple merger, and termination of the Trust outright to William.

## V.
## ARGUMENT

A.   <u>Declaratory Judgment/Summary Judgment Standard of Review</u>.

A moving party is entitled to declaratory judgment relief within the purview of

Va. Code §8.01-184, et. seq. if there exists an actual controversy, antagonistic assertions, and a

denial of right concerning the legality, interpretation, and rights of the parties in the matter;

provided, all necessary parties have a justiciable interest therein, and the determination is based

3

on present facts which are ripe for adjudication. <u>Mosher Steel v. Teig</u>, 229 Va. 95, 328 S.E. 2d 87 (1985).

Summary judgment is available as a matter of law if the record demonstrates no genuine issue of material fact remains on a dispositive issue. <u>Leeman v. Troutman Builds, Inc.</u>, 260 Va. 202, 206, 530 S.E.2d 909 (2000). Upon motion for summary judgment, the court should draw all inferences from the underlying facts in the light most favorable to the non-moving party, but the Court is not required to adopt inferences which are strained, forced or contrary to reason. <u>Carson ex. rel. Meredith v. LeBlanc</u>, 245 Va. 135, 427 S.E. 2d 189 (1993). The existence of a factual dispute will not defeat an otherwise properly supported motion for summary judgment because the disputed fact must be material under applicable law. Rule 3:20 of the <u>Rules of The Supreme Court of Virginia</u>. Further, the construction of written documents, such as the Karo Trust and the disclaimer, is a question of law for the court to decide. <u>Murphy v. Holiday Inns</u>, 216 Va. 490, 492, 219 S.E.2d 874, 875-76 (1975). Based on these well-settled principles, it is appropriate to grant summary judgment regarding the legal validity and effect of the disclaimer.

     B.    <u>Valid Disclaimer.</u>    The Karo disclaimer meets all statutory requirements of a valid disclaimer under the Act because it: (a) is written; (b) states it is a disclaimer; (c) identifies the Trust interest (income) being disclaimed; (d) is signed by Andrew's agent under his power of attorney[2]; and (e) was personally delivered by William to Andrew, the Trust and its Co-Trustees. Having met all statutory requirements, the executed and delivered disclaimer is valid.

---

[2] The statute defines "fiduciary" as an agent under a power of attorney. (Va. Code §64.1-196.1)

C.    Time/Acceptance-Barred Disclaimers.

1.    Time-Bar.    No longer are there time limits on disclaimers because the

2003 Act eliminated all time limits from the disclaimer statute.  See Thompson, *"Uniform*

*Disclaimer Act – Traps and Tricks"* ACTEC Summer meeting, 2001, at page 16:

> The UDPIA eliminates all time limits on
> disclaimers.  The drafters recognized that there were times
> when tax would not be the motivating factor and that a
> disclaimer should be permitted even if beyond 9 months.
>
> 1.    [To] Eliminate a trust. In some instances,
> surviving family members may not be happy with the
> presence of a trust in the estate plan.  In many instances, a
> trust can be eliminated by the current mandatory or
> permissible income beneficiaries disclaiming their income
> interests.

(Exhibit B)

See also, Thompson, to the same effect, in 2005 Miami Institute on Estate Planning, "When It Is

Better to Disclaim Than Receive", ¶ 1322 at p. 13-38.  (Exhibit C)

Va. Code §64.1-196.15 [Application to Existing Relationships] is not applicable here.

First, the section applies only to time-delayed disclaimer rights existing upon adoption of the

Act, the time limit not then having expired; and the section enables, but does not prevent,

disclaimers in those few limited situations.  Second, if a disclaimer was early-on barred by

acceptance, a later time-barred deadline does not come into play.  The acceptance bar applied

earlier and we are dealing here with acceptance-barred disclaimers which pass a property interest

under §196.12.(F).  Third, the section's introduction provides for application of §64.1-196.12

permitting barred disclaimers to "take effect" as a transfer of the interest to persons who would

otherwise take if not barred.  Fourth, defendant's reading of the section creates an illogical

5

distinction between pre-Act time vs. acceptance barred disclaimers. There appears to be no

overall statutory policy to make such a distinction. See also, §196.2 which says the Act applies

to any interests or powers whenever created. Accordingly, §64.1-196.15 does not prohibit a

time-delayed disclaimer; rather it facilitates such disclaimers.

See, Comment, *Report of Uniform Disclaimer of Property Interests Act (1999)*,

(Comments), National Conference of Commissioner of Uniform State Laws, p. 29:

> The 1978 Act required that an effective disclaimer be made within nine months of the event giving rise to the right to disclaim (e.g., nine months from the death of the decedent or donee of a power or the vesting of a future interest). The nine-month period corresponded in some situations with the Internal Revenue Code provisions governing qualified tax disclaimers. Under the common law an effective disclaimer had to be made only within a 'reasonable' time.

> This Act specifically rejects a time requirement for making a disclaimer. Recognizing that disclaimers are used for purposes other than tax planning, a disclaimer can be made effectively under the Act so long as the disclaimant is not barred from disclaiming the property or interest or has not waived the right to disclaim. Persons seeking to make tax qualified disclaimers will continue to have to conform to the requirements of the Internal Revenue Code.

(Exhibit D)

2.     Acceptance Bar.       When a disclaimer is barred because the disclamant

previously accepted benefits from the interest, Va. Code §64.1-196.12(F) provides that the

interest barred nevertheless "takes effect" as a transfer of such interest as if it were not barred.

6

§64.1-196.12.  When Disclaimer Barred Or Limited.

...

B.   A disclaimer of an interest in property is barred if…the disclaimant accepts the interest sought to be disclaimed.

...

F.   A disclaimer of a power of property, which is barred by this section is ineffective.  A disclaimer of an interest in property, which is barred by this, section takes effect as a transfer of the interest disclaimed to the persons who have taken the interest under this chapter had the disclaimer not been barred.

The second sentence of subparagraph F should be carefully distinguished from the first, since the first sentence deals with the disclaimer of a "power" over property and provides it is barred because it becomes "ineffective.  Defendant maintains William's disclaimer of his income interest under subparagraph F is "invalid" and passes nothing to Andrew.  This appears to be a misread of subparagraph F sentences one and two.  See in this regard Comments, at p. 31, which provides:

Subsection F provides a rule stating what happens if an attempt is made to disclaim a power or property interest [note the distinction between power and property] whose disclaimer is barred by this section.  A disclaimer of a power is ineffective but the attempted disclaimer of a property interest, although invalid as a disclaimer, will operate as a transfer of disclaimed property interest to the person or persons who would have taken the interest had the disclaimer not been barred.

(Exhibit E)

Accordingly, subparagraph F enables Andrew's otherwise acceptance-barred disclaimer to become effective and "take effect "as a transfer of his income interest to William who would have otherwise taken the interest if the disclaimer were not barred.

7

D.    Acceleration of Interests/Merger.

Upon the transfer and acceleration of William's life and the remainder interest in

Andrew, the Karo Trust merges and terminates in Andrew.  See American National Bank v.

Chapin, 30 Va. 1, 107 S.E. 636 (1921) recognizing acceleration of a remainder interest following

a disclaimer/renunciation, and merger into a fee to the remaindermen.  See, also, Thompson cited

above, and, Thompson's Uniform Act Disclaimer Article in 2005 Miami Institute on Estate

Planning at §1322(pp.13-38) to the same effect.  (Disclaimer of income interest to eliminate a

trust.)

The defendant maintains that because Andrew's disclaimer under subsection §196.12(F)

is "ineffective", Andrew is definitionally not then dead, consequently the Trust cannot terminate

(citing §64.1-196.5(B)(3)(a)) because that section's passing provisions do not apply to accelerate

a fee in the remainderman.  However, the second sentence of §196.12(F) provides for a transfer

of the disclaimed property interest "to the person or persons who would have taken the interest

had the disclaimer not been barred."  This phrase clearly reinstalls the "deceased" status of the

disclaimant to deem Andrew (the disclaimant) to continue definitionally as a "disclaimant".

§64.1-196.5(B)(3)(a) takes effect to pass the income interest to William as if his father died

immediately before his disclaimer, resulting in an acceleration of the remainder interest.

Finally, as allowed by §64.1-196.3, the common law Doctrine of Acceleration should

supplement and support the above analysis. See Loring, *"A Trustee's Handbook"* (2007) at

§8.15.47 at p. 725:

> The doctrine of acceleration also might have
> application if a life beneficiary of either a testamentary
> trust or an inter vivos trust renounces or disclaims his or
> her equitable interest.  At the time of the renunciation or
> disclaimer, the successor equitable interests are accelerated,

8

unless the governing instrument makes express provision for alternate takers.  Baked into the doctrine is a presumption that the settlor intended for the remainder interests to take upon the extinguishment of the prior estate, 'rather than from and after the death of the particular tenant.'  The English cases are generally in accord.  This presumption, however is rebuttable.

(Exhibit F)

E.     Power of Attorney Conflict and Capacity.

Defendant also raises questions about Andrew's power of attorney (Power) and its exercise by and in favor of William.

First, he questions whether the Power exercise can occur because of what appears to be a conflict of interest.  In 2006 William executed his Power to Andrew, presumably knowing the law and its consequences (effect of a disclaimer to Andrew), thus he has waived any apparent and/or actual conflict.  It should also be remembered that Andrew has under Va. Code §20-88 a continuing duty to support his father; and, a continuing fiduciary obligation to him under the 2006 Power.

Second, it is suggested that if William's disclaimer is acceptance-barred, the subparagraph F "takes effect as a transfer" language makes such transfer equivalent to a gift which the Power does not authorize.  To the contrary, the Act enables barred disclaimers, consequently they are not equivalent to the suggested/prohibited gift.

Third, with respect to William's capacity, Dr. Merritt Foster professionally opined William has testamentary capacity.  Further, the issue of capacity may not be relevant here because execution of the Power occurred in 2006, and there is no allegation William was other than competent at that time.

9

## SUMMARY

Based on the foregoing, William moves this Court to sustain his Motion for Declaratory and Summary Judgment, that his disclaimer was validly executed and delivered, that it effected an acceleration of the Trust life and remainder interests, and a merger of same, to provide a fee simple transfer of the Trust assets outright to Andrew.

Respectfully submitted,

WILLIAM A. KARO

By Counsel

Bowlman T. Bowles, Jr. (VSB #05268)
David W. Whitehead (VSB #17184)
Churchill G. Bowles (VSB #42619)
BOWLES & WHITEHEAD, P.C.
P. O. Box 12085
Richmond, Virginia  23241
Telephone:    (804) 780-0236
Fax:             (804) 780-9134
    *Counsel for William A. Karo*

Date:   November 7, 2008

10

VIRGINIA:

## IN THE CIRCUIT COURT OF THE CITY OF RICHMOND

| | |
|---|---|
| WILLIAM A. KARO, | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No.: CL08-4650  — 4 |
| | ) |
| **WACHOVIA BANK, NATIONAL ASSOCIATION** | ) |
| Co-Trustee of the Rosalie S. Karo | ) |
| Intervivos Trust u/a December 18, 1966, | ) |
| | ) |
| Defendant. | ) |

### FINAL ORDER

On this day, the parties, by counsel, appeared regarding William A. Karo's Complaint for Declaratory Judgment relief pursuant to Virginia Code §8.01-184, et seq., concerning the validity and effect of a disclaimer filed by Andrew T. Karo pursuant to Virginia Code §64.1-196, et seq., and

Based upon the pleadings filed in this case, the agreement of counsel, and applicable law,

The Court FINDS and ORDERS that the disclaimer is invalid for all purposes under the Uniform Disclaimer of Property Interest Act, Virginia Code §64.1-196, et seq. and any other applicable authority. Accordingly, the Court finds that the attempted disclaimer has no validity and no effect in any manner and, therefore, this case is hereby dismissed, with prejudice and the case is stricken from the active docket.

The Clerk is directed to send copies teste to counsel of record upon entry.

ENTERED: 11/25/08

_____
Judge Margaret Spencer

A Copy,
Teste: BEVILL M. DEAN, CLERK

BY: _____ D.C.

We ask for this:

Bowlman T. Bowles, Jr. (VSB #05268)
Churchill G. Bowles (VSB #42619)
BOWLES & WHITEHEAD, P.C.
P. O. Box 12085
Richmond, Virginia  23241
Telephone:     (804) 780-0236
Fax:               (804) 780-9134
         *Counsel for William A. Karo*

Date: November 21, 2008




Seen and agreed:



Matthew M. Farley, Esquire
Armstrong, Bristow, Farley
  & Schwarzchild, PLC
1807 Libbie Avenue, Suite 200
Richmond, Virginia  23226
Telephone:     (804) 282-6170
Fax:               (804) 282-6175
         *Counsel for Wachovia Bank, N.A.*

Date: November 21, 2008



Paul M. Curley, Esquire
Canfield, Baer, LLP
2201 Libbie Avenue, Suite 200
Richmond, Virginia  23230
Telephone: (804) 673-6600
Fax:               (804) 673-6604
         *Counsel for* ▮▮▮▮▮▮ *a minor*

Date: November 21, 2008

Robin M. Morgan, Esquire
Blackburn, Conte, Schilling & Click, P.C.
300 West Main Street
Richmond, Virginia  23220
Telephone:    (804) 782-1111
Fax:          (804) 648-3914
        *Counsel for Andrew T. Karo*

Date:   November 21, 2008

# Exhibit B-6

Attachment to Faye Harris Affidavit-Exhibit B

May 30, 2010 Obituary of Andrew T. ("Toney") Karo.

Andrew Karo Obituary: Andrew Karo's Obituary by the Richmond Times-Dispatch.          Page 1 of 1

**Andrew Karo**

KARO, Andrew T., 81, of Richmond, widower of Rosalie Schwarzschild Karo, died Sunday, May 16, 2010. Born in Richmond, Va., he was a son of the late John and Zabel Karo. Mr. Karo graduated from Thomas Jefferson High School and received a fine arts degree from Northwestern University. He was a retired fine arts broker for families throughout the Commonwealth of Virginia and other parts of the U.S. He is survived by his son, William Andrew Karo and his wife, Page S. Karo; his grandson, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮; and two sisters, Helen K. Jacobson and Dora Karo, all of Richmond. There will be a private memorial service for the family. In lieu of flowers, contributions may be made to The Collegiate Schools or St. Christopher's School.

Published in Richmond Times-Dispatch on May 30, 2010