**KUTAK ROCK LLP**
Loc Pfeiffer (VSB No. 39632)
Jeremy S. Williams (VSB No. 77469)
1111 East Main Street, Suite 800
Richmond, VA 23219
Telephone: 804-644-1700
Loc.Pfeiffer@kutakrock.com
Jeremy.Williams@kutakrock.com
  *Counsel for Bruce E. Robinson, Chapter 7 Trustee*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re:  WILLIAM A. KARO | ) ) ) ) | Case No. 13-33011 Chapter 7 |
| Debtor. | ) |  |

## TRUSTEE'S MOTION TO APPROVE
## COMPROMISE WITH PAGE KARO AND W.A.K., II

Bruce E. Robinson, Trustee for the Bankruptcy Estate of William A. Karo (the "Trustee"), by counsel, moves to approve a compromise pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure reached with Page Karo ("Page Karo") and her minor son, W.A.K., II ("WAK" and together with Page Karo, the "Defendants"). The Trustee states the following in support of this Motion:

### PARTIES AND JURISDICTION

1.     On May 31, 2011, the Debtor filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code.

2.     Bruce E. Robinson is the duly appointed Chapter 7 trustee for the bankruptcy estate.

3.     This is a core proceeding pursuant to 28 U.S.C. § 157.

4.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and personal jurisdiction over all parties pursuant to Rule 7004(f) of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

5.   Rosalie Schwarzschild Karo ("Rosalie Karo") was the daughter of Henry Schwarzschild III, co-founder of the Central National Bank in Richmond, Virginia. When her father died, Rosalie Karo inherited a large number of shares, which she used to fund the Karo Residual Trust Fund (the "Trust") for the benefit of her husband, Andrew T. Karo ("Toney Karo") and her descendants.

6.   The Trust agreement directed the trustees to pay Toney Karo for his lifetime all net trust income. The Trust agreement also authorized the corporate trustee (the "Bank") to make distributions from the Trust's corpus to any of Rosalie Karo's issue for "such issue's general welfare and comfort." The Trust agreement further provided that upon Toney Karo's death, the Trust terminated and the corpus of the Trust was to be distributed to Rosalie Karo's "then living issue per stirpes."

7.   The Debtor was Toney and Rosalie's only child. The Debtor married Page Karo and they had one child, a son born in 1998, WAK. As Toney Karo's only child, the Debtor was the presumptive taker of the Trust, and his minor son would receive the remainder only if the Debtor died before Toney Karo and the Debtor's minor son survived both his father and grandfather.

8.   In 2008, the Debtor attempted to take control of the Trust by having his father disclaim his interest, thereby vesting the Trust assets in the Debtor. On August 13, 2008, the Debtor attempted to terminate the Trust by delivering a disclaimer using a power of attorney that

the Debtor's father had given him. The Debtor contended that the disclaimer "effected a transfer of [Toney's] income interest to [the Debtor], thereby terminating the Trust in favor of [the Debtor]" or alternately that the disclaimer had "resulted in a merger of all Trust interests [in the Debtor]."

9. The Bank, however, refused to accept the August 13, 2008 disclaimer on the ground that it was invalid and refused to pay all of the Trust assets to the Debtor. The disclaimer was found invalid.

10. The Debtor then executed a disclaimer of his interest and in favor of his son, WAK. The validity of the disclaimer is in dispute. The Trust was ultimately liquidated and some of the assets were distributed to Page Karo [as custodian for WAK].

11. On or around January 12, 2012, an account was established in the name of Page Karo, Custodian for WAK, with Commonwealth Financial Network. No less than $458,237.40 was deposited into the account as proceeds from the sale of Trust Assets that occurred on or about December 30, 2011(the "Funds").

12. Since that time, the Funds have been used for a variety of purposes and transferred to multiple accounts. A substantial portion of the Funds were used to purchase a one-half interest in a house in the name of Page Karo as custodian for WAK.

13. The Trustee believes that the transfer of the Funds may constitute a fraudulent or preferential transfer.

14. Instead of commencing an action against the Defendants, the Trustee engaged in in-depth fact finding to determine the likelihood of a recovery against the Defendants.

15. After extensive negotiation, the parties have reached an agreement regarding the Funds.

16.     To resolve the dispute regarding the Funds, the Defendants shall deliver to the Trustee within five (5) days of the entry of an order approving the terms set forth herein, fifty thousand dollars and 00/100 ($50,000.00) (the "Settlement") in full and final settlement of any claims by the Trustee to the Funds as well as any other claims held by the Trustee, whether known or unknown or accrued in whole or in part, against Page Karo and/or WAK, jointly, severally or individually. The Settlement is not an admission of bad faith or wrong doing by the Defendants and has been entered into by the Defendants solely to avoid additional costs and expenses of litigation.

17.     The Trustee has entered into the Settlement to avoid an additional delay in administration of the estate, additional costs and expenses of litigation and any associated risks.

18.     The Trustee believes the Settlement is fair and equitable and in the best interest of the Debtor's bankruptcy estate and creditors.

## REQUESTED RELIEF

19.     This Court has the authority to approve the Settlement pursuant to Fed. R. Bankr. P. 9019(a).

20.     Fed. R. Bankr. P. 9019(a) provides that, after notice and a hearing, the Court may approve a proposed compromise or settlement.

21.     The decision whether to accept or reject a compromise or settlement is within the sound discretion of the Court. *In re Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985); *In re Three Rivers Woods, Inc.,* No. 98-38685-T, 99-3020-T, 2001 WL 720620, *5 (Bankr. E.D. Va. March 20, 2001); *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997).

22.     In reviewing a proposed compromise and settlement, the Court must determine whether the settlement is (i) "fair and equitable," *Protective Comm. for Indep. Stockholders of*

*TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968), and (ii) in the "best interests of the estate." *Frye*, 216 B.R. at 174; *see also Vaughn*, 779 F.2d at 1010; *In re McNallen*, 197 B.R. 215, 221 (Bankr. E.D. Va. 1995).

23. In determining whether a proposed compromise or settlement is "fair and equitable," two principles should guide the Court.

24. First, compromises and settlements are favored. *Frye*, 216 B.R. at 172; *see also TMT*, 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods., Co.*, 308 U.S. 106, 130 (1939) (stating that "[c]ompromises are a normal part of the process of reorganization")). Since *TMT* is cited as the starting point for guidance to the bankruptcy courts in addressing compromises and settlements in bankruptcy cases generally, the Trustee would suggest that *TMT* stands for the general proposition that compromises and settlements are a normal part of the bankruptcy process.

25. Second, a proposed compromise or settlement should be approved so long as "it is within the acceptable range of reasonableness." *Nellis v. Shugrue,* 165 B.R. 115, 123 (S.D.N.Y. 1994). Furthermore, the Court need not "be convinced that the settlement is the best possible compromise or that the parties have maximized their recovery." *Id.*; *see also In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995) (citations omitted).

26. The criteria generally relevant in determining whether to approve a settlement include:

  a. The probability of the trustee's success in any ensuing litigation;

  b. Any collection difficulties;

  c. The complexity, time and expense of the litigation; and

  d. The interests of creditors with proper deference to their reasonable views.

4831-2993-2330. 2    5

*Austin,* 186 B.R. at 400 (citations omitted).

27. <u>The probability of the Trustee's success in the litigation and potential difficulties, if any, in collection</u>. Based on the existing case law and the unique circumstances underlying the Funds, it is uncertain how the Court would resolve the dispute. In addition, a substantial portion of the Funds have been spent and there is little prospect of recovery from the current Defendants outside of the Settlement. It makes sense to approve the compromise in light of the costs, expenses and time that may be expended by the Trustee to collect any judgment obtained. This factor favors approval of the compromise.

28. <u>The complexity, time and expense of litigation</u>. The Settlement was reached after analysis of pending issues, conducting significant research and due diligence, back and forth negotiations between the Trustee and the Defendants, and after taking into consideration the time, expense and risk of fully litigating these matters before the Court. The unique circumstances underlying the dispute and intersecting legal issues make the litigation more complex. Further litigation would only delay the administration of the Funds, which continue to dwindle in order to pay the Defendants' living expenses. The expenses, inconveniences and delays attending the litigation can all be avoided. This factor favors approval of the compromise.

29. <u>The interests of the creditors</u>. The Settlement with the Defendants is reasonable since it allows the Trustee to obtain a guaranteed portion of the Funds without delay and avoids the potentially large administrative expenses of litigation. This factor favors approval of the compromise.

30. The Trustee believes the Settlement is fair and equitable and in the best interests of the Debtor's estate and creditors. The Trustee also believes that the Settlement is based upon sound business judgment.

31. Accordingly, the Trustee believes that the Settlement meets the standards for approval established by the courts.

## WAIVER OF MEMORANDUM OF LAW

32. Pursuant to Local Bankruptcy to Local Bankruptcy Rule 9013-1(G)(1), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Trustee requests that the requirement that all motions be accompanied by a separate memorandum of law be waived.

**WHEREFORE**, the Trustee requests the Court to approve the compromise and to award any further relief the Court deems proper.

                        **BRUCE E. ROBINSON, TRUSTEE**

                        By /s/ Jeremy S. Williams
                                 Counsel

**KUTAK ROCK LLP**
Loc Pfeiffer (VSB No. 71362)
Jeremy S. Williams (VSB No. 77469)
1111 East Main Street, Suite 800
Richmond, VA 23219
Telephone: 804-644-1700
Loc.Pfeiffer@kutakrock.com
Jeremy.Williams@kutakrock.com
  *Counsel for Bruce E. Robinson, Chapter 7 Trustee*

## **CERTIFICATE OF SERVICE**

Pursuant to the Local Rules of this Court, I hereby certify under penalty of perjury that on November 11, 2015, a true and correct copy of the foregoing was served via the Court's ECF system on the following necessary parties:

*U.S. Trustee's Office*
Shannon Pecoraro
Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Email: Shannon.pecoraro@usdoj.gov

*Counsel to the Debtor*
Charles H. Krumbein
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Dr.
Suite 300
Richmond, VA 23230
Email: charlesh@krumbein.com

*Counsel to the Defendants*
William R. Baldwin, III
Thorsen, Honey, Baldwin & Meyer LLP
5600 Grove Avenue
Richmond, Virginia 23226
billbaldwin@mthblaw.com

                                              /s/ Jeremy S. Williams
                                                      Counsel